USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1x|20|10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SANDRA GUZMAN,

                        **Plaintiff,**

          - against -

NEWS CORPORATION, et al.,

                      **Defendants.**

**ORDER**

**09 Civ. 9323 (BSJ) (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. Introduction

Plaintiff Sandra Guzman has asserted claims of employment discrimination and harassment on the basis of race, color, national origin and gender, as well as unlawful retaliation against News Corporation, NYP Holdings, Inc. d/b/a The New York Post (the "Post") (together, the "Company"), and Col Allen (collectively, "Defendants"). Guzman has asked this Court to order Defendants to produce records of complaints made by other employees and records concerning the Company's review of photo-shoot expenses for Guzman and other employees. For the reasons that follow, Guzman's request for an order to compel the production of these documents is **DENIED.**

## II. The Scope of Discovery

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The burden of demonstrating relevance is on the party seeking discovery. *See Mandell v. Maxon Co.,* No. 6 Civ. 460 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007). Once relevance is shown, it is up to the responding party to justify

curtailing discovery. *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004). "[T]he court must limit the frequency or extent of discovery" when: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(c).

### III. Guzman's Request to Compel Production of Records of Complaints

Guzman has requested that Defendants produce complaints made by other employees in her "work environment" concerning discrimination, harassment and/or retaliation on the basis of gender, race, color and/or national origin made by (i) Reporters, (ii) Editors, and (iii) any Managers/Supervisors in Guzman's work environment. (Plaintiff's July 30, 2010 Letter, at 1-2.) Guzman defines her work environment as constituting the 5th, 9th, 10th floors of Defendants' offices (Plaintiff's July 19, 2010 Letter, at 4-5.), which includes approximately 235 reporters and editors. (September 22, 2010 Phone Conference Transcript, at 3.) Guzman argues that the complaints are relevant and discoverable as probative of her hostile work environment claim because Guzman worked at these locations and the events giving rise to her claim occurred there. (*Id.*) In addition to complaints made against those employees she specifically names as creating her hostile work environment, Guzman argues that she is also entitled to discover any complaints made against the 235 employees in her work environment about discrimination on the basis of gender, race, color and/or national origin. (September 23, 2010 Phone Conference Transcript, at 16.) Guzman contends such a broad inquiry is necessary, in part, because she

2

alleges that she heard unnamed newsroom employees make sexual and racist comments. (Plaintiff's July 19, 2010 Letter, at 2-4.) Guzman also argues that the complaints are relevant to her retaliation claim because they may reveal patterns of discrimination within the company. (Plaintiff's July 14, 2010 Letter, at 2.) Defendants argue that Guzman's request is unreasonably broad, and that the only complaints relevant to her hostile work environment claim are those made against the specific employees that she alleges discriminated against her, which Defendants have provided. (Defendant's August 3, 2010 Letter, at 1-2.)

**A. Relevance to Hostile Work Environment Claim**

Title VII is violated when a work environment is so permeated with "discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). Establishing the existence of a hostile work environment involves objective and subjective components: (1) a reasonable person must find the environment to be hostile or abusive, and (2) the employee must subjectively perceive the environment to be abusive. *Id.* at 22. "Determining whether workplace harassment is severe or pervasive enough to be actionable depends on the totality of the circumstances." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000).

Here, the issue is whether complaints made against persons other than those specific individuals that Guzman alleges harassed her are discoverable as relevant to either the subjective or the objective components of her hostile work environment claim. Guzman argues that complaints about racist statements made by employees in the newsroom, in addition to those individuals specifically named in her complaint, would prove the objective prong of her claim, showing "that other people of color were subjected to discrimination based on their race."

3

(September 23, 2010 Phone Conference Transcript, at p. 13.)

