```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


  ------------------------------------X
                                      :
  GUZMAN,                             :  09-CV-9323
                                      :
                Plaintiff,            :  April 6, 2011
                                      :
           v.                         :  500 Pearl Street
                                      :  New York, New York
  NEWS CORPORATION, et al.,.          :
                                      :
                Defendants.           :
  ------------------------------------X

   TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE DISCOVERY CONFERENCE
            BEFORE THE HONORABLE RONALD L. ELLIS
                UNITED STATES MAGISTRATE JUDGE

  APPEARANCES:


  For the Plaintiff:         KENNETH THOMPSON, ESQ.




  For the Defendants:        MARK LERNER, ESQ.
                             BLYTHE LOVINGER, ESQ.




  Court Transcriber:         SHARI RIEMER
                             TypeWrite Word Processing Service
                             211 N. Milton Road
                             Saratoga Springs, New York 12866




  Proceedings recorded by electronic sound recording,
  transcript produced by transcription service
```

                                                                2

1            THE CLERK: Good afternoon.  This is Judge Ellis.
2            Could you give your appearances?
3            MR. LERNER:  Sure.  For the defendants, all
4    defendants, this is Mark Lerner and I'm here with Blythe
5    Lovinger and Garret Kennedy.
6            MR. THOMPSON:  Good afternoon, Your Honor.  Ken
7    Thompson and [inaudible] on behalf of the plaintiffs.
8            THE COURT: This is a conference in the Guzman and
9    Fenner cases.  Guzman is 09-CV-9323 and Fenner is 09-CV-9832
10   and both cases involve the News Corporation.  Because of the
11   issues that may impact on one case or the other they are
12   together for purposes of the discovery that is before the
13   court.
14           The issues that I have include an application by
15   the plaintiffs to stay discovery until Judge Jones rules on
16   the motions that are before her and a motion -- well, I guess
17   it's not really a motion but at least an application by
18   defendants for the plaintiff's deposition not only to go
19   forward but to consist of at least two days of deposition.  I
20   say at least because sometimes there could be an application
21   even after the deposition has started.
22           Is there anything else that the parties -- and
23   that's what I gleam from the letters that the parties have
24   submitted to me.
25           MR. LERNER:  No, Judge, I think you've summed it

1   from our perspective on the defendant's side.
2           MR. THOMPSON: Your Honor, this is Kenneth Thompson.
3   With respect to our request it's not really for a stay of all
4   discovery.  It's to hold off on the depositions until Judge
5   Jones rules on the pending motions.  We would like to still
6   be able to engage in discovery in terms of the document
7   production.
8           THE COURT: Is that your understanding, Mr. Lerner?
9           MR. LERNER: Yes.  I believe -- it's my
10  understanding that Mr. Thompson has accurately characterized
11  his own application, yes.
12          THE COURT: To begin with there is a development
13  which I have not fully taken into account and I don't know
14  that it affects the party's positions but Judge Jones has
15  determined that the motion having to do with the striking of
16  portions of the complaint will be referred to me.  So I guess
17  the one thing that I can at least gauge is when the -- when
18  that motion might be decided.
19          The only other question I had concerned a
20  difference of opinion the parties seem to have concerning
21  what the defendant's position is with regard to responding to
22  questions having to do with the chimpanzee cartoon and
23  whether or not the [inaudible] processes and any of what the
24  Post considers First Amendment protected conduct.
25          Mr. Thompson indicates that there was -- it was

4

1  stated clearly that there would not be any responses or to be
2  directed not to answer those questions and I believe that Mr.
3  Lerner's position seemed to be less definitive on what was --
4  what would or would not be answered.  I didn't mean less
5  definitive to be pejorative; just that it was not an all or
6  nothing proposition but that there might be some questions in
7  those areas almost -- not quite question by question but not
8  as dark as Mr. Thompson presented it.
9          I don't suppose you've had any conversations since
10 the letters the two of you sent as to what --
11         MR. THOMPSON: No, Your Honor.
12         THE COURT: Since I guess the last letter I got was
13 -- I think the last communication was from Mr. Thompson.  Mr.
14 Lerner, why don't you tell me what your position is with
15 respect to answering such questions or your witnesses
16 answering such questions.
17         MR. LERNER: Okay, thank you.  Our position is that
18 there is an editorial privilege that would protect the Post
19 from answering certain questions that when it comes to the
20 topics relating specifically to the cartoon that there are
21 questions that impinge and there are questions that do not.
22 As Your Honor correctly characterized our position it's not
23 all or nothing.  What we would -- what we believe is
24 appropriate for inquiry, and this in part derives from the
25 prior ruling on the motion to dismiss, is that any questions

