UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SANDRA GUZMAN,

                     Plaintiff,

           - against -

NEWS CORPORATION, et al.,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/29/12

**MEMORANDUM
OPINION & ORDER**

**09 Civ. 9323 (BSJ) (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Before the Court is Defendants' Motion for a Protective Order, pursuant to Federal Rules of Civil Procedure 26(b)(1) and 26(c), prohibiting Plaintiff Guzman from seeking discovery regarding editorial decisions made at the *New York Post* ("the *Post*") related to the publication of (1) the "chimpanzee cartoon" and (2) nude pictures related to former Governor James McGreevey's divorce proceedings published by the *Post*. (Mem. of Law in Supp. Of Defs.' Mot. for Prot. Ord., Doc. No. 77 ("Defs.' Mot.") at 1-2.) Defendants filed the motion following the deposition of Col Allan, editor-in-chief of the *Post*, after Allan invoked an "editorial privilege" in response to twelve separate questions posed by Guzman regarding the publication decisions. (Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Prot. Ord., Doc. No. 83 ("Pl.'s Mem.") at 1.) Defendants assert that the information sought is protected by editorial privilege and is irrelevant to Guzman's claims. (Defs.' Mem. at 2-3.) Guzman argues that an "editorial privilege" "has never been recognized by any court of record" and that, to the extent Defendants claim a "journalistic privilege," the privilege is not applicable to communications between editors of a paper. (Pl.'s Mem. at 2.) For the reasons set forth below, Defendants' Motion for a

Protective Order is **DENIED**.

## II. BACKGROUND

Guzman asserts claims of employment discrimination and harassment on the basis of race, color, national origin and gender, as well as unlawful retaliation, against Defendants NYP Holdings, Inc. d/b/a the New York Post, News Corporation, and Col Allan.  In her Amended Complaint, Guzman alleges a hostile workplace based on racial discrimination, as demonstrated by the *Post*'s publication of the "chimpanzee cartoon," a cartoon that was allegedly a racist depiction of President Barack Obama as a chimpanzee shot by two police officers.  (Am. Compl. ¶¶ 6, 13-14.)  Further, Guzman alleges Allan showed her a photograph of a nude man, which was eventually published in connection with former Governor James McGreevey's divorce proceedings, as indicative of the sexual harassment and discrimination she endured during her time at the *Post*.  (Am. Compl. ¶¶ 34-36; Declaration of Paul A. Clark ("Clark Decl."), Ex. C.)

On February 14, 2012, Guzman deposed Col Allan for more than seven hours.  (*See* Declaration of Mark Lerner ("Lerner Decl."), Ex. A.)  During the deposition, Allan refused to answer twelve separate questions posed to him about the publication of the chimpanzee cartoon and the publication of a redacted photo, as well as the publication of the McGreevey photograph, invoking an "editorial privilege" in response to questions.  (*See* Defs.' Mem. at 5-6.)  These are the challenged questions:

***Decision to Publish Chimpanzee Cartoon***

(1) Do you believe it was a mistake to publish that cartoon?

(2) In light of your awareness after the monkey cartoon was published that black people had been portrayed as primates in this country, do you now believe it was a mistake to publish that cartoon?

***Decision to Publish Statement Responding to the Stimulus Cartoon***

(3) What role did you have, sir [in publishing a response to the cartoon]?

***Discussions Between Allan and Rupert Murdoch***

(4) So tell us in substance what you said to your boss Rupert Murdoch about the monkey cartoon when he called you the day it was published?

(5) So it was your understanding that Rupert Murdoch believed that it was a mistake to publish the cartoon?

(6) Why [did you disagree with the decision to publish an apology in the Post]?

(7) Did you tell Mr. Murdoch that you didn't think it was a mistake for publishing the cartoon?

(8) Did you tell Mr. Murdoch that you disagreed with apologizing for this publication?

(9) What happened the following day [when Mr. Allan spoke to Mr. Murdoch about the cartoon]?

(10) What did you say to [Mr. Murdoch] about the cartoon on that second call?

***Decision to Redact McGreevey Picture***

(11) Why was his waist covered up?

(*See* Defs.' Mem. at 5-6.)  Additionally, Guzman asked Allan why Leonard Green, an African American employee of the *Post*, would not make a good columnist.  Allan claimed privilege as to that question as well.  (Pl.'s Mem. at 1.)

