# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SANDRA GUZMAN,                          :        Civil Action No.: 09 CV 9323(BSJ)

                          Plaintiff,    :

            vs.                         :

NEWS CORPORATION, NYP HOLDINGS,         :
INC., d/b/a THE NEW YORK POST,          :
and COL ALLAN, in his official and      :
individual capacities,                  :
                                        :
                          Defendants.   :
------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO DISMISS THE COMPLAINT

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Hector Torres (htorres@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

Attorneys for Defendants News Corporation,
NYP Holdings, Inc., d/b/a the New York Post
and Col Allan

## Table of Contents

**Page**

Preliminary Statement ....................................................................................................1

FACTS .............................................................................................................................3

ARGUMENT ..................................................................................................................6

I.     NYP'S CONTENT AND EXERCISE OF EDITORIAL DISCRETION ARE NOT
       ACTIONABLE UNDER ANTI-DISCRIMINATION LAWS .........................................6

       A.     The First Amendment Guarantees A Newspaper's Right To Editorial
              Independence ..................................................................................................6

       B.     Anti-discrimination Laws Cannot Abridge The First Amendment Right
              To Free Expression .........................................................................................7

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR HOSTILE WORK
       ENVIRONMENT .........................................................................................................11

       A.     The Pleading Standard ...................................................................................11

       B.     Plaintiff's Allegations Do Not Rise to the Level of an Actionable
              Hostile Work Environment Claim .................................................................12

              1.     Defendants' editorial speech does not constitute an unlawful
                     employment practice ..........................................................................12

              2.     Allegations of discrete acts of discrimination cannot be considered ........13

              3.     Allegations of conduct the plaintiff did not see or hear cannot
                     be considered ......................................................................................14

       C.     The Remaining Allegations Fail To Plausibly Establish a Severe and
              Pervasive Hostile Environment .....................................................................16

       D.     The Claims Fail Also Because Plaintiff Admits She Did Not Experience
              Any Adverse Effect on Her Job Performance ................................................18

       E.     Plaintiff Fails to State a Hostile Work Environment Claim Under
              the NYCHRL ..................................................................................................19

III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RETALIATION ....................19

       A.     Plaintiff Fails To Allege that She Engaged in Any Protected Activity .................20

       B.     The Retaliation Claim Fails Also Because Other Than Her Termination,
              The Alleged "Retaliatory Acts" Are Not Adverse Employment Actions .............21

C.     Plaintiff's Retaliation Claim Also Fails As She Cannot Establish a Causal
Connection Between Her Complaint And the Allegedly Retaliatory Acts ..........23

IV.    THE CLAIMS AGAINST DEFENDANT MR. ALLAN MUST BE DISMISSED
FOR FAILURE TO STATE A CLAIM ....................................................................23

V.     NEWS CORP. IS NOT PLAINTIFF'S EMPLOYER AND OTHERWISE IS NOT
A PROPER DEFENDANT BECAUSE IT IS A SEPARATE ENTITY FROM NYP.....24

CONCLUSION ..................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

CASES

Alcena v. Raine,
   692 F. Supp 261 (S.D.N.Y. 1988) ......................................................................15

Argeropoulos v. Exide Tech.,
   2009 WL 2132443 (E.D.N.Y. 2009) ...............................................................11, 16

Ashcroft v. Iqbal,
   --- U.S. ----, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ........................................11

Baldwin v. Cablevision Sys. Corp.,
   2009 WL 3079374 (1st Dep't. 2009) .................................................................21

Bauer v. Simpson,
   261 F.3d 775 (9th Cir. 2001) ..............................................................................7

Benette v. Cinemark U.S.A., Inc.,
   295 F. Supp. 2d 243 (W.D.N.Y. 2003) ................................................................14

Billy v. Consolidated Mach. Tool Corp.,
   51 N.Y.2d 152, 412 N.E.2d 934 (1980) ..............................................................24

Blackmon v. UNITE!,
   2005 WL 2038482 (S.D.N.Y. Aug. 25, 2005) .....................................................18

Brown v. Castleton State Coll.,
   Civ. No. 1:09-CV-1, 2009 WL 3248106 (D. Vt. 2009) .........................................11

Burlington Northern & Santa Fe Railway v. White,
   548 U.S. 53 (2006) ........................................................................................22

Byrne v. Telesector Resources Group, Inc.,
   2009 WL 2019951 (2d Cir. 2009) .....................................................................17

Clemmons v. Stuyvesant High School,
   2006 WL 4888057 (S.D.N.Y. 2006) ..................................................................14

Davis v. City University of New York,
   1996 WL 243256 (S.D.N.Y. 1996) ....................................................................15

DelaPaz v. NYC Police Dep't,
   No. 01 Civ. 5416, 2003 WL 21878780 (S.D.N.Y. August 30, 2003) ......................16

Desir v. Concourse Rehabilitation & Nursing Center,
   2008 WL 756156 (S.D.N.Y. 2008) ....................................................................11

DeWitt v. Lieberman,
    48 F. Supp. 2d 280 (S.D.N.Y. 1999) ................................................................. 23

Diaz v. The Cayne Group Ltd,
    2009 WL 4927177 (Sup. Ct. N.Y. Co. Dec. 16, 2009). ......................................... 19

Doe v. City of New York,
    583 F. Supp. 2d 444 (S.D.N.Y. 2008) (Jones, J.) ......................................... 7, 8, 12

Dotson v. City of Syracuse,
    2009 WL 2176127 (N.D.N.Y. 2009) .................................................................. 22

Drummond v. IPC Intern., Inc.,
    400 F. Supp. 2d 521 (E.D.N.Y. 2005) ............................................................... 23

Eugenio v. Walder,
    2009 WL 1929311 (S.D.N.Y. 2009) ............................................................. 13, 20

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998) ...................................................................................... 18

FCC v. Pacifica Foundation,
    438 U.S. 726 (1978) ........................................................................................ 8

Forrest v. Jewish Guild for the Blind,
    309 A.D.2d 546 (1st Dep't 2003), aff'd, 3 N.Y.3d 295 (N.Y. 2004) ......................... 23

Forrest v. Jewish Guild for the Blind,
    3 N.Y.3d 295 (2004) ................................................................................. 19, 20

Foxworth v. Am. Bible Soc'y,
    2005 WL 1837504 (S.D.N.Y. 2005) ............................................................. 13, 20

Fraser v. Fiduciary Trust Co. Intern.,
    2009 WL 2601389 (S.D.N.Y. 2009) ................................................................. 17

Friends of Falun Gong v. Pacific Cultural Enter., Inc.,
    288 F. Supp.2d 273 (E.D.N.Y. 2003), aff'd ......................................................... 9

Green v. Harris Publications, Inc.
    331 F. Supp. 2d 180 (S.D.N.Y. 2004) ........................................................... 14, 15

Harris v. Forklift Sys.,
    510 U.S. 17 (1993) ....................................................................................... 11

Hollander v. Am. Cyanamid Co.,
    895 F.2d 80 (2d Cir. 1990) ............................................................................. 23

Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,
    515 U.S. 557 (1995) ........................................................................................ 7

Husain v. Springer,
    494 F.3d 108 (2d Cir. 2007) ................................................................6

Hustler Magazine v. Falwell,
    485 U.S. 46 (1988) ..............................................................7, 9

Immuno AG v. Moor-Jankowski,
    77 N.Y.2d 235 (1991)........................................................6

Kolenovic v. ABM Janitorial Northeast Inc.,
    2009 WL 161064 (S.D.N.Y. 2009) ..............................................12

