# Exhibit L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                            :

SANDRA GUZMAN,                  :      Civ. No.: 09 CV 9323 (BSJ) (RLE)
                            :

                 Plaintiff,    :
                            :

                 vs.          :
                            :

NEWS CORPORATION, NYP HOLDINGS, :
INC., d/b/a THE NEW YORK POST,    :
and COL ALLAN, in his official and   :
individual capacities,           :
                            :

                Defendants.  :
---------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANTS' MOTION FOR PROTECTIVE ORDER</u>**

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700

Attorneys for Defendants

## **Table of Contents**

Table of Authorities .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 5

I.      THE BROAD PROTECTIONS OF THE EDITORIAL
        PRIVILEGE ARE APPLICABLE.................................................................... 5

        A.      The Editorial Privilege Is Alive and Well........................................... 6

        B.      Scope and Applicability of the Privilege ............................................ 8

II.     PLAINTIFF CANNOT DEMONSTRATE THAT
        THE DISCOVERY SOUGHT IS "HIGHLY RELEVANT" ......................... 10

        A.      Plaintiff Concedes That All Relevant Information
                Has Been Discovered ........................................................................ 10

        B.      Plaintiff Seriously Misconstrues the Law of this Case;
                This Court Has Limited the Relevance of the Stimulus Cartoon........................ 12

        C.      The Stimulus Cartoon Cannot Demonstrate
                Discriminatory Animus as a Matter of Law ...................................... 13

III.    MR. ALLAN ANSWERED ALL QUESTIONS RELATING
        TO LEONARD GREENE ............................................................................. 16

IV.     CONCLUSION.............................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Application of Consumers Union of U.S., Inc.,
495 F.Supp. 582 (S.D.N.Y. 1980) ...................................................................3

Bondi v. Grant Thornton Intern.,
No. 04-civ-9771 (LAK) (HB), 2006 WL 2088193 (S.D.N.Y. July 27, 2006)..........6

Booth v. Pasco County, Fla.,
No. 8:09–cv–2621–T–30 (TBM), 2012 WL 555854 (M.D. Fla. Feb. 21, 2012)..................14

Brokers' Choice of America, Inc. v. NBC Universal, Inc.,
No. 09-cv-00717 (CMA) (BNB), 2010 WL 363368 (D. Colo. Jan. 27, 2010)..........6

Calder v. Jones,
465 U.S. 783 (1984).........................................................................7

Chevron Corp. v. Berlinger,
629 F.3d 297 (2d Cir. 2011)...............................................................4, 9

Damiano v. Sony Music Entertainment, Inc.,
168 F.R.D. 485 (D.N.J. 1996)............................................................9

DeAngelis v. El Paso Mun. Police Officers Ass'n,
51 F.3d 591 (5th Cir. 1995) ..............................................................14

Doe v. City of N.Y.,
583 F. Supp. 2d 444 (S.D.N.Y. 2008).................................................15

Downey v. The Coalition Against Rape and Abuse, Inc.,
No. 99-3370, 2003 WL 23164082 (D.N.J. Apr. 10, 2003)..........................6

Herbert v. Lando,
441 U.S. 153 (1979)................................................................ passim

Hustler Mag. v. Falwell,
485 U.S. 46 (1988)........................................................................14

Jews for Jesus, Inc. v. Jewish Comm. Relations Council of N.Y.,
968 F.2d 286 (2d Cir. 1992)..........................................................14, 15

Johnson v. Nyack Hosp.,
169 F.R.D. 550 (S.D.N.Y. 1996) ....................................................6

Laxalt v. McClatchy,
    622 F. Supp. 737 (D.C. Nev. 1985) ............................................................................7

Legg v. Conklin,
    No. 04-civ-654T (MWP), 2008 WL 2704348 (W.D.N.Y. July 2, 2008) ................................6

Maughan v. NL Industries,
    524 F. Supp. 93 (D.C.D.C. 1981) ............................................................................5

Miami Herald Pub. Co. v. Tornillo,
    418 U.S. 241 (1974).............................................................................................7

Palandjian v. Pahlavi,
    103 F.R.D. 410 (D.C.D.C. 1984) ............................................................................9

Pugh v. Avis Rent A Car System, Inc.,
    No. M8–85, 1997 WL 669876 (S.D.N.Y. Oct. 28, 1997)........................................11

R.A.V. v. City of St. Paul, Minn.,
    505 U.S. 377 (1992).............................................................................13, 14, 15

Rodriguez v. Maricopa Cnty. Comm. Coll. Dist.,
    605 F.3d 703 (9th Cir. 2010) ...........................................................14, 15, 16

Rosario v. N.Y. Times Co.,
    84 F.R.D. 626 (S.D.N.Y. 1979) ....................................................... *passim*

Ruiz v. County of Rockland,
    609 F.3d 486 (2d Cir. 2010).................................................................................7

S.E.C. v. McGoff,
    647 F.2d 185 (D.C. Cir. 1981)..........................................................................3, 9, 10