Guzman relies upon *Hollander v. American Cyanamid Co.*, 895 F.2d 80 (2d Cir. 1990), and *Kaytor v. Electric Boat Corporation*, 609 F.3d 537 (2d Cir 2010), for the proposition that she is entitled to the requested complaints because they are relevant to the totality of the circumstances of her work environment. (September 23, 2010 Phone Conference Transcript, at 18-23.) Neither case, however, provides support for the broad discovery Guzman seeks. *Hollander* was a disparate treatment case, not a hostile work environment case, and the Second Circuit determined that plaintiff was entitled to evidence relating to the termination of other similarly situated employees beyond plaintiff's immediate work environment because it was relevant to the employer's motivation, not plaintiff's work environment. *Hollander*, 895 F.2d at 84. In *Kaytor*, the Second Circuit reversed a grant of summary judgment, in part, because the district court disregarded evidence of inappropriate sexual comments made by the individual alleged to have created the hostile work environment because his comments were not directed at plaintiff. *Kaytor*, 609 F.3d at 548. The court stated that evidence of other comments was relevant "in assessing the work environment and in determining whether the abuse to which [the supervisor] subjected Kaytor was motivated by her gender." *Id.* The totality of the circumstances inquiry was limited to the individual that plaintiff alleged created her hostile work environment, not to all employees in plaintiff's environment. Accordingly, Guzman is entitled to discover complaints made against those specific individuals that she alleges created her hostile work environment. That does not mean, however, that Guzman is entitled to discover all complaints made against all employees in her work environment about discrimination on the basis of

4

gender, race, color, and/or national origin.[1] Guzman's request for such complaints is overly broad. Accordingly, Guzman's motion to compel Defendants to produce the complaints on the grounds that they are relevant to her hostile work environment claim is **DENIED.**

## B. Relevance to Disparate Treatment Claim

A three-step burden-shifting analysis is applied to disparate treatment claims. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). First, the plaintiff must establish a prima facie case of discrimination. *Id.* at 252-53. The employer must then counter the plaintiff's allegation by advancing a legitimate, non-discriminatory reason for its actions. *Id.* The plaintiff may then attack that explanation by showing evidence that the purported non-discriminatory reason was not true and in fact was a pretext for discrimination. *Id.* "It is well-settled that an individual disparate treatment plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported non-discriminatory explanation." *Hollander*, 895 F.2d 80.

In large part, Guzman's request is premature. The record is not clear as to the specific reason for her termination. The relevance of complaints by other employees is therefore questionable on any question of pretext. In addition, the request is also overly broad. In analyzing whether Defendants' reasons for Guzman's termination were pretext for discrimination, the relevant complaints are complaints made against those individuals who participated in her firing decision. Complaints made against reporters, editors or supervisors who played no part in the termination decision are not relevant to Guzman's disparate treatment

---

[1]Racist and/or sexually inappropriate comments made by unspecified employees in Guzman's work environment may appropriately be considered by the court as objective evidence of a hostile work environment if she was aware of them, even if they were not directed at her. This does not allow Guzman to seek discovery of all complaints made against every employee in her work environment. These possible complaints do not form part of the environment to which Guzman had been subjected.

claim. Accordingly, Guzman's motion to compel Defendants to produce complaints on the grounds that they are relevant to her disparate treatment claim is **DENIED.**

**IV. Guzman's request for photo-shoot expense reports for Guzman and other employees**

Guzman has asked this Court to compel the production of "documents concerning Defendants' review of Ms. Guzman's photo-shoot expenses during the final year of her employment, as well as reviews of other Post editors/reporters' photo-shoot expenses during the same period." (Plaintiff's July 30, 2010 Letter, at 2.) Guzman argues that these records are relevant to her retaliation claim because they will show that her expense reports received greater scrutiny after she made a complaint about the existence of a hostile work environment. (Plaintiff's July 14, 2010 Letter, at 3.) Defendants have agreed to provide records regarding their review of *TEMPO* expenses, but argue that the production of all the records Guzman seeks "would be of extremely tenuous probative value in contrast to the burden associated with its production and review." (Defendants' August 3, 2010 Letter, at 2.)

As an initial matter, it is not clear how the expense records of other operations would show that *TEMPO* received greater scrutiny. Guzman has not articulated what operations are similar to *TEMPO* and might be expected to receive the same level of review. As discussed previously, the official reason for Guzman's termination remains unidentified, and Guzman has failed to explain how the broad discovery she sought concerning the expense reports of all reporters and editors is relevant to the treatment claim. Accordingly, Guzman's motion to compel production of those reports is **DENIED.**

**SO ORDERED this 20th day of October 2010**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**