1  relating to how the Post responded to the employee's -- the
2  employee's responses to the cartoon what measures the Post
3  took with respect to its own employees to address those
4  concerns, what statements might have made to the employees
5  who raised concerns and specifically to Ms. Guzman and what
6  she might have overheard, et cetera.  I think there's some
7  allegations regarding that.
8         So if it relates to Post's response as it affected
9  Ms. Guzman we believe those -- that area of inquiry is
10 appropriate.  We don't think that that's a -- we're not
11 intending to broaden our position with respect to other
12 employee's complaints which we've discussed in another
13 context but really just addressing the fact that things that
14 came out -- things that happened in the aftermath of the
15 publication [inaudible] cartoon we do not believe are
16 covered.
17        Where we would object is to questions relating to
18 the decision to publish the cartoon, decisions that --
19 conversations or considerations that might have been
20 undertaken by the individual or individuals that made the
21 decision to publish the cartoon that evaluated it for its own
22 editorial value or content as well as -- and then the same
23 sort of category of information as it would reflect to -- as
24 it would pertain to other editorial decisions.  The complaint
25 mentions other headlines.  It's not limited just to the

1  stimulus cartoon but it refers to some other headlines that
2  were deemed offensive.
3        And then finally we believe that the editorial
4  process privilege would apply to the meetings and discussions
5  of the editors regarding stories of what to publish, what is
6  significant about them, what their impact would be, and the
7  reason that that comes up is because there are allegations
8  made by Ms. Guzman about statements made during [inaudible]
9  discussions.
10       So those are the areas that I think are the
11 front -- the primary areas where we believe that process
12 would apply and we believe that the proper procedure -- I
13 think it would be very difficult for Your Honor to make a
14 ruling on whether or not the Post's objection to those
15 questions is appropriate before they're asked before the
16 context in the deposition is seen and before Your Honor can
17 actually see the questions.  So our view on the process would
18 that the deposition would proceed, that we would object where
19 we believe appropriate and as well as instruct our witness
20 not to answer a question if we believe that the process --
21 the privilege is appropriately applied there and then those
22 objections to the extent contested could be brought before
23 the court.
24       THE COURT: Does that rule out some limiting ruling
25 by the court prior to the taking of a deposition?  I mean I

7

realize that you're saying that -- even if there's a prior restriction imposed by the court it might not be covered until you started asking questions whether or not you ran afoul [inaudible] but are you suggesting that there shouldn't be a ruling by the court for general guidance so that it would minimize the possibility of an instruction not to answer?

   MR. LERNER: I think that a ruling in that nature would be helpful at this point in time and I think we'll still end up bringing some issue before the court as to whether or not a particular question either fell in -- within or without the ruling or isn't covered by it.  But I think it would be very helpful to have court guidance at this time on the topic.

   THE COURT: I know what Mr. Thompson says about the difficulties of going forward with depositions.  What prejudice would there be to you in the stay?

   MR. LERNER: I'm sorry, Judge.  I lost you for the last few words of that.

   THE COURT: I said what -- what prejudice would there be to you if a stay were granted?

   MR. LERNER: Well, I think there -- Your Honor, I think there is -- there has been -- quite a bit of time has gone by and the prejudice is really the general prejudice that comes from the passage of time in these cases.  And we

8

1  tend to associate prejudice along these lines with plaintiffs
2  as in the idea of justice delayed is justice denied.  But in
3  this -- my experience in this case and in other
4  discrimination employment cases like this time really does
5  work against the defendants.  It works against the defendants
6  because often times witnesses tend to move on.  They move
7  away.  Their memories fade.  These are incidents that often
8  times are -- may not have had great significance at the time
9  that they occurred but in the context of a lawsuit they take
10 on significance.  So the freshness of memory is important and
11 for that -- that's all a big factor.
12          The other factor is that these are -- these were
13 well publicized allegations against the Post and we do feel
14 that the justice delayed is justice denied sort of notion
15 really does apply to the Post here.  We're eager to have a
16 resolution of the case.  So we believe there's prejudice in
17 those respects.
18          One of the -- I would just add that one of the
19 employees, one of the plaintiffs is a current employee at the
20 Post.  So there's -- she's named two of her supervisors as
21 defendants.  So there is -- there's certainly an interest in
22 having the dispute resolved from our internal, you know,
23 organizational standpoint for the New York Post.
24          THE COURT:  I understand the witnesses memory may
25 fade although I generally assume that with respect to the