The parties submitted several letters to the Court on the issue, and the Court allowed for Defendants to file the present motion.  Defendants assert that there is an editorial process privilege recognized by this Court and by the Supreme Court, that the editorial privilege applies here, and that Guzman cannot overcome the privilege because the information she seeks is not

"highly relevant" to her claims.  (Defs.' Mem. at 5-12.)   Guzman counters that no such privilege

exists, and that any journalistic privilege that could be applicable would not qualify because the

communications sought are those between employees of the *Post* and not, for example, between

a journalist and an anonymous source.  (Pl.'s Mem. at 10-19.)   Accordingly, Guzman requests

that the Court deny the motion.

### III.  DISCUSSION

**A.  Defendants have not demonstrated any privilege is applicable.**

The parties differ on an essential aspect of the motion; that is, whether there is a

recognized "editorial privilege."  As an initial matter, the party claiming privilege has the burden

"to establish those facts that are the essential elements of the privileged relationship."  *von*

*Bulow by Auersperg v. von Bulow*, 811 F.2d  "[E]videntiary privileges in litigation are not

favored." *Herbert v. Lando*, 441 U.S. 153, 174-75. (1979).  However, the Second Circuit has

recognized a qualified journalist's privilege derived from the First Amendment.  *Chevron Corp.*

*v. Berlinger*, 629 F.3d 297 (2d Cir. 2011).  The journalist's privilege has been applied to cases

involving reporters and protection of their sources for "newsgathering" purposes. *Berlinger*, 629

F.3d at 306-08.  In contrast, the deposition questions at issue here involved Allan's discussions

with editors and his own personal beliefs.  Allan is not invoking a privilege that involves a

reporter and a source or with regard to "newsgathering" process.  Given the line of inquiry that

traditionally triggers a journalist's privilege–that is, protection of sources and maintaining the

integrity of journalistic investigations–Allan cannot invoke the journalist's privilege in response

to the questions presented to him during his deposition.  Defendants, therefore, must demonstrate

another privilege applies, or that the journalist's privilege is broad enough to include editorial

processes.

4

Defendants rely on *Rosario v. New York Times*, 84 F.R.D. 626 (S.D.N.Y. 1979), as acknowledging the existence of an editorial privilege that should be applicable here. In *Rosario*, plaintiffs brought suit against the *New York Times* for racial discrimination. Top-level editors and the publisher of the *New York Times* asserted an "editorial privilege" when asked questions about the reason for a geographic location of an office. The Court sustained the objections to the questions. While it is true that one of Defendants' bases for the objection was the invocation of the purported editorial privilege, it does not follow that the Court's decision to grant the application was based on a recognition of the privilege. Instead the Court focused on the relevance of the areas of inquiry. It drew a sharp distinction between "business" judgments and "editorial" judgments. In the Court's view, "Title VII and Section 1981 are directed to business judgments, not editorial judgments." *Rosario*, 84 F.R.D. at 631. The Court did not discuss or analyze the claim of privilege, and there is no reason to conclude that it meant to establish such a privilege. The "editorial" questions were simply not relevant to the business judgments at issue in the employment discrimination case, and the objections were sustained.

**B. Guzman's topics of inquiry are relevant.**

Defendants here also assert that Guzman's lines of questioning are irrelevant because neither the chimpanzee cartoon nor the nude photograph would be relevant to claims of hostile work environment or retaliation. (Defs.' Mem. at 14-20.) According to Defendants, "editorial content in a newspaper has no bearing on the terms or conditions of any employee's work environment." (Defs.' Mem. at 17.) Again, Defendants find support in *Rosario*:

> "[The newspaper] is a commercial venture engaged principally in the collection and dissemination of news for profit. We are not concerned here with what it gathers or what is publishes. We are concerned with the people it hires to carry on its business."

84 F.R.D. at 631.

This formulation unnecessarily narrows the inquiry in the employment discrimination context. Title VII and Section 1981 are not concerned simply with judgments, but also with motivations. The plaintiff may explore the motivations of decision makers, or individuals who influenced the decision maker or participated in the decision. *Reeves v. Sanderson*, 530 U.S. 133, 151-153. If Guzman were to show that Allan showed racial motivation with regard to "editorial" decisions it could potentially lead to admissible evidence on the issue of discrimination in the firing process.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for a Protective Order is **DENIED**. Although the Court finds that answers to the challenged questions of Allan do not shed light on the question of racial motivation, Guzman was prevented from developing this area of inquiry, and Allan is ordered to submit to a deposition that is limited to two hours.

**SO ORDERED this 29th day of June 2012**
**New York, New York**

_Ronald Ellis_

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**