Kunzler v. Canon, USA, Inc.,
    257 F. Supp. 2d 574 (E.D.N.Y. 2003) ...................................12, 13, 20

Leibovitz v. NYC Transit Auth.,
    252 F.3d 179 (2d Cir. 2001) ..............................................15

Lyle v. Warner Brothers,
    132 P.3d 211 (2006) (Chin, J., concurring) ...............................10

Magadia v. Napolitano,
    2009 WL 510739 (S.D.N.Y. 2009) ........................................13

Manson v. Little Rock Newspapers, Inc.,
    42 F. Supp. 2d 856 (E.D. Ark. 1999), aff'd, 200 F.3d 1172 (8th Cir. 2000)............6

Marvelli v. CHAPS Comm. Health Ctr.,
    193 F.Supp.2d 636 (E.D.N.Y. 2002) ......................................24

McKenna v. VCS Group LLC
    (D. Conn. Sept 30, 2009) 2009 WL 3193879................................17, 19

McWhite v. NYC Housing Auth.,
    2008 WL 1699446 (E.D.N.Y. 2008) ......................................14

Meyer v. William Floyd Union Free Sch. Dist.,
    No. 07-CV-2524 (JS) (ETB), 2008 WL 4415271 (E.D.N.Y. Sept. 24, 2008) .......23

Miami Herald Pub. Co. v. Tornillo,
    418 U.S. 241 (1974) ........................................................6

Moore v. Syracuse City Sch. Dist.,
    2009 WL 890576 (N.D.N.Y. 2009)........................................21

Mormol v. Costco Wholesale Corp.,
    364 F.3d 54 (2d Cir. 2004) ..............................................17

Murray v. Visiting Nurse Servs. of N.Y.,
    528 F. Supp. 2d 257 (S.D.N.Y. 2007) ............................15, 16, 18, 19

N.Y. Times v. Sullivan,
    376 U.S. 254 (1964) ........................................................................................7, 8

National R.R. Passenger Corp. v. Morgan,
    536 U.S. 101 (2002) ...........................................................................................13

New York Co. Bd. of Ancient Order of Hibernians v. Dinkins,
    814 F. Supp. 358 (S.D.N.Y. 1993) ....................................................................7

Noyer v. Viacom, Inc.,
    22 F. Supp. 2d 301 (S.D.N.Y. 1998) ...............................................................22

Panzarino v. Deloitte & Touche LLP,
    05 Civ. 8502, 2009 WL 3539685 (S.D.N.Y. Oct 29, 2009) (Jones, J.).................14, 16, 19

People v. Dupont,
    107 A.D.2d 247 (1st Dep't 1985) .....................................................................10

Quinn v. Green Tree Credit Corp.,
    159 F.3d 759 (2d Cir. 1998) .............................................................................17

Quiros v. Ciba-Geigy Corp.,
    7 F. Supp. 2d 380 (S.D.N.Y. 1998) .................................................................18

Reckard v. County of Westchester,
    351 F. Supp. 2d 157 (S.D.N.Y. 2004) .............................................................22

Rivoli v. Gannett Co.,
    327 F. Supp. 2d 233 (W.D.N.Y. 2004)..............................................................6

Schiano v. Quality Payroll Sys., Inc.,
    445 F.3d 597 (2d Cir. 2006) .............................................................................20

Stanley v. The Lawson Co.,
    993 F. Supp. 1084 (N.D. Ohio 1997) ...........................................................7, 13

Stembridge v. City of New York,
    88 F. Supp. 2d 276 (S.D.N.Y. 2000) ...............................................................18

Stofsky v. Pawling Cent. School Dist.,
    635 F. Supp. 2d 272 (S.D.N.Y. 2009) .............................................................21

Street v. New York,
    394 U.S. 576 (1969) .............................................................................................8

Taneus v. Brookhaven Mem'l Hosp. Med. Ctr.,
    99 F. Supp. 2d 262 (E.D.N.Y. 2000) ...............................................................13

Velez v. Novartis Pharm. Corp.,
    244 F.R.D. 243 (S.D.N.Y. 2000)......................................................................24

Weston v. Optima Comm. Sys., Inc.,
    2009 WL 3200653 (S.D.N.Y. Oct. 7, 2009) ............................................................16

Williams v. NYC Housing Auth.,
    872 N.Y.S.2d 27 (1st Dep't 2009) ........................................................................19

Wilson v. Con. Ed. Co. of N.Y., Inc.,
    2000 WL 335733 (S.D.N.Y. March 30, 2000) ........................................................18

**STATUTES**

42 U.S.C. § 1981 ("Section 1981") ......................................................................passim

**RULES**

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 3

**OTHER AUTHORITIES**

First Amendment of the United States Constitution ..................................................passim

Article I of the New York State Constitution ......................................................1, 10

NY Constitution, Article I, Section 8 ...................................................................6

New York City Human Rights Law ...............................................................5, 19, 20, 23, 24

New York State Human Rights Law ..........................................................5, 11, 16 ,20, 23, 24

Defendants News Corporation ("News Corp."), NYP Holdings, Inc., d/b/a The New York Post ("NYP") and Col Allan submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint.[1]

### Preliminary Statement

In this action, plaintiff, who worked for six years as an associate editor of NYP's New York Post newspaper (the "Post"), alleges that she, as a Black, Puerto Rican woman, found certain of the Post's headlines, articles and cartoons offensive, that such editorial content contributed to a hostile work environment, and that her employment was terminated in September 2009 in retaliation for complaining seven months earlier about one of the Post's cartoons, which she alleges casts President Barack Obama in a negative light.

The complaint must be dismissed in its entirety. The Post's editorial decisions and content -- including its publication of the purportedly offensive cartoon -- are quintessentially entitled to the protection of the First Amendment of the U.S. Constitution and Article I of the New York State Constitution. Those editorial decisions and content therefore are not actionable under workplace anti-discrimination laws, and the courts uniformly reject attempts to use anti-discrimination laws to impair such constitutional rights. Accordingly, on constitutional grounds alone, the complaint must be dismissed. To hold otherwise would effectively permit newspaper employees to censor or, at a minimum, chill, the exercise of free expression.

Moreover, even apart from First Amendment considerations, under settled law NYP's editorial decisions do not give rise to actionable claims under workplace anti-discrimination laws because those decisions were directed not at employees, but rather (as plaintiff herself concedes) at people "outside the Company" (Compl. ¶ 4).

---

[1] Submitted herewith in support of the motion is the Declaration of Marc E. Kasowitz, dated December 30, 2009. A copy of the complaint ("Compl.") is annexed to the Kasowitz Declaration as Exhibit A.

In addition to her allegations about the Post's editorial content, plaintiff alleges that NYP fostered a hostile work environment, based on a handful of purported incidents of a racial and sexual nature. Plaintiff alleges that some of these incidents were directed at her and that others -- of which she admittedly had no first-hand knowledge -- were directed at unspecified others at unspecified times and places.

These allegations are, as a matter of law, insufficient to save plaintiff's claims. Allegations not connected to plaintiff herself cannot, under settled law, support a claim for hostile work environment. Such allegations -- almost invariably made here with no specificity as to date, location, actor or witness -- are not actionable because they concededly had no impact on the terms and conditions of plaintiff's employment.