Saxe v. State College Area School Dist.,
    240 F.3d 200 (3d Cir. 2000)...........................................................................14, 15

Snyder v. Phelps,
    131 S.Ct. 1207 (2011)........................................................................................16

Solarex Corp. v. Arco, Inc.,
    121 F.R.D. 163 (E.D.N.Y. 1988) ...................................................................3, 8, 10

Solargen Electric Motor Car Corp. v. American Motors Corp.,
    506 F.Supp. 546 (N.D.N.Y. 1981)...........................................................................3

Tavoulareas v. Piro,
    93 F.R.D. 35 (D.D.C. 1981)...................................................................................3

Thomasson v. Perry,
    80 F.3d 915 (4th Cir. 1996) ........................................................................15

U.S. ex rel. Vuitton Et Fils S.A. v. Karen Bags, Inc.,
    600 F.Supp. 667 (S.D.N.Y. 1985) ...............................................................3

U.S. v. Cuthbertson,
    630 F.2d 139 (3d Cir. 1980) .....................................................................3, 4

von Bulow v. von Bulow,
    811 F.2d 136 (2d Cir. 1987) .....................................................................9, 10

Westmoreland v. CBS, Inc.,
    97 F.R.D. 703 (S.D.N.Y. 1983) .................................................................10

**OTHER AUTHORITIES**

FED. R. EVID. 501 ..............................................................................................1, 10

S.Rep. No. 1277 (1974) ...................................................................................10

U.S. CONST., AMEND. I ................................................................................ *passim*

Defendants News Corporation, NYP Holdings, Inc., d/b/a The New York Post (the

"Post"), and Col Allan (together, "Defendants") respectfully submit this reply memorandum of

law in further support of their motion for a protective order (the "Motion") to preclude Plaintiff

Sandra Guzman ("Plaintiff" or "Ms. Guzman") from seeking to obtain discovery into certain

matters that are protected against disclosure by the editorial privilege under the First Amendment

of the Constitution of the United States and Rule 501 of the Federal Rules of Evidence.

## PRELIMINARY STATEMENT

Defendants move for an order precluding Plaintiff from seeking certain limited testimony

relating to Defendant Col Allan's (i) editorial decision-making regarding the Stimulus Cartoon

and published responses thereto and the McGreevey Picture, and (ii) communications with the

Post's Chairman of the Board, K. Rupert Murdoch, regarding the publication of the Stimulus

Cartoon.  As set forth herein, Plaintiff has fallen woefully short of demonstrating that the sought-

after testimony is "highly material and relevant" and "necessary or critical" to any aspect of this

employment litigation, as required to overcome the editorial process privilege (also referred to as

the journalist's privilege, the reporter's privilege, and the press privilege).  Indeed, Plaintiff has

failed to demonstrate how the information she seeks possibly is relevant to her discrimination

claims.  Instead, Plaintiff attempts to convince this Court that there is no such thing as an

"editorial privilege."  Plaintiff is wrong.

Throughout this entire case Plaintiff has attempted to shift the Court's focus from her

*employment* claims which have scant, if any support, by continually branding the Post's

published content, and in particular the Stimulus Cartoon, as *per se* "racist" (which it is not) and

then attempting to argue that *because she regards the cartoon as racist*, its publication is *de

facto* "evidence" that anyone involved with its publication must also be racist.  Putting aside the

fallacious nature of her argument, the record is undisputed that Mr. Allan was asked and already has fully testified about his views of the Stimulus Cartoon, i.e., that he did not consider it racist or the chimpanzee to represent President Obama, as well as all matters relating to Ms. Guzman's employment, the elimination of her position at the Post, and his views about the McGreevey Picture. Plaintiff has obtained the testimony she claims to seek relating to the Stimulus Cartoon and the McGreevey Picture, and she has provided no basis for this Court to permit her to invade the editorial processes of the Post.

Citing the Supreme Court's decision in the libel case, Herbert v. Lando, 441 U.S. 153 (1979), Plaintiff argues there is no such thing as an editorial process privilege. Plaintiff's argument is nonsensical and bereft of merit. The Supreme Court did not hold in that defamation case, or any other case for that matter, that editorial processes are not to be afforded First Amendment protection against disclosure. The holding in Herbert was limited to defamation cases brought against publishers by public figures who have no choice but to inquire into editorial processes in order to demonstrate that the decision to ***publish the false content at issue*** – the sole legal issue in a defamation case – was malicious (i.e., either knowingly made or in reckless disregard of its truth), a required element of any such claim. As the Supreme Court noted, holding that the First Amendment precludes such inquiries in a *libel* claim would be tantamount to affording blanket protection to publishers who knowingly publish false statements and effectively would preclude a public figure from proving his claim.