1  parties own witnesses they have a sense of what those
2  witnesses are going to testify about and they probably
3  already talked to them.  So this would probably apply to
4  third party witnesses and I'm not so sure there are third
5  party witnesses in this case.  To the extent that memories
6  might fade for the plaintiff's witnesses I think that's
7  probably going to fall on Mr. Thompson.
8          But the other question I have for you is you asked
9  for two days of depositions and you were -- you alluded to
10 voluminous amended complaint and I'm not exactly sure what
11 voluminous refers to and I'm not sure what the nature of the
12 complaint will be after the court's review of the motion
13 because I know some parts of the amended complaint do talk
14 about some of the things which you've asked to have stricken.
15 But how long is the complaint?
16          MR. LERNER:  Well, the complaint contained 111
17 paragraphs of factual allegations before the start of the
18 planning of the first cause of action.  So that's the general
19 range.  In pages I think it was that's probably the range of
20 twenty or somewhere between twenty and thirty pages up to
21 that point and then additional allegations on the causes of
22 actions.
23          The topics -- I'm -- I want to talk about how broad
24 the things that need to be covered are but I also don't want
25 to provide my outline in the presence of my adversary.  So I

10

1   want to speak with some restraint but the scope of discovery
2   is -- of this deposition is going to include the many topics,
3   many incidents.  She was at the Post, Ms. Guzman was at the
4   Post for six or seven years and one of the issues in the case
5   or big issue in the case is the reason for her termination
6   and the fact that -- so there are -- the Post's reason has to
7   do with the business performance of the section that she
8   worked on.  That's a significant topic.  There are also --
9   there are her allegation that she could have and was doing
10  other jobs.  There are allegations regarding her
11  conversations with many people.  There are many areas of
12  inquiry regarding her conduct at the Post that we'd like to
13  go into.  As I said, many incidents.
14              We do not foresee -- just to point out to the
15  court, this is not an application we're making lightly.  We
16  do not make this application with respect to the plaintiff's
17  deposition in the Fenner and Livingston matter.  We believe
18  that those -- we can conduct those depositions in the one day
19  that the federal rules default prescribe as the default.  But
20  the federal rules do say that one day is just a default and
21  that where there's good cause that additional time can be
22  ordered.
23              I know that sometimes there's an inclination to say
24  see how far you get in seven hours and I think in a way
25  that's telling the lawyer complete your deposition in seven

1  hours because the lawyer doesn't know whether or not there's
2  going to be more time allowed.  So our view -- I don't know
3  that we would necessarily take two full days but -- and we
4  would proceed responsibly but I do think that a one day
5  deposition on the number of allegations of incidents and
6  topics here for this particular plaintiff is a reasonable
7  request.
8              THE COURT: Thank you. Mr. Thompson, did you want to
9  respond to anything that Mr. Lerner said?
10             MR. THOMPSON: Yes.  Thank you very much, Your
11 Honor.  With respect to whether there would be prejudice to
12 the defendants by staying depositions, there would be
13 absolutely no prejudice to the defendants.
14             With respect to wanting to get this case moving
15 along, what the defendants have done in this case is kind of
16 important.  They filed a motion to dismiss in December of
17 2009.  Judge Jones ruled on that motion in September 2010 and
18 we agreed -- they consented to the filing of the amended
19 complaint with the Title 7 causes of action once we received
20 the plaintiff's right to sue letter.  They wrote a letter
21 that Judge Jones telling her that they consented to the
22 filing of these complaints.  We filed the amended complaints
23 and instead of filing answers they turned around and they
24 filed a second pre-answer motion.  The current motion to
25 strike --