What remains when these irrelevant and non-actionable allegations are stripped away, are allegations of harassment directed at plaintiff that are so relatively minor and sporadic that they fail to plausibly allege, as they must, a severe and pervasive hostile environment. With respect to gender, those allegations boil down to plaintiff having been called "Cha Cha #1," "beautiful" and "sexy," and having been shown at an after-work function a photograph of a naked man. With respect to race, plaintiff's allegations relate to an employee singing in her presence songs from West Side Story with a mock Spanish accent, her having once been asked if Pedro Martinez carried a gun or a machete and her having once been "accused" of practicing Santeria. Such conduct does not come close to having been sufficiently severe or pervasive to have had a sufficient impact on plaintiff's working conditions to support a plausible discrimination claim under any statutes, including the more broadly construed New York City Human Rights Law.

Plaintiff's retaliation claims are equally insufficient as a matter of law. Plaintiff alleges that NYP retaliated because she complained to NYP management about the purportedly offensive cartoon. But her activity challenged the Post's right to choose its editorial content --

which is plainly protected by the First Amendment -- not workplace discrimination, and

therefore is not the kind of activity protected from retaliation.  Moreover, the alleged retaliatory

acts (e.g., heightened scrutiny of her expenses for a photo shoot) did not impact the terms and

conditions of her employment, and her employment termination -- because, among other things,

it occurred seven months following her complaints -- cannot, as a matter of well-settled law in

this Circuit, be deemed to have a causal nexus with her complaint about a cartoon.

For these reasons, and as shown further below, the complaint should be dismissed.

## FACTS[2]

Plaintiff, a former associate editor at the Post, a newspaper "[k]nown for its often

sensational headlines" (Compl. ¶¶ 2, 24), makes clear from the outset that her complaint seeks to

challenge the editorial content of the Post.  For example, in paragraph 4 of her complaint,

plaintiff alleges that the "Post has also repeatedly targeted people of color and women outside of

the Company with its racism and sexism through racially and sexually offensive news headlines,

news stories and humiliating, insulting and degrading cartoons.  (Id. ¶ 4; see also id. ¶¶ 60-65.)

The complaint alleges that a racially hostile work environment was created or evidenced

by a cartoon NYP published on February 18, 2009 (the "Stimulus Cartoon"), which depicted two

police officers having shot a chimpanzee, captioned "They'll have to find someone else to write

the next stimulus bill," as well as by other allegedly offensive newspaper content, such as the

headlines "Living La Vida Lesbian [sic]," "N.M. Gov. Throws Sombrero Into Ring," and "Wok

this Way."  (Id. ¶¶ 47, 53, 60-64, 66-78.)  Plaintiff claims (incorrectly) that the Stimulus Cartoon

represented President Barack Obama as the chimpanzee (id. ¶ 67-68), and that NYP knew that

the cartoon would be offensive to persons of color (id. ¶ 69, 72), but published it anyway in order

---

[2] The following allegations are taken from the complaint and, as required under Fed. R. Civ. P. 12(b)(6), are
assumed to be true solely for the purposes of this motion.

to attack the first African-American U.S. President and undermine his authority.[3]  The cartoon

generated public protests and media controversy, to which senior editors at the <u>Post</u> allegedly

responded that those offended by it were "uneducated" or "dumb."  (<u>Id</u>. ¶¶ 76-77.)

        After publication of the Stimulus Cartoon, plaintiff demanded a public apology from the

<u>Post</u>, and "further explained to [a <u>Post</u> Vice President] that she and other non-White employees

felt that the cartoon was part of a larger practice at the <u>Post</u> of discriminating against and

harassing employees on the basis of their race and/or color.  (<u>Id</u>. ¶¶ 80, 81.)  After the <u>Post</u>

purportedly refused to apologize, plaintiff expressed her disapproval of the cartoon in a public

email.  (<u>Id</u>. ¶¶ 82-88.)

        Plaintiff claims that NYP then retaliated against her by downgrading her performance

rating (<u>id</u>. ¶ 100), denying her request to cover the investiture of Justice Sonia Sotomayor in

Washington, D.C. (<u>id</u>. ¶¶ 91-92, 94-99), closely scrutinizing her expenses on a photo shoot

covering the "Legends of Salsa Music" (<u>id</u>. ¶ 103.), and terminating her employment

-- seven months later -- on September 29, 2009.  The <u>Post</u> informed her that the reason for her

termination was that the newspaper section she was responsible for, "Tempo," was struggling to

attract advertisers.  (<u>Id</u>. ¶ 105.)

        In addition to hostile work environment claims based on the allegedly offensive content

of the <u>Post</u>'s headlines, articles and cartoons, plaintiff also bases her claims on certain alleged

acts of supposed harassment.  Thus, she alleges that at an after-work function, Mr. Allan, the

Post's Editor-in-Chief, showed four female Post employees, including plaintiff, a photograph of

a nude male, and that Les Goodstein, a News Corp. executive, referred to her as "Cha Cha #1"

---

[3] Plaintiff neglects to include in her complaint the fact that the cartoon appeared at the same time that it was being widely reported that Congress, not President Obama, drafted the stimulus bill and that the cartoon appeared within days of a highly-publicized incident in which police officers had shot and killed a pet chimpanzee which had attacked and maimed a woman in Connecticut.  Moreover, even accepting plaintiff's allegations that the cartoon was intended to depict President Obama, which it was not, President Obama would not be the first sitting President to be so depicted.  <u>See</u> e.g., http://www.bushorchimp.com (website devoted to its publisher's belief that President George W. Bush looks and acts like a chimpanzee).

and told her she looked "beautiful" and "sexy." (Id. ¶¶ 39, 40.) As to national origin and race, she alleges that after she interviewed baseball player Pedro Martinez, Mr. Allan asked her whether Martinez was carrying a gun or machete; that a Post employee would sing a song from West Side Story in a mock Spanish accent; and that she was once "accused" of practicing Santeria because she kept scented candles in her office. (Id. ¶¶ 50, 52, 54.) The complaint does not allege that any of these alleged acts had a material adverse effect on the terms and conditions of her employment.

Plaintiff also alleges other acts encountered by unspecified other employees, outside of her presence, on unspecified dates. (Id. ¶¶ 37, 45-46, 59.) Some of these allegations relate to discrete employment actions, such as hiring, promotion and termination of others. (Id. ¶¶ 55, 57-59.) One relates to purported private activities of Mr. Allan outside the workplace involving no Post employees. (Id. ¶ 38.)

Nowhere in the complaint does plaintiff allege that she was disadvantaged professionally by the alleged hostile work environment. On the contrary, plaintiff alleges that she was hired in July 2003 to increase minority readership, and that she "created" the monthly "Tempo" section focusing on issues affecting the Latin American community and was responsible for over 25 other sections. According to plaintiff, the Post observed an "over 40%" increase in Hispanic readership due to her work, she "was consistently praised for her impeccable journalistic standards," and her work was "stellar" and recognized as "first-rate," "well-edited, well-designed" and interesting. (Id. ¶¶ 26-31.)[4]

---

[4] In her complaint, plaintiff asserts causes of action against all defendants for discrimination, harassment and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981") (Compl. ¶¶ 112-122), discrimination, harassment and retaliation in violation of the New York State Human Rights Law (the "NYSHRL") (id. ¶¶ 123-131), discrimination, harassment and retaliation in violation of the New York City Human Rights Law (the "NYCHRL") (id. ¶¶ 136-146), and against defendant Mr. Allan for aiding and abetting violations of the NYSHRL (id. ¶¶ 132-135) and the NYCHRL (id. ¶¶ 147-151). All such claims must be dismissed in their entirety.