Mere months after the Herbert decision, in Rosario v. N.Y. Times Co., 84 F.R.D. 626 (S.D.N.Y. 1979), this very Court, relying on Herbert, applied the editorial privilege to preclude inquiry into the editorial processes in an employment discrimination case:

There are also pending before the court two objections by the defendant relating to discovery matters. ***The first is an assertion of a First Amendment editorial privilege by the Times to certain deposition questions***.

Id. at 627 (emphasis added). Many other courts, in various contexts, have afforded protection to editorial processes since Herbert. See, e.g., S.E.C. v. McGoff, 647 F.2d 185 (D.C. Cir. 1981) (finding editorial policies privileged); Solarex Corp. v. Arco, Inc., 121 F.R.D. 163, 172 (E.D.N.Y. 1988) (discussing "editorial privilege" cited in Rosario); Tavoulareas v. Piro, 93 F.R.D. 35, 41 (D.D.C. 1981) ("first amendment extends a degree of protection to . . . editorial and news gathering activities."); Solargen Electric Motor Car Corp. v. American Motors Corp., 506 F.Supp. 546, 549, 553 (N.D.N.Y. 1981) (same); Application of Consumers Union of U.S., Inc., 495 F.Supp. 582, 586 (S.D.N.Y. 1980) (subpoena to examine "the reportorial and editorial processes . . . would represent a substantial intrusion on . . . significant aspects of a free press"). For Plaintiff to argue that no editorial privilege exists is absolutely wrong.[1]

For myriad reasons, the logic in Herbert permitting inquiry into otherwise privileged editorial processes does not apply in the context of claims other than defamation, including employment discrimination cases where the Plaintiff is required to prove that the adverse ***employment action(s)*** complained of was the product of unlawful discrimination. In public figure defamation cases both the published content and the reasons for the content's publication directly are at issue – in fact they are the sole issues, apart from the truth of what is published. That is not the case here, and this Court several times has made clear that neither the act of publishing, nor the content of, the Stimulus Cartoon and McGreevey Picture can serve as a basis

---

[1] The privilege also has been recognized in the criminal context. See U.S. v. Cuthbertson, 630 F.2d 139, 147 (3d Cir. 1980) (finding journalists' privilege extends to an "interest . . . [in] preventing intrusion into the editorial process . . . ."); U.S. ex rel. Vuitton Et Fils S.A. v. Karen Bags, Inc., 600 F.Supp. 667, 670-71 (S.D.N.Y. 1985) (distinguishing Herbert and holding editorial privilege protected against disclosure of unpublished "outtakes").

3

for Plaintiff's race and gender discrimination claims.  As stated by the <u>Rosario</u> court, the reason

for this is obvious:

> [A newspaper] of course, is a commercial venture engaged
> principally in the collection and dissemination of news for profit.
> We are not concerned here with what it gathers or what it
> publishes. We are concerned with the people it hires to carry on its
> business. Title VII and Section 1981 are directed to business
> judgments, not editorial judgments.

<u>Id.</u> at 631.

Importantly, Defendants are not arguing that they should be afforded any absolute

protection against disclosure of their editorial processes.  The test set forth by the courts

requiring Plaintiff to make a *prima facie* showing of substantial relevance and need – a showing

she has not made and cannot make – clearly protects against any possible abuse of the privilege.

Plaintiff argues, in the alternative, that the scope of the privilege is limited to the names

of a journalist's sources, citing <u>Chevron Corp. v. Berlinger</u>, 629 F.3d 297 (2d Cir. 2011).

<u>Berlinger</u>, however, did not limit the privilege's scope and, directly contrary to Plaintiff's

inaccurate assertions, the Second Circuit stated in that case that the privilege protects ***more than***

journalist sources.  Moreover, Plaintiff ignores and/or fails to distinguish in any meaningful way

the plethora of court decisions which hold that the scope of the privilege extends beyond merely

a journalists' sources to include discussions between an editor and publisher, and documents

concerning editorial policies.

Finally, Plaintiff's argument that this Court did not limit the relevance of the Stimulus

Cartoon to providing the context for her claims is simply wrong and ignores the clear language

of the Court's prior holdings.  This Court already has held several times that this case is about

***employment*** decisions relating to Plaintiff's ***employment***; it is not about the Post's decisions to

publish certain content or the content itself, regardless of how "offensive" and "racist" Plaintiff believes such content to be.[2]

Based on the foregoing, and the argument presented herein, Defendants' motion for a protective order should be granted.

## ARGUMENT

### I.

## THE BROAD PROTECTIONS OF THE EDITORIAL PRIVILEGE ARE APPLICABLE

As demonstrated in Defendants' opening memorandum ("Def. Mem."), courts within and outside the Second Circuit recognize that the editorial privilege protects *both* news gathering and the editorial decision-making processes relating to the publications of content.  (Def. Mem. at 10-13.)  In short, "[t]he right of a newspaper to determine for itself what it is to publish and how it is to fulfill its mandate of dissemination must be given great respect," and, therefore, discovery into editorial processes "can no doubt constitute a significant intrusion into and, certainly, a chilling effect upon the newsgathering and *editorial processes*." Maughan v. NL Industries, 524 F. Supp. 93, 95 (D.C.D.C. 1981) (so holding two years *after* Herbert) (emphasis added). Plaintiff abjectly fails to demonstrate (i) that the editorial process privilege does not exist, or (ii) that the editorial processes engaged in by Mr. Allan should not fall within the scope of the privilege.