12

1      THE COURT: Mr. Thompson, I think I have that theme
2 already in your letter.
3      MR. THOMPSON: Okay.  The point I'm making, Your
4 Honor, is this.  In terms of taking these depositions what we
5 want to do is we want to make sure that our clients are not
6 going to be prejudiced.  Our clients would be prejudiced if
7 the depositions were allowed to go forward not only because
8 although I understand that the -- the court has the motion to
9 strike before it but there's also the motion for
10 reconsideration.  If Judge Jones agrees that the plaintiffs
11 are entitled to the complaints of other employees we have a
12 right to sit down with our clients and go over any other
13 complaints that may be produced by the defendants before
14 their depositions because what could happen here is our
15 clients can be deposed about all of their knowledge of
16 discrimination within the workplace of the New York Post and
17 News Corp. and they can testify to the best of their
18 recollection in terms of what they recall and [inaudible]
19 Judge Jones agrees and grants the motion for reconsideration
20 and were given additional complaints and we sit down with
21 them and it refreshes their recollection and then I
22 [inaudible] examples opposing counsel, the defense will be
23 able to stand up and impeach them with their deposition
24 testimony.
25      What we want to do is we want to be able to take

1  depositions in a way in which they will not be disrupted and
2  if the court is going to now handle the motion to strike and
3  Judge Jones is going to handle the motion for reconsideration
4  we ask to be allowed to continue to engage in document
5  production so we'll be moving this case along.  We have a
6  couple of other disputes we need to resolve and we've been
7  trying to resolve regarding redacted documents.  We served a
8  new set of document requests.  So it's not like the case is
9  not moving at all.
10           We would only ask that the depositions be stayed
11  until the motion to strike, the motions to strike are
12  resolved and the motion for reconsideration.
13           In addition, with respect to the request for two
14  days to depose Ms. Guzman, I point out in a letter that
15  defendants have maintained to Your Honor that there are only
16  five incidents that she claims that she complains about
17  during her six years of employment.  Now they claim that
18  there's so many incidents that they need two days.  That's
19  apparently un -- it's inconsistent to present to the court an
20  argument that oh, she has nothing here, Your Honor, that's
21  why she really doesn't have, she can't make out a hostile
22  work environment claim, her allegations are so sparse but
23  then turn around and say we need two days because the
24  complaint is so voluminous.
25           We would ask that they be restricted to the seven

1  hours under the rules because this is not a complicated case.
2  This is not a case where they have to bring Ms. Guzman in for
3  two days of depositions.  That would be prejudicial to her.
4  They can get through their depositions of the incidents that
5  we want to talk to about in a regular deposition.
6           THE COURT: Thank you, Counsel.  On balance I think
7  it would be appropriate frankly for me to get the papers on
8  the motion having to do with striking a portion of the
9  complaint in order for me to make a more informed judgment on
10 the issues that have been raised including what it's going to
11 take to do the deposition of the plaintiff.
12          With respect to the question of the stay, what I'll
13 do is I will stay depositions for a period of four weeks and
14 reevaluate at the end of those four weeks.  Presumably I will
15 have -- I'll be deeply into the motion and I'll have a better
16 sense of what's happening with Judge Jones on the other
17 motion.
18          I don't find that the -- any prejudice that might
19 be occasioned by a stay of that length at this time would be
20 prejudicial and frankly I don't think it's going to impact
21 that much on the ultimate end of discovery in the cases that
22 are before me.  I anticipate that there's going to be a
23 number of things that are going to be much more challenging
24 in terms of what impact they're going to have on bringing
25 this case to trial readiness.

```
                                                              15
 1          So we will have a formal stay which will be in
 2   effect until -- let me look at my calendar.
 3                 [Pause in proceedings.]
 4          THE COURT: May 6th.  We'll make it May 6th which is
 5   the Friday, the first Friday of May.  Before that time either
 6   on my own or one of you will remind me, we will talk about
 7   whether or not it's time to proceed with the deposition.
 8   During that period of time I expect the parties to have
 9   ongoing document discovery, and also with respect to the
10   issues that were raised concerning the scope of any
11   depositions of Post employees I want to make sure that you
12   refine your position as to what kinds of questions can and
13   cannot be answered.
14          Other than that for now we will be adjourned.
15   Thank you.
16          MR. THOMPSON: Thank you, Your Honor.
17          MR. LERNER: Thank you, Your Honor.
18                       *  *  *  *  *
19
20
21
22
23
24
25
```

```
                                                                  16
 1      I certify that the foregoing is a court transcript from
 2  an electronic sound recording of the proceedings in the
 3  above-entitled matter.
 4
 5                          _____
 6                                   Shari Riemer
 7  Dated:   September 11, 2011
```