# ARGUMENT

## I.

## NYP'S CONTENT AND EXERCISE OF EDITORIAL DISCRETION ARE NOT ACTIONABLE UNDER ANTI-DISCRIMINATION LAWS

The complaint makes clear that plaintiff is really objecting to the Post's "news headlines," "news stories" and "cartoons" (see, e.g., Compl. ¶¶ 4, 6-8, 61-85, 87-88). It thus constitutes a frontal attack on -- and impermissibly asks this Court to punish -- NYP for the exercise of its editorial judgment and independence, which are quintessentially entitled to the protection of the First Amendment.[5]

### A.   The First Amendment Guarantees A Newspaper's Right To Editorial Independence

A newspaper's editorial independence is fundamental to the First Amendment, regardless of how controversial its content may be. Miami Herald Pub. Co. v. Tornillo, 418 U.S. 241, 255 (1974) (First Amendment affords unequivocal protection "to editorial judgment and to the free expression of views on ... issues, however controversial") (quotation marks omitted).[6]

Moreover, newspaper employees have no right to determine the expressive content of their employers. Miami Herald v. Tornillo, 418 U.S. at 258 ("The choice of material to go into a newspaper ... and treatment of public issues and public officials -- whether fair or unfair -- constitute the exercise of editorial control and judgment."); Rivoli v. Gannett Co., 327 F. Supp. 2d 233, 241 (W.D.N.Y. 2004) (newspaper publisher enjoys First Amendment right to complete control over its editorial content); Manson v. Little Rock Newspapers, Inc., 42 F. Supp. 2d 856,

---

[5] Freedom of the press is also a fundamental right under New York's Constitution. See NY Constitution, Article I, Section 8 (every citizen has the right to "freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty... of the press."). In fact, the protection New York's Constitution affords speech is, if anything, even broader than that of the U.S. Constitution. See Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235, 248 (1991).

[6] The need to protect newspapers from claims arising from their editorial content is particularly acute because punishing newspapers "for publishing certain content ... creates a chilling effect which gives rise to a First Amendment injury." Husain v. Springer, 494 F.3d 108, 128 (2d Cir. 2007).

865 (E.D. Ark. 1999), aff'd, 200 F.3d 1172 (8th Cir. 2000) (owners and editorial staff of the

newspaper, not the plaintiff reporter, have the "right to control the content of the paper").

**B.      Anti-discrimination Laws Cannot Abridge**
**        The First Amendment Right To Free Expression**

By seeking to use federal and state laws to penalize defendants for exercising their free

speech rights, the complaint contravenes the protection that the First Amendment affords the

Post.  That plaintiff has labeled her claims as discrimination claims can in no way limit that

protection or overcome defendants' free speech rights.  See N.Y. Times Co. v. Sullivan, 376 U.S.

254, 269 (1964) ("mere labels" assigned to claims are not relevant in assessing whether allegedly

actionable conduct is protected by the First Amendment); see also Hustler Magazine v. Falwell,

485 U.S. 46 (1988) (First Amendment bars intentional infliction of emotional distress claim

against magazine for publication of allegedly offensive cartoon.)

The Supreme Court has thus held that when First Amendment rights to free expression

are implicated, an anti-discrimination statute must yield and may not be used to alter protected

expressive content.  In Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515

U.S. 557, 573 (1995), the Court held that the use of a public anti-discrimination accommodations

law to prevent parade organizers from excluding marchers with messages contrary to theirs

"violates the fundamental rule of protection under the First Amendment, that a speaker has the

autonomy to choose the content of his own message."[7]

Moreover, while restraints on speech stemming from anti-discrimination statutes

ordinarily are "merely incidental" to those statutes' objectives, Doe v. City of New York, 583 F.

---

[7] See also Bauer v. Sampson, 261 F.3d 775, 783 (9th Cir. 2001) (unconstitutional for state college to punish professor for his alleged racial discrimination based on his published articles, even though they were "at times adolescent, insulting, crude and uncivil"); Stanley v. The Lawson Co., 993 F. Supp. 1084, 1089 (N.D. Ohio 1997) ("if Title VII ... required Defendant to remove the adult magazines from its stores because an employee found them offensive, those laws would violate the First Amendment"); New York Co. Bd. of Ancient Order of Hibernians v. Dinkins, 814 F. Supp. 358, 369 (S.D.N.Y. 1993) (city commission violated constitutional rights of parade organizers, because "by forcing the inclusion of [gay marchers] in the parade, the Commission sought to dictate how the Parade sponsors would express their thoughts").

Supp. 2d 444, 448 (S.D.N.Y. 2008) (Jones, J.), that is the case only where the "'government does not target conduct on the basis of its expressive content,'" id. at 448 (quoting R.A.V. v. St. Paul Minnesota, 505 U.S. 377, 389 (1992)).  In Doe, the plaintiff alleged an extensive pattern of abusive racist harassment, through internal emails within the workplace, over a period of almost three and one half years.  583 F. Supp. 2d at 446.  Such facts are wholly distinct from those alleged here where, among other things, plaintiff's allegations are directed precisely at the "expressive content" that is published in the New York Post newspaper.

Indeed, the overwhelming bulk of the conduct plaintiff claims created a hostile work environment consists of the Post's published editorial content.  Plaintiff devotes much of her complaint to allegations concerning the Stimulus Cartoon, claiming that the chimpanzee in the cartoon was a racist representation of President Obama.  In fact, that is not so.[8]  But even assuming arguendo that plaintiff's interpretation of the cartoon were correct, that would not render the cartoon any less entitled to First Amendment protection.  See N.Y. Times v. Sullivan, 376 U.S. at 270 ("debate on public issues . . . may well include vehement, caustic, and sometimes unpleasantly sharp attacks on … public officials").  That plaintiff or others were offended by the Post's published content cannot, in the face of the First Amendment, form the basis for recovery:

> [T]he fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection. For it is a central tenet of the First Amendment that the government must remain neutral in the marketplace of ideas.

FCC v. Pacifica Foundation, 438 U.S. 726, 745-46 (1978); see also Street v. New York, 394 U.S. 576, 592 (1969) ("It is firmly settled that ... the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers").

---

[8] See supra n.3.

8

The Supreme Court has made clear that First Amendment protection applies equally -- if not especially -- to political cartoons.  In Hustler v. Falwell, the Court held that the First Amendment barred a nationally known minister's claim for intentional infliction of emotional distress arising from Hustler's publication of a cartoon depicting him as having engaged in a drunken incestuous rendezvous with his mother in an outhouse.  The Court noted that political cartoons have a longstanding history in political debate:

> The art of the cartoonist is often not reasoned or evenhanded, but slashing and one-sided.... "The political cartoon is a weapon of attack, of scorn and ridicule and satire...."  Despite their sometimes caustic nature, from the early cartoon portraying George Washington as an ass down to the present day, graphic depictions and satirical cartoons have played a prominent role in public and political debate.

485 U.S. at 54 (reaffirming "longstanding refusal to allow damages to be awarded because the speech in question may have an adverse emotional impact on the audience," id. at 55) (citation omitted).