---

[2] Plaintiff argues that Mr. Allan "waived" the privilege by testifying about his presumed views of the Stimulus Cartoon and McGreevey Picture.  Suffice it to say no such "waiver" occurred and the record, including counsel's staunch objections at deposition and Defendants' communications with this Court, demonstrates that Mr. Allan constantly has sought to preclude any intrusion by Plaintiff upon his editorial thought process and decision-making. Mr. Allan answered questions about his personal views of the Stimulus Cartoon and the McGreevey Picture, but consistently asserted the privilege in response to questions about editorial processes and decision-making.

A.      **The Editorial Privilege Is Alive and Well**

Plaintiff argues the Supreme Court held in Herbert v. Lando, 441 U.S. 153 (1979), that

the editorial privilege does not exist.  (Pl. Mem. at 10-13.)  This is blatantly wrong.

Herbert, a state law ***libel*** claim heard on diversity, answered the very narrow question of

whether an ***absolute*** editorial privilege exists.  Although the Supreme Court found that no

absolute privilege exists, it made clear that its holding should not be read "to say that the

editorial discussions or exchanges have no constitutional protection from casual inquiry."  Id. at

174.  Courts have since recognized that Herbert found that "the evidentiary privilege accorded to

a newspaper person is not absolute," but instead qualified.[3]  Downey v. The Coalition Against

Rape and Abuse, Inc., No. 99-3370, 2003 WL 23164082, at *4 (D.N.J. Apr. 10, 2003)

(discussing Herbert, 441 U.S. 153).  As aptly noted by the court in Brokers' Choice of America,

Inc. v. NBC Universal, Inc., No. 09-cv-00717 (CMA) (BNB), 2010 WL 363368, at *2 (D. Colo.

Jan. 27, 2010):

> The issue in Herbert was whether there existed an absolute
> privilege against inquiry into ***the editorial process***, a question the
> Supreme Court answered in the negative. . . .  The Court did not
> pass on the question of whether a qualified privilege, by which a
> party's need for information is balanced against a reporter's claim
> that such information is constitutionally protected, was
> permissible.  ***If anything, the Court suggested that it was***.

(emphasis added.)

Although the Herbert Court held the privilege inapplicable, its holding expressly was

limited to "***case[s] of this kind***," i.e., claims for libel, Herbert, 441 U.S. at 180 (Powell, J.,

---

[3] Plaintiff's reliance on Johnson v. Nyack Hosp., 169 F.R.D. 550, 562 (S.D.N.Y. 1996), and Bondi v. Grant
Thornton Intern., No. 04-civ-9771 (LAK) (HB), 2006 WL 2088193 (S.D.N.Y. July 27, 2006), for the proposition
that no editorial privilege exists, is misplaced.  These cases only restate the fact that the editorial privilege was found
inapplicable in Herbert.  They do not hold that no such privilege exists.  It is unclear why Plaintiff cites to Legg v.
Conklin, No. 04-civ-654T (MWP), 2008 WL 2704348, at *1 (W.D.N.Y. July 2, 2008), which does not consider any
privilege issue.

concurring) (emphasis added), which require (i) a "specific" showing of "malice," and (ii) a claim of injury arising from editorial content. To prove "malice," a libel plaintiff must show the defendant "kn[e]w or [had] reason to suspect that his publication [was] false." Id. at 161. The Herbert Court thus concluded explicitly that as opposed to other claims in which a party might seek to explore editorial processes, *in a libel case* where a defendant's ***actual knowledge*** about the truthfulness of editorial content is at issue, the editorial privilege may be overcome due to the necessity of such information. Id. at 166 (citing Miami Herald Pub. Co. v. Tornillo, 418 U.S. 241 (1974)). See Laxalt v. McClatchy, 622 F. Supp. 737, 748-49 (D.C. Nev. 1985) ("Therefore, the [Herbert] court concluded, it is impossible to allow a first amendment privilege to shield the editorial process [because] all libel actions rest[] upon the discovery of this information.").[4] Here, the content of and decision to publish the Stimulus Cartoon and McGreevey Picture are not relevant, much less critical, to Plaintiff's employment discrimination claims.