The First Amendment principles applicable in Hustler are a fortiori applicable here, where the plaintiff, unlike in Hustler, was not even the subject of the allegedly offensive cartoon.  Plaintiff's claims for damages arising from any alleged offense taken at, or any "adverse emotional impact" of, NYP having published the Stimulus Cartoon or any other editorial content must therefore be dismissed.[9]  See Friends of Falun Gong v. Pacific Cultural Enter., Inc., 288 F. Supp.2d 273, 286 (E.D.N.Y. 2003), aff'd, 109 Fed. App. 442 (2d Cir. 2004) (dismissing state harassment and discrimination claims against newspaper for publishing articles critical of

---

[9] Also undeniably constituting protected editorial content are, among others, the allegations concerning: the headlines "Living La Vida Lesbian [sic]," "N.M. Gov Throws Sombrero Into Ring," and "Wok this Way" (Compl. ¶¶ 47, 61, 62); a columnist's published column opining, "Good for [New York Giants'] football coach Tom] Coughlin for tightening the noose around Plaxico Burress" (id. ¶ 63); an editor questioning whether NYP should do a story on cars vandalized and marked with racial epithets (id. ¶ 53); and NYP purportedly considering publishing a cartoon depicting Jews as sewer rats (id. ¶ 64).  It bears noting that plaintiff cannot claim to have been surprised by the Post's editorial style or content.  Plaintiff, an experienced journalist nationally recognized for her reporting, (id. ¶ 7), herself admits that the Post is "[k]nown for its often sensational headlines, ... is one of the largest newspapers in the country, and is read by people all over the world."  (Id. ¶ 2.)  With full awareness of its editorial approach, plaintiff accepted its offer of employment and continued to work there for six years. (Id. ¶¶ 24, 104).

plaintiff, given, among other things, the "serious [First Amendment] concerns"); People v. Dupont, 107 A.D.2d 247, 254 (1st Dep't 1985) (defendant's criminal harassment conviction for publishing cartoons and articles depicting an attorney's financial and sexual dealings in a negative light "violated [defendant's] First Amendment rights in that he was punished for exercising his right to free speech").

In sum, the free speech protections afforded by the First Amendment to the U.S. Constitution and Article I of the New York State Constitution mandate dismissal of plaintiff's claims.  In concurring with the California Supreme Court's rejection of a hostile work environment claim, Judge Chin of that court summarized cogently the reasons such protections are necessary:

> Lawsuits like this one, directed at restricting the creative process in a workplace whose very business is speech related, present a clear and present danger to fundamental free speech rights....[T]he free speech problem is especially serious if the speech that creates the hostile work environment is an inherent part of the employer's business....
>
> Accordingly, I agree with the general test proposed in the amicus curiae brief of the California Newspapers Publishers Association et al.: "Where, as here, an employer's product is protected by the First Amendment -- whether it be a television program, a newspaper, a book, or any other similar work -- the challenged speech should not be actionable if the court finds that the speech arose in the context of the creative and/or editorial process, and it was not directed at or about the plaintiff."

Lyle v. Warner Brothers, 132 P.3d 211, 297-300 (2006) (Chin, J., concurring) (internal citations and quotations omitted).[10]

---

[10] The majority did not reach the constitutional issue, finding the claims insufficiently pleaded.

## II.

### THE COMPLAINT FAILS
### TO STATE A CLAIM FOR
### HOSTILE WORK ENVIRONMENT

**A.**     **The Pleading Standard**

To state a claim for hostile work environment under Section 1981 and the NYSHRL,[11] a

plaintiff must allege facts showing that the workplace is "permeated with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment." Harris v. Forklift Sys.,

Inc., 510 U.S. 17, 21 (1993) (quotations and citations omitted).  Moreover, under Ashcroft v.

Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), the complaint must allege

specific facts showing that a hostile work environment was not merely possible, but was

plausible:

> To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead
> facts sufficient "to state a claim for relief that is plausible on its face." Bell
> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  "A claim has facial plausibility
> when the plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct alleged."
> [citing Iqbal, 129 S. Ct. at 1949] "The plausibility standard is not akin to a
> 'probability requirement,' but it asks for more than a sheer possibility that a
> defendant has acted unlawfully." Id. …. The plaintiff's factual allegations, in
> short, must show that the plaintiff's claim is "plausible," not merely
> "conceivable." Id. at 1951.

Argeropoulos v. Exide Tech., 2009 WL 2132443, *2 (E.D.N.Y. July 8, 2009) (dismissing Title

VII claim where plaintiff relied mainly on non-specific allegations concerning the frequency of

the harassment); see also Brown v. Castleton State Coll., Civ. No. 1:09-CV-1, 2009 WL 3248106

---

[11] Hostile work environment claims under Section 1981 and the NYSHRL are governed by the same standard.  Desir
v. Concourse Rehabilitation & Nursing Center, 2008 WL 756156 at *4 (S.D.N.Y. March 21, 2008).

(D. Vt. 2009) (dismissing Section 1981 claim where plaintiff failed to plead sufficient facts to create a plausible inference of discriminatory intent).[12]

**B.   Plaintiff's Allegations Do Not Rise to the Level
of an Actionable Hostile Work Environment Claim**

As shown below, under well-settled authority in this Court, plaintiff's relevant allegations, which are limited to a few isolated episodes occurring over plaintiff's six years of employment, do not plausibly establish a hostile work environment.  Before reaching those allegations (see infra at II(C)), it is important to eliminate those other allegations -- the overwhelming bulk of the complaint -- which cannot be considered at all on plaintiff's hostile work environment claims.  See, e.g., Kolenovic v. ABM Janitorial Northeast Inc., 2009 WL 161064, *2 (S.D.N.Y. 2009) ("Several incidents must be removed from the equation at the outset because they support no inference of mistreatment.") (internal quotations omitted).

**1.   Defendants' editorial speech does not
constitute an unlawful employment practice**

Plaintiff concedes in her complaint that the published cartoons, news articles and news headlines she claims are discriminatory were not directed at Post employees.  Indeed, plaintiff herself alleges that defendants "repeatedly targeted people of color and women outside the Company with its racism and sexism through racially and sexually offensive news headlines, news stories and humiliating, insulting and degrading cartoons."  (Compl. ¶ 4 (emphasis added).)

However, acts of discrimination "against private individuals, who are not in an employment relationship with the person complained about, are not within the area of unlawful employment practices prohibited by Tile VII."  Kunzler v. Canon, USA, Inc., 257 F. Supp. 2d

---

[12] Although ordinarily the "severity and pervasiveness" of alleged discriminatory conduct on a hostile work environment claim is a factual question, as this Court has held pre-Iqbal, see Doe, 583 F. Supp. 2d at 450, here the relevant allegations are so sparse, and the claim so implausible under Iqbal, that dismissal is warranted.  See Doe, 583 F. Supp. 2d at 449 ("To state a hostile work environment claim, a plaintiff must allege that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment,'" quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)).

574, 580 (E.D.N.Y. 2003). It "is inherent in the definition of a racially hostile work environment

… that the person against whom the hostility is directed must be in an employment relationship

with the employer." Wimmer v. Suffolk Co. Police Dep't, 176 F.3d 125, 136; see also Foxworth

v. Am. Bible Soc'y, 2005 WL 1837504, *4 (S.D.N.Y. 2005) (same).

      Thus, purported discrimination directed towards non-employees "may not be pursued

under Title VII or related state and municipal anti-discrimination statutes." Foxworth, at *4

(discrimination against the "African-American marketplace" by bible seller not an unlawful

employment practice). See also Wimmer, 176 F.3d at 135 (police discrimination against public

not an unlawful employment practice); Eugenio v. Walder, 2009 WL 1929311, *25 (S.D.N.Y.

2009) (school district discrimination against black schoolchildren not an unlawful employment

practice); Kunzler, 257 F. Supp. 2d at 579 (sexual harassment against customer not an unlawful

employment practice); Taneus v. Brookhaven Mem'l Hosp. Med. Ctr., 99 F. Supp. 2d 262, 267

(E.D.N.Y. 2000) (medical guide containing discriminatory statements about certain patients not

an unlawful employment practice); Stanley v. The Lawson Co., 993 F. Supp. 1084, 1089 (N.D.