Further, the Supreme Court made it clear that discovery into the editorial process in Herbert was necessary because "***there [was] a specific claim of injury arising from a publication*** . . . ." Herbert, 441 U.S. at 170. There is no allegation that "a specific claim of injury aris[es] from" publication of the Stimulus Cartoon or the McGreevey Picture, nor can there be. Plaintiff alleges a disparate treatment, employment discrimination claim and, as such, she is required to show that she was treated differently than similarly-situated individuals in the non-protected class (i.e., Caucasians) or that she personally was subjected to race and/or sex-based harassment in connection with her employment. See, e.g., Ruiz v. County of Rockland, 609 F.3d 486 (2d Cir. 2010). Such claims "are directed to business judgments, not editorial judgments." Rosario, 84 F.R.D. at 631. Plaintiff is not arguing, nor could she possibly argue,

---

[4] The Supreme Court's subsequent holding in Calder v. Jones, 465 U.S. 783, 790-91 (1984), also relied on by Plaintiff, see Pl. Mem. at 13, further recognized Herbert's limited applicability to "*libel and defamation actions*."

that the publication of the Stimulus Cartoon and McGreevey Picture were acts of discrimination *toward her*. See, *infra*, Section II.C.

## B.   Scope and Applicability of the Privilege

Plaintiff asserts that the editorial privilege only protects a journalist's sources, and that it is inapplicable when raised by a party to a lawsuit. (Pl. Mem. at 14.) Plaintiff's arguments have no merit and there is no authority for either contention.

Plaintiff argues that there is not a single case that upholds the editorial privilege. How she possibly does so is beyond belief, especially since she acknowledges Rosario v. N.Y. Times Co., 84 F.R.D. 626 (S.D.N.Y. 1979), a case decided in *this* district after Herbert and which expressly applied the editorial privilege in an employment discrimination case brought against a newspaper. Recognizing her flawed argument, Plaintiff feebly attempts to distinguish Rosario v. N.Y. Times Co., claiming it was decided on relevance grounds. The Court did no such thing. In Rosario, this Court *explicitly cited and relied on Herbert* for the proposition that while no absolute privilege is accorded to editorial processes, there is, in fact, a *qualified* privilege, which Defendants have marshaled here. Id. See also Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163, 172 (E.D.N.Y. 1988) (noting that in Rosario, the court "recogniz[ed] 'an editorial privilege' involving "what [a journal] gathers or what it publishes"). In balancing the potential relevance of the sought-after discovery against privilege concerns, this Court "f[ou]nd the objections [based on privilege] well-taken" and thus held the discovery's relevance too tenuous to defeat the privilege. Id. at 631. In doing so, the Court properly noted that claims under "Title VII . . . are directed to business judgments, not editorial judgments." Id. The same logic applies here.[5]

---

[5] The sole ruling regarding deposition testimony that was decided on relevance grounds related to a question posed concerning the reason to discontinue a Harlem office. Rosario, 84 F.R.D. at 631.

Plaintiff also attempts to distinguish S.E.C. v. McGoff, 647 F.2d 185 (D.C. Cir. 1981),

claiming it stands for the proposition that press entities posses no "special privilege" concerning

discovery of "information other [companies] must furnish to the investing public." (Pl. Mem. at

18.)  This is correct:  no "special privileges" apply to ordinary business information of a

newspaper that would otherwise be disclosed to investors; however, the McGoff Court

absolutely did hold that a "special privilege" applies to editorial and news gathering processes.

See McGoff, 647 F.2d at 191.

Next, citing Chevron Corp. v. Berlinger, 629 F.3d 297, 306-07 (2d Cir. 2011), Plaintiff

argues that the Second Circuit limited the privilege to the protection of "journalistic sources."

(Pl. Mem. at 14.)  Berlinger, however, did not limit the privilege to a journalist's sources; to the

contrary, the court held that "information gathered in a journalistic investigation" and "press

files" also fall within the scope of the privilege.  Berlinger, 629 F.3d at 306-07.  Notably, at issue

in Berlinger was whether un-broadcast portions of a journalist's video footage were subject to

disclosure.  Although finding that the discovery sought fell within the scope of the privilege, the

Court ultimately held in favor of disclosure because protecting the information would not serve

the underlying purpose of the editorial privilege, i.e., maintaining a "'vigorous, aggressive *and*

*independent* press.'"  Id. at 306, 309-10 (citing von Bulow v. von Bulow, 811 F.2d 136, 144 (2d

Cir. 1987)) (emphasis in original).  Such information is protected because the privilege "is

designed to protect the overarching public policy of access to information," not merely the

"confidentiality" of sources, as discovery into broader editorial processes represents "a

significant intrusion into the newsgathering and editorial processes . . . ."  Palandjian v. Pahlavi,

103 F.R.D. 410, 412 (D.C.D.C. 1984).  See also Damiano v. Sony Music Entertainment, Inc.,

168 F.R.D. 485, 499 (D.N.J. 1996) (same).

Finally, Plaintiff strangely argues that the privilege only applies to non-parties.  This assertion is entirely specious and ignores the holdings in cases, including Rosario, 84 F.R.D. 626, and McGoff, 647 F.2d 185, where the discovery at issues specifically was sought from parties. Solarex Corp. v. Arco, Inc., 121 F.R.D. at 172, and Westmoreland v. CBS, Inc., 97 F.R.D. 703, 706-07 (S.D.N.Y. 1983), cited by Plaintiff in support of her argument, are inapposite.  If anything, these cases merely stand for the proposition that the applicable standard is different when the privileged materials are sought in the context of a *libel or defamation* case.  This, of course, makes sense, since a party-defendant's decision-making processes relative to the published content directly are at issue in a defamation case.  Here, Mr. Allan's decision-making and thought processes relating to the publication of the Stimulus Cartoon and McGreevey Picture, and the publication of any public apology relating to the Stimulus Cartoon, are not at issue.[6]