Ohio 1997) (selling porn magazines not "an action aimed at Plaintiff because of her sex and thus

was insufficient to support a claim for sexual harassment").

      Accordingly, plaintiff's allegations concerning the Stimulus Cartoon and other published

Post content cannot be considered in evaluating her discrimination claims.

### 2.    Allegations of discrete acts of discrimination cannot be considered

      Allegations of "discrete acts" of alleged discrimination, such as "termination, failure to

promote, denial of transfer or refusal to hire," are "different in kind" from and may not be

considered on hostile work environment claims. National R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 114-15 (2002). See Magadia v. Napolitano, 2009 WL 510739, *17 (S.D.N.Y. 2009)

(hostile work environment "is a wholly separate cause of action [from discrimination] designed

to address <u>other types of work</u> place behavior, like constant jokes and ridicule or physical intimidation") (emphasis in original); <u>McWhite v. NYC Housing Auth.</u>, 2008 WL 1699446, *8 (E.D.N.Y. 2008) ("to the extent that the denials of promotion were discrete acts that involved different people and were unconnected in any way to the harassment plaintiff has alleged, they will not be considered as part of her hostile work environment claim"); <u>Clemmons v. Stuyvesant High School</u>, 2006 WL 4888057, *11 (S.D.N.Y. 2006) ("discrete instances of misconduct... are not properly addressed under the hostile work environment analysis").

Thus, plaintiff's allegations that, for example, the <u>Post</u> has only one non-White editor, (Compl. ¶ 57), or that more employees of color were let go recently than White employees, (<u>id.</u> ¶ 58), or that work assignments were not fairly distributed among copy assistants (<u>id.</u> ¶ 59), provide no support for any of her claims.

### 3. Allegations of conduct the plaintiff did not see or hear cannot be considered

Plaintiff's allegations relating to acts which occurred outside of her presence must also be disregarded because such conduct did not alter the terms or conditions of her employment. <u>See</u> <u>Green v. Harris Publications, Inc.</u> 331 F. Supp. 2d 180, 192 (S.D.N.Y. 2004); <u>see also</u> <u>Panzarino v. Deloitte & Touche LLP</u>, 05 Civ. 8502, 2009 WL 3539685, *8 (S.D.N.Y. Oct 29, 2009) (Jones, J.) (alleged incidents insufficient where they "were not physically threatening or directed at ... employees, and the majority were heard second- or third-hand"); <u>Benette v. Cinemark U.S.A., Inc.</u>, 295 F. Supp. 2d 243, 251-52 (W.D.N.Y. 2003) (granting defendant summary judgment where "most of the incidents were not directed at [plaintiff] herself or they did not happen in her presence").

These insufficient allegations include that Mr. Allan touched another female inappropriately at a party, attended a strip club, or yelled for a "damn girl" to answer his telephone (Compl. ¶¶ 37-39); managers made undated and unspecified sexual propositions (<u>id.</u> ¶¶ 45-46);

and editors made "disparaging remarks" outside of plaintiff's presence, such as an editor's referring to Henry L. Gates as an "angry Black man," another's referring to hiring more "testosterone," or another's making "disparaging comments in the workplace about Hispanics" (id. ¶¶ 48, 51, 56).

According to her own complaint, plaintiff did not witness or hear any of these alleged acts or statements. She fails to plead how they impacted her work environment or affected her job performance, or when or how she learned about them. They thus cannot be regarded as evidence of a hostile work environment. See Leibovitz v. NYC Transit Auth., 252 F.3d 179, 190 (2d Cir. 2001) (employee who was not present when the harassment supposedly occurred, and did not even know of the harassment while it was ongoing had no valid hostile work environment claim).[13]

Allegations further fail where, as here, none of them is dated, and it is not possible to determine whether the acts occurred within plaintiff's employment period or within the statute of limitations period. Absent relevant dates, the pleading of such incidents is entitled to little, if any, weight. See, e.g., Davis v. City University of New York, 1996 WL 243256, *14 (S.D.N.Y. 1996) (dismissing Section 1981 claim where "it cannot be ascertained from the amended complaint" when the facts giving rise to the claim occurred); Alcena v. Raine, 692 F. Supp 261, 270 (S.D.N.Y. 1988) (dismissing complaint where the court is "unable to determine which of the causes of action may be a present violation because not all of the relevant dates have been set forth").

---

[13] See also Green, 331 F. Supp. 2d at 192 ("retelling of these alleged discriminatory statements that were made at some unspecified point in time, perhaps not even during the relevant period of employment, is not evidence of the existence of a hostile work environment"); Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 280 (S.D.N.Y. 2007) ("comments that plaintiff learned of second-hand after the commencement of this action… add little to plaintiff's hostile environment claim").

**C.      The Remaining Allegations Fail To Plausibly
         Establish a Severe and Pervasive Hostile Environment**

To state a hostile work environment claim under Section 1981 and the NYSHRL:

> a plaintiff "must show that the workplace is 'permeated with discriminatory
> intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the
> conditions of the victim's employment and create an abusive working
> environment.'" Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) …. A plaintiff
> "must show not only that she subjectively perceived the environment to be
> abusive, but also that the environment was objectively hostile and abusive."
> Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006) …. "Generally, 'incidents
> must be more than episodic; they must be sufficiently continuous and concerted in
> order to be deemed pervasive.'" Id. (quoting Alfano v. Costello, 294 F.3d 365,
> 374 (2d Cir. 2002)).

Panzarino, 2009 WL 3539685 at *8.

Thus, the Second Circuit has erected "a remarkably high hurdle with respect to the level

and frequency of offensive conduct that must be present in order to sustain… a [hostile

environment] claim" under Section 1981 and the NYSHRL.  DelaPaz v. NYC Police Dep't, No.

01 Civ. 5416, 2003 WL 21878780, *3 (S.D.N.Y. August 8, 2003).  See also Murray, 528 F.

Supp. 2d at 278.  Moreover, where, as here, a complaint alleges only conclusorily that something

occurred "repeatedly," it is regarded as pleading only isolated events.  Weston v. Optima Comm.

Sys., Inc., 2009 WL 3200653 at * 3 (S.D.N.Y. Oct. 7, 2009) (granting motion to dismiss for lack

of facial plausibility where complaint "contains no facts regarding the frequency or severity of

the offensive behavior or the length of time [plaintiff] had to endure it"); Argeropoulos, 2009

WL 2132443 at *6 (non-specific allegations of frequency -- that the conduct occurred on a "daily

and continuous basis" -- are no longer sufficient to survive a motion to dismiss).  Plaintiff here

alleges that she has provided only examples of the harassment; however, a plaintiff's allegations

that "anecdotes he provided were merely some examples of discrimination that occurred on a

'daily and continuous basis'" are conclusory and not probative of a hostile work environment

claim.  Id.

16

Here, plaintiff makes essentially five allegations of sexually or racially tinged acts over her 6-year period of employment:  (i) at an after-work function defendant Mr. Allan displayed a picture of a naked man to her and three other employees (Compl. ¶ 35); (ii) one employee "repeatedly" called her "beautiful" and "sexy," referred to her as "Cha Cha #1" and "routinely stared" at other female employees' "breasts and butts" (id. ¶¶ 40-41); (iii) she was repeatedly subjected to songs from West Side Story sung in a mocking Spanish accent (id. ¶ 52); (iv) she was asked once if Pedro Martinez was carrying a gun or machete during an interview (id. ¶ 50); and (v) she was once "falsely accused" of engaging in "Santeria" for keeping scented candles in her office (id. ¶ 54).