## II.

### PLAINTIFF CANNOT DEMONSTRATE THAT THE DISCOVERY SOUGHT IS "HIGHLY RELEVANT"

### A.      Plaintiff Concedes that All Relevant Information Has Been Discovered

Plaintiff, almost whimsically, asserts that discovery into the entire editorial process behind the publication of the Stimulus Cartoon is relevant because it somehow would demonstrate that every Post employee involved in its publication is a racist.[7]  The argument is, in a word, absurd.  Regardless, Plaintiff *already has questioned Mr. Allan about his views of the*

---

[6] Plaintiff's assertion that this Court should rely upon New York State law is unavailing.  Pursuant to Fed. R. Evid. 501 and the accompanying Senate Report, S.Rep. No. 1277 (1974), "[i]t is also intended that the Federal Law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." See von Bulow, 811 F.2d at 144.  To the extent that there is any conflict between New York and Federal law, Federal law must prevail.

[7] Rest assured, if the Court were to find the privilege inapplicable, Plaintiff would not stop at seeking testimony from Mr. Allan.  With the door opened, she undoubtedly will seek discovery from every individual who somehow was involved in the publication of the Stimulus Cartoon and McGreevey Picture.

10

***Stimulus Cartoon***.  He testified that he did not believe it was racist.  He said it did not depict
President Obama, and that he understood it to be lampooning Congress and a poorly drafted
piece of legislation.  He testified he did not agree with the decision to issue a public apology.
Having this testimony, as irrelevant as it is, there is no need for Plaintiff to delve into the
editorial process behind the cartoon's publication.

Plaintiff asserts the privileged testimony is relevant to "allow exploration Defendants'
[*sic*] intent under cross-examination," and that "if Defendants published a cartoon knowing that
the [Stimulus] Cartoon was racist, this would be relevant to racial animus . . . ."  (Pl. Mem. at 7,
12.)  Mr. Allan testified on these topics already, albeit while wearing his non-editorial hat.  (See
Def. Mem. at 6-8.)  Thus, there is no need at all, let alone a "critical" one, to reach into these
privileged materials.  See Pugh v. Avis Rent A Car System, Inc., No. M8–85, 1997 WL 669876,
at *3 (S.D.N.Y. Oct. 28, 1997).

As for the McGreevey Picture, Plaintiff does not at all explain how discovery into the
editorial processes behind its publication (in redacted form) possibly would demonstrate that Mr.
Allan intended to sexually harass her when he showed it to her and other Post editors.  She fails
to do so because the publication of the picture does not have the slightest bit of relevance to her
fallacious claim of sexual harassment.

In short, the record demonstrates that Plaintiff has obtained all "relevant" testimony – as
defined by Plaintiff in her own brief – from Mr. Allan relating to the Stimulus Cartoon and the
McGreevey Picture.  Having done so, she cannot possibly demonstrate that the privileged
information she seeks is "highly relevant" and "critical" to her claims.

**B.      Plaintiff Seriously Misconstrues the Law of this Case; This**
**        Court Has Limited the Relevance of the Stimulus Cartoon**

Plaintiff attempts to improperly stretch and recast the prior holdings of this Court

properly limiting the relevance of the Stimulus Cartoon to providing a context for her retaliation

claim.  The Stimulus Cartoon is only potentially relevant to (i) providing context for Ms.

Guzman's complaint, and (ii) demonstrating how individuals accused of engaging in

discriminatory conduct responded to complaints about the cartoon.  (Def. Mem. at 14-16.)  As

noted in Defendants' moving papers, the Court held on July 7, 2011 as follows:

- The bottom line is that I do not find that the chimpanzee cartoon . . . fits within the kind of discovery that would be relevant to the claims that Ms. Guzman has raised either in terms of a hostile work environment or retaliation.  (Def. Mem., Exh. E at 10:23-11:2.)

- I see the cartoon as not relevant to the question of the environment that was created by News Corporation.  (Id. at 11:2-4.)

- As far as I'm concerned . . . I think in general the question of the cartoon is – it is not directly on point but the response to the cartoon I think becomes important because of the individuals who are doing the response and how they feel about the response and that issue.  (Id. at 13:15-20 (emphasis added).)

The Court likewise held the Stimulus Cartoon is not relevant to claims of "a hostile work

environment or retaliation" and limited the scope of discovery to "documents concerning

communications among [the relevant decision-makers] that concern how the Post would respond

to Ms. Guzman or to employees of the Post regarding concerns expressed about the cartoon."