Courts in this Circuit have found far more severe conduct insufficient to constitute a hostile work environment.  See, e.g., Byrne v. Telesector Resources Group, Inc., 2009 WL 2019951, *4 (2d Cir. 2009) (allegations that colleague labeled his work fax number as "25penis," former manager accused of discriminating against women was invited to an office holiday party, and plaintiff overheard male colleagues discussing topics inappropriate and sexual in nature on three occasions were insufficient to state a claim); Mormol v. Costco Wholesale Corp., 364 F.3d 54, 59 (2d Cir. 2004) (six incidents within a one-month period were "far from being pervasive"); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (allegations that supervisor told employee she was voted the "sleekest ass" in the office, and deliberately touched her on the breast with his papers were insufficient); McKenna v. VCS Group, LLC, 2009 WL 3193879 (D. Conn. Sept 30, 2009) (at least fifteen comments concerning plaintiff's marital status, breast size and cleavage were "episodic" and insufficient to "reach the level of pervasiveness required to allege a Title VII violation"); Fraser v. Fiduciary Trust Co. Intern., 2009 WL 2601389, *8 (S.D.N.Y. 2009) (use of "street slang" when talking to African-American employee, insensitive remarks about African-Americans such as suggestions that they are lazy and on welfare,

disparaging remarks about African-American women employees, and one instance where

employee was called a "nigger" were insufficient to establish a hostile work environment);

Stembridge v. City of New York, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (allegations that

defendants referred to plaintiff as an "uppity nigger" and a "boy," called African-American

youths "animals" and Mayor David Dinkins a "washroom attendant," and hung a black doll from

a door in the office were insufficient to establish a hostile work environment); Quiros v. Ciba-

Geigy Corp., 7 F. Supp. 2d 380, 385 (S.D.N.Y. 1998) (allegations that plaintiff was sometimes

called "Pancho" and ridiculed for having a difficult accent to understand were insufficient mere

"conclusory statement[s] of alleged discrimination").[14]

　　　　Taken on their face, plaintiffs' allegations do not amount to a hostile work environment.

Her claims must therefore be dismissed.

**D.    The Claims Fail Also Because Plaintiff Admits She Did Not
　　　　Experience Any Adverse Effect on Her Job Performance　　**

　　　　A plaintiff fails to plead a hostile work environment claim where she "points to no

resulting disadvantage or adverse effect on her job performance caused by the incidents she

describes." Blackmon v. UNITE!, 2005 WL 2038482, at *14 (S.D.N.Y. Aug. 25, 2005); Wilson

v. Con. Ed. Co. of N.Y., Inc., 2000 WL 335733, at *6 (S.D.N.Y. March 30, 2000) (plaintiff must

plead "how he was harmed or how his alleged hostile work environment interfered with his work

performance"). Moreover, "simple teasing… offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the "terms and conditions of

employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). A plaintiff cannot

survive a motion to dismiss if she "fails to provide sufficient factual matter about how the

---

[14] See also Murray, 528 F. Supp. 2d at 279 (even if plaintiff "may have been justifiably offended, … the mere utterance of an … epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII.").

alleged incidents created an abusive environment altering the course of her employment."
McKenna, 2009 WL 3193879 at *5.

Plaintiff here fails to allege that the purported harassment during her six years of employment had any adverse effect on her performance.  To the contrary, plaintiff herself alleges that her performance was exemplary, impeccable and successful.  See Compl. ¶ 30.  That plaintiff concedes that the alleged harassment "had no effect on [her] ability to perform the functions of [her] job ... weighs in favor of granting summary judgment to defendant." Murray, 528 F. Supp. 2d at 278 (citing Portee v. Deutsche Bank, 2006 WL 559448, at *13 (S.D.N.Y. March 8, 2006)).

**E.      Plaintiff Fails to State a Hostile Work Environment Claim Under the NYCHRL**

Plaintiff likewise fails to state a hostile work environment claim under the NYCHRL.  In Williams v. NYC Housing Auth., 872 N.Y.S.2d 27, 39 (1st Dep't 2009), the First Department emphasized that, like Title VII, the NYCHRL was not intended to create a general civility code, and the plaintiff must demonstrate through her allegations that "she has been treated less well than other employees" because of her gender or race.  Williams, at 39, 40; Panzarino, 2009 WL 3539685 at *9.  Here, plaintiff's allegations do not establish any alteration in the terms or conditions of her employment.  She has alleged no other employees from whom she was treated differently, and no material obligation or requirement that rises to more than "a trivial inconvenience." See Diaz v. The Cayne Group Ltd, 2009 WL 4927177 (Sup. Ct. N.Y. Co. Dec. 16, 2009).

### III.

### THE COMPLAINT FAILS TO
### STATE A CLAIM FOR RETALIATION

To state a claim for retaliation, a plaintiff must allege that "(1) she engaged in a protected activity [challenging her employer's action]; (2) her employer was aware of this activity; (3) the

employer took adverse employment action against her, and (4) a causal connection exists between the alleged adverse action and the protected activity." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006). The elements are the same under Section 1981, NYSHRL and NYCHRL. See Eugenio v. Walder, 2009 WL 1929311, *28 (S.D.N.Y. March 3, 2009); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312 (2004).

**A.    Plaintiff Fails To Allege that She Engaged in Any Protected Activity**

To satisfy the first prong (a protected activity), a plaintiff must demonstrate "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Wimmer, 176 F.3d at 134. The Second Circuit emphasized in Wimmer that a retaliation claim is not cognizable unless the purported protected activity is "directed at an unlawful employment practice of his employer." Id. at 135 (emphasis in original). This is because the good faith component of a retaliation claim "is satisfied only if the conduct complained about is plainly an employment practice, whether or not that practice is engaged in by individuals who stand in an employment relationship with the plaintiff." Kunzler, 257 F. Supp. 2d at 583.

Here, plaintiff's purported protected activity -- complaining to management about the Stimulus Cartoon -- was not protected at all because it was not directed at an alleged unlawful employment practice, but rather at NYP's editorial decision to run the cartoon. See Compl. ¶¶ 80-88. Thus, plaintiff could not have had a "good faith, reasonable belief" that publishing the cartoon was an employment practice. See Foxworth, 2005 WL 1837504 at *4 (complaint about employer's discrimination against the "African-American marketplace" not a protected activity); Wimmer, 176 F.3d at 135 (plaintiff complained about discriminatory conduct by police against public); Eugenio, 2009 WL 1929311 at *25 (plaintiff complained about school district's discrimination against black schoolchildren); Panzarino, 2009 WL 3539685 at *13; Kunzler, 257 F. Supp. 2d at 579 (plaintiff complained about sexual harassment by employee against

customer).  This is particularly so here, where plaintiff is an experienced reporter and editor and is or should be knowledgeable about the right of the press to editorial independence and free speech.

Finally, plaintiff's attempt to save her retaliation claim by conclusorily pleading that she complained to management about a general hostile work environment (Compl. ¶ 84) is likewise insufficient.  See Stofsky v. Pawling Cent. School Dist., 635 F. Supp. 2d 272, 302 (S.D.N.Y. 2009) (plaintiff's allegations of retaliation are insufficient where she "does not specify the conduct that Plaintiff claims to be the basis for her retaliation claims [but] merely alleges that she 'opposed conduct' that was unlawful under the ADEA and Title VII, and that she 'complained about the discriminatory conduct' that violated the ADEA, Title VII, and the ADA") (internal citations omitted); Moore v. Syracuse City Sch. Dist., 2009 WL 890576, *5 (N.D.N.Y. 2009) (plaintiff's "allegation of [engaging in] whistle-blowing with no context is meaningless").