(Id. at 13:8-13.)

Not surprisingly, Plaintiff ignores the above July 7, 2011 rulings.  Instead, she focuses on

the Court's prior April 26, 2011 ruling, arguing that before July 7, 2011 this Court held that

"allegations" relating to "editorial decisions" are relevant.  To say Plaintiff's argument is a

stretch is an understatement.  The Court found, based solely on the Amended Complaint, that the

cartoon might be relevant to either context or Defendants' reactions to employee complaints

prompted by the cartoon.  Subsequently, during the July 7, 2011 teleconference, the Court

specifically limited the relevance of the Stimulus Cartoon to same based on the evidentiary

record (which has not changed).

Plaintiff's also distorts the Court's Order of September 27, 2010 (almost a year prior).

Plaintiff contends that the Court ruled "'the way the editorial staff dealt with the publication of

the content at issue' was relevant."  (Pl. Mem. at 8 (emphasis omitted).)  Plaintiff, however,

deliberately omits the fact that the Court was ruling in the context of Ms. Guzman's complaint

about the cartoon and how Post staff responded to her post-publication complaints and any other

employees' complaints about the cartoon.  Guzman v. News Corp., 09-Civ-9323, at *2 (S.D.N.Y.

Sept. 27, 2010).   This is entirely consistent with each of the Court's subsequent rulings.

**C.      The Stimulus Cartoon Cannot Demonstrate
          Discriminatory Animus as a Matter of Law**

In their moving papers, Defendants demonstrate precisely why the Stimulus Cartoon

cannot be utilized to prove discriminatory animus.  (Def. Mem. at 16-18.)  Plaintiff's purported

"authority" to the contrary is inapposite.

Plaintiff, quoting *dicta* from the Supreme Court's decision in R.A.V. v. City of St. Paul,

Minn., 505 U.S. 377 (1992), a case that ***was not an employment discrimination case***, argues that

"sexually derogatory 'fighting words'. . . may produce a violation of Title VII's general

prohibition against sexual discrimination in employment practices."  Id. at 389.  It is entirely

unclear how this ***dicta***, set forth in a decision ***striking down as unconstitutional*** a state statute

found to prohibit certain hate speech, possibly could demonstrate that the Stimulus Cartoon is

relevant to proving discriminatory animus.  By comparing derogatory workplace comments to

13

fighting words, the Court merely recognized that discriminatory comments spoken in the

workplace may be subject to government regulation because, in effect, they are ***non-expressive***

***conduct*** and constitute an adverse employment action.  See Saxe v. State College Area School

Dist., 240 F.3d 200, 208 (3d Cir. 2000) (noting that discriminatory workplace speech amounts to

non-expressive speech as it "it facilitates the threat of discriminatory conduct").

Here, the Stimulus Cartoon is not ***non-expressive conduct,*** such as an epithet or, as

offered in Saxe, a statement such as "sleep with me or you're fired" in the workplace.  Id.

Rather, it is pure ***expressive*** political speech – even Plaintiff concedes as much by (incorrectly)

claiming the cartoon lampoons President Obama – protected by the First Amendment from

regulation.  See, e.g., Hustler Mag. v. Falwell, 485 U.S. 46, 54 (1988) (holding First Amendment

protects political cartoons).  It simply cannot form any part of Plaintiff's claim.

Indeed, Plaintiff's proffered interpretation would make Title VII, as well as the New

York State and City Human Rights Laws, unconstitutional as they would create impermissible

content- and viewpoint-based restrictions on purely political speech.  Specifically, Plaintiff

would have Defendants' allegedly opprobrious political views silenced while giving her

opposing views "license . . . to fight freestyle. . . ."  R.A.V., 505 U.S. 391.  Such is the definition

of impermissible content- and viewpoint-based restrictions.  See id. (striking law limiting one

political view while permitting the opposing voice).[8]

Plaintiff's reliance on Jews for Jesus, Inc. v. Jewish Comm. Relations Council of N.Y.,

968 F.2d 286 (2d Cir. 1992), similarly is misguided.  Again in *dicta*, the Second Circuit

---

[8] Other courts have recognized that the cited *dicta* in R.A.V., if treated as Plaintiff would have it, would run afoul
the First Amendment.  See, e.g., Rodriguez v. Maricopa Cnty. Comm. Coll. Dist., 605 F.3d 703, 710 (9th Cir. 2010)
("Harassment law generally targets conduct, and it sweeps in speech as harassment only when consistent with the
First Amendment."); DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 597 n.7 (5th Cir. 1995); Booth
v. Pasco County, Fla., No. 8:09–cv–2621–T–30 (TBM), 2012 WL 555854, at *7-8 (M.D. Fla. Feb. 21, 2012).

references that certain anti-discrimination statutes have passed constitutional muster. However, as the court further noted, this was because these statutes "are plainly aimed at conduct, i.e., discrimination, not speech." Id. at 295. Certainly, the Stimulus Cartoon itself is not "conduct, i.e., discrimination," but is political "speech," the regulation of which would run afoul of the First Amendment.