## B.   The Retaliation Claim Fails Also Because Other Than Her Termination, The Alleged "Retaliatory Acts" Are Not Adverse Employment Actions

Plaintiff's retaliation claim fails also because she experienced no adverse employment actions other than her termination.[15]  Plaintiff alleges three such purported acts of retaliation: (i) a performance review of "meets standards," five months after her purported protected activity (Comp. ¶ 100); (ii) failure to permit her to cover Justice Sotomayor in Washington, D.C. for an article, six months after her purported protected activity (id. ¶¶ 94, 97); and (iii) excess scrutiny on one undated occasion of expenses for a photo shoot (id. ¶ 103).

None of these purported acts qualifies.  A downgraded evaluation is insufficient, where, as here, the evaluation, "while less favorable than previous ones, was still favorable overall." Baldwin v. Cablevision Sys. Corp., 2009 WL 3079374, *5 (1st Dep't. 2009); see also Fuller v. Instinet, Inc. 120 Fed. App. 845, 847 (2d Cir. 2004) (holding that an average evaluation is not,

---

[15] As shown infra at III(C), her termination also does not support her claims.

standing alone, an adverse employment action).  Indeed, plaintiff does not claim that she was given a negative review; rather, she concedes her performance review described her as "terrific." (Compl. ¶ 30.)

With respect to covering Justice Sotomayor, as shown (supra at I(A)), a news reporter has no right to determine what news stories a paper covers.  Nor is it an adverse action for an employer to fail to assign an employee to perform the task she desired; mere subjective dissatisfaction over an assignment is insufficient to state a claim.  Reckard v. County of Westchester, 351 F. Supp. 2d 157 (S.D.N.Y. 2004).  Indeed, plaintiff does not even allege that she was not selected to write the story in favor of another; plaintiff concedes that NYP simply declined to cover the story. (Compl. ¶ 98.)  Further, NYP had non-discriminatory reasons not to permit plaintiff to cover the story -- NYP has a Washington D.C. Bureau Chief (Compl. ¶ 73) and, as plaintiff admits, Judge Sotomayor was her "friend" (id. ¶ 91.)  This could not, therefore, constitute an actionable act of retaliation.  As Judge Rakoff aptly held in dismissing similar claims, "while one cannot read plaintiff's submissions without recognizing that she feels ill-used, it is an ill use of federal discrimination laws to treat them as sharpening stones on which to grind personal axes." Noyer v. Viacom, Inc., 22 F. Supp. 2d 301, 308 (S.D.N.Y. 1998).

Plaintiff's claim of excess scrutiny of expenses is at worst a petty slight or trivial inconvenience, not an adverse employment action.  "The law in this circuit, post-[Burlington Northern & Santa Fe Railway v. White, 548 U.S. 53 (2006)], is clear that an employer's excessive scrutiny of an employee, without more, fails to satisfy the requirements for an adverse employment action." Dotson v. City of Syracuse, 2009 WL 2176127, *18 (N.D.N.Y. 2009).  In any event, it is hardly surprising in this recession that the Post sought to control expenses.

**C.     Plaintiff's Retaliation Claim Also Fails As She Cannot Establish a Causal**
**Connection Between Her Complaint And the Allegedly Retaliatory Acts**

The only adverse employment action pled, therefore, is plaintiff's discharge, which

occurred seven months following her purportedly protected activity.  However, a seven-month

lapse between a protected act and retaliation is too long to demonstrate a causal connection.  See

Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (no causal connection given

three-month gap); Meyer v. William Floyd Union Free Sch. Dist., No. 07-CV-2524 (JS) (ETB),

2008 WL 4415271 (E.D.N.Y. Sept. 24, 2008) (motion to dismiss retaliation claim granted

because of a two-month time gap between complaint and termination).

The complaint thus fails to set forth any plausible causal connection between plaintiff's

complaining to management in February 2009 (even if it had been protected conduct, which it

was not) and her employment termination in late September 2009.

## IV.

### THE CLAIMS AGAINST DEFENDANT MR. ALLAN
### MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiff alleges claims against Mr. Allan, as an aider and abettor of violations of the

NYSHRL and the NYCHRL (fifth and eighth causes of action).  However, plaintiff has not

pleaded how Mr. Allan allegedly "aided and abetted" anyone with respect to anything.

Moreover, to state an aider and abettor claim, "liability must first be established as to the

employer/principal." DeWitt v. Lieberman, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999); see also

Drummond v. IPC Intern., Inc., 400 F. Supp. 2d 521, 536 (E.D.N.Y. 2005) (same); Yerry v.

Pizza Hut of S.E. Kansas; 186 F. Supp. 2d 178, 187 (N.D.N.Y. 2002) ("It is generally

accepted… that once an employer has been found to have not discriminated, there is no predicate

for imposing liability on the supervisors under an aiding and abetting theory."); Forrest v. Jewish

Guild for the Blind, 309 A.D.2d 546, 559-60 (1st Dep't 2003), aff'd, 3 N.Y.3d 295 (N.Y. 2004)

("the aiding and abetting claims here could only survive if plaintiff had successfully raised a question of fact as to any of the discrimination claims").  As shown, plaintiff has failed to state any claim for primary violation of the NYSHRL or the NYCHRL; therefore, her aider and abettor claims also must fail.

V.

## NEWS CORP. IS NOT PLAINTIFF'S EMPLOYER
## AND OTHERWISE IS NOT A PROPER DEFENDANT

Plaintiff's claims must be dismissed against News Corp., which is the ultimate parent company of NYP, and was never plaintiff's employer.  Nor did plaintiff plead any facts to the contrary.  It is well-settled that a parent company is not liable for the torts of its subsidiary, unless it can be shown that the parent exercises complete dominion and control over the subsidiary.  See Billy v. Consolidated Mach. Tool Corp., 51 N.Y.2d 152, 163, 412 N.E.2d 934, 941 (1980) (that defendant corporation was a wholly-owned subsidiary of the parent corporation was insufficient to support imposition of liability on parent for the acts of its subsidiary).  A parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of "(1) interrelation of operation, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  Velez v. Novartis Pharm. Corp., 244 F.R.D. 243, 250 (S.D.N.Y. 2007); see also Marvelli v. CHAPS Comm. Health Ctr., 193 F.Supp.2d 636, 653 (E.D.N.Y. 2002) (applying same 4-factor test to Section 1981 claims).  Plaintiff does not and cannot allege these elements here, and her conclusory allegations concerning News Corporation are wholly insufficient.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the complaint should be granted in its entirety.

Dated: New York, New York
   December 30, 2009

       Respectfully submitted,

       KASOWITZ, BENSON, TORRES
       & FRIEDMAN LLP

       By: _____
         Marc E. Kasowitz (mkasowitz@kasowitz.com)
         Hector Torres (htorres@kasowitz.com)
         Mark W. Lerner (mlerner@kasowitz.com)
         Blythe E. Lovinger (blovinger@kasowitz.com)

       1633 Broadway
       New York, New York 10019
       Tel.: (212) 506-1700
       Fax: (212) 506-1800

        J. Jordan Lippner (jlippner@newscorp.com)

       Senior Vice President & Deputy General Counsel
       News America Incorporated
       1211 Avenue of the Americas
       New York, New York 10036
       Tel.: (212) 852-7166
       Fax: (212) 852-7214

       Attorneys for Defendants News Corporation, NYP
       Holdings, Inc., d/b/a the New York Post and Col
       Allan