The remaining cases cited by Plaintiff are unavailing and warrant little discussion. For instance, the court in Saxe v. State College Area School Dist., 240 F.3d at 208, merely held that "'[h]arassing' or discriminatory speech" may "be used to communicate ideas or emotions that nevertheless implicate First Amendment protections." Id. at 209. Similarly, in Thomasson v. Perry, 80 F.3d 915 (4th Cir. 1996), the court found that "speech" incidental to a law prohibiting conduct, homosexuals serving in the military, was unprotected. Finally, Doe v. City of N.Y., 583 F. Supp. 2d 444 (S.D.N.Y. 2008), is completely distinguishable from the present case. In Doe, the defendant sent racially harassing e-mails to the plaintiff and did not stop when he was advised the e-mails were problematic. This is the very sort of *conduct* described as unprotected by the court in R.A.V., namely speech directed at the plaintiff interfering with his employment. None of these cases stands for the proposition that an employment discrimination plaintiff can rely upon publicly-distributed published content protected by the First Amendment to support her claim.

In short, Plaintiff cites no authority supporting her theory that pure political speech is relevant – much less "highly material and relevant" and "necessary or critical" – to her claims. As stated in Rodriguez v. Maricopa County Comm. Coll., 605 F.3d 703, 708 (9th Cir. 2010), wherein the Ninth Circuit held that e-mails directed from one co-worker to others espousing racially-charged political theories were inactionable due to their expressive content, "it is

axiomatic that the government may not silence speech because the ideas it promotes are thought

to be offensive." Id.  While Plaintiff is free to disagree with the content of Stimulus Cartoon

(and the McGreevey Picture), she ***cannot*** sue the Post for its publications no matter how

offended, real or pretend, she claims to be by its publication.  That is precisely what the First

Amendment prohibits.  See Snyder v. Phelps, 131 S.Ct. 1207, 1219 (2011) (quoting Boos v.

Barry, 485 U.S. 312, 322 (1988) ("[I]n public debate [we] must tolerate insulting, and even

outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by

the First Amendment.").

## III.

## MR. ALLAN ANSWERED ALL QUESTIONS RELATING
## TO LEONARD GREENE

Mr. Allan did not assert any privilege in connection with questions concerning Leonard

Greene, a current Post reporter.  Plaintiff's unfortunate insistence to the contrary is belied by the

record testimony.  Although, Mr. Allan was advised by counsel that certain questions might raise

privilege concerns, he did not once claim privilege to ***any*** questions posed relating to Mr.

Greene, answering more than 40 questions about this individual.[9]  (Lerner Decl. Exh. A, 372:18-

381:23.)

In any event, Mr. Greene's circumstances and unfounded lay opinions are entirely

irrelevant to this case.  Plaintiff obtained from Mr. Greene an affidavit in which he falsely claims

in conclusory fashion that he was denied a "promotion" from reporter to the position of

"columnist" because of his race.  Mr. Greene is not similarly-situated to Plaintiff in any way,

shape or form, nor has he initiated any proceedings against the Post.  To be sure, Ms. Guzman

---

[9] True and correct copies of relevant portions of the deposition transcript of Col Allan, dated February 14, 2012, are
attached as Exhibit A to the Declaration of Mark Lerner, dated May 14, 2012 ("Lerner Decl., Exh. A").

does not allege that she ever was denied any promotion; she was employed as an editor, not a

reporter; she never sought to become a columnist; she did not report to the same individuals that

Mr. Greene does; she does not allege that Mr. Greene experienced any of the same purported

conduct that she did; and Mr. Greene does not purport to have any knowledge of alleged

employment discrimination experienced by Ms. Guzman. But again, all of these facts are

irrelevant since, contrary to Plaintiff's argument, Mr. Allan did *not* assert the editorial privilege

in response to any question posed to him about Mr. Greene. (Id. at 372:18-381:23.)

## CONCLUSION

For the foregoing reasons, and the reasons set forth in defendants' initial memorandum of

law, defendants respectfully request that their motion for a protective order be granted.

Dated: May 14, 2012
         New York, New York


                                Respectfully submitted,

                                KASOWITZ, BENSON, TORRES
                                   & FRIEDMAN LLP

                                By:    /s/ Mark W. Lerner
                                      Marc E. Kasowitz (mkasowitz@kasowitz.com)
                                      Mark W. Lerner (mlerner@kasowitz.com)
                                      Blythe Lovinger (blovinger@kasowitz.com)

                                1633 Broadway
                                New York, New York 10019
                                Tel.:(212) 506-1700
                                Fax:(212) 506-1800

                                Attorneys for Defendants News Corporation,
                                NYP Holdings, d/b/a the New York Post,
                                and Col Allan