KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
Garrett D. Kennedy (gkennedy@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700

*Attorneys for Defendant*
News Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                             :
SANDRA GUZMAN,                                               :
                                                             :
                              Plaintiff,                     :   Civil Action No.: 09 CV 9323 (LGS)
                                                             :
              vs.                                            :
                                                             :
NEWS CORPORATION, NYP HOLDINGS,                              :
INC., d/b/a/ THE NEW YORK POST,                              :
and COL ALLAN, in his official and individual                :
capacities,                                                  :
                                                             :
                              Defendants.                    :
------------------------------------------------------------x


## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, News Corporation ("News Corp." or "Defendant"), by its attorneys Kasowitz, Benson, Torres & Friedman LLP, respectfully submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment against Plaintiff Sandra Guzman ("Plaintiff").

A.  **News Corp. and the New York Post Are Separate Entities**

1. News Corp. is incorporated under Delaware law and owns "hundreds" of companies worldwide. (Lipp. at 19, 47.)[1]  Its subsidiaries are primarily media companies, and they employ approximately 50,000 to 60,000 individuals globally. (Id. at 19.)

2. NYP Holdings, Inc., d/b/a the New York Post (the "Post"), is a wholly owned subsidiary of News America Incorporated ("NAI"), which in turn is a subsidiary of News Publishing Australia Holdings Ltd., which is in turn owned by News Corp. (Id. at 43-44.)  The Post is one of the "hundreds" of subsidiaries indirectly owned by News Corp. (Id.)

B.  **News Corp. and the Post Have Separate Labor Relations**

3. The Post and News Corp. each has its own human resources ("HR") department, and there is no overlap or sharing of employees between these departments. (Scial. Aff. at ¶ 4.)[2]

4. Neither News Corp. nor its HR department has authority over the Post's HR department, and the Post makes all hiring, firing, salary, and disciplinary decisions regarding its employees without the involvement of News Corp. or its HR department. (Id. at ¶¶ 6, 9, 10.)

5. Applications for employment with the Post are and have been at all relevant times handled by the Post's HR department and/or the relevant Post manager, and not by News Corp. (Id. at ¶ 6.)

6. The Post has developed its own performance evaluations and its supervisors are responsible for reviewing employee performance; the evaluations are reviewed by a committee of Post managers and records of evaluations are maintained by the Post's HR department.

---

[1] True and correct copies of relevant excerpts of the deposition transcript of Jordan Lippner, dated February 29, 2012, designated "Lipp. at [page]," are attached to the accompanying Declaration of Mark W. Lerner (the "Lerner Declaration" or "Lerner Dec."), dated May 10, 2013, as Exhibit 1.  All other exhibits referenced herein, unless otherwise specified, are attached to the Lerner Declaration.
[2] The affidavit of Amy Scialdone, dated May 7, 2013, submitted in support of Defendant News Corp.'s motion for summary judgment, is herein designated "Scial. Aff."

(Lipp. at 146-47; Scial. at 23-24; Scial. Aff. at ¶ 8.)[3]  No News Corp. employees are involved in this process.  (Scial. Aff. at ¶ 8.)

       7.     The Post sets and has set at all relevant times the salaries of its employees without intervention by News Corp.  (See id. at ¶ 9.)

       8.     The Post also has developed numerous policies applicable to its employees, including its Code of Conduct, its Travel and Entertainment Expense Policy, its E-mail Policy, and its Cell-Phone Usage Policy.  (Id. at 318-19, 326, 330-31, 335-36.)

       9.     The Post has also adopted certain general policies prepared by News Corp., such as the Standards of Business Conduct (the "Standards"), which lays out an employee's general legal obligations with regards to conflicts of interest and unlawful harassment, but does not dictate discipline for violations or set forth policies governing day-to-day labor relations.  (Id. at 220, 236, 237-38; Lerner Dec., Exh. 3.)

      10.     The Post is, and has been at all relevant times, responsible for enforcing all policies governing its employees, including investigating possible breaches and disciplining its employees.  (Id. at 230, 238, 359; Scial. Aff. at ¶ 10.)  News Corp. has no role in disciplining Post employees, nor does it have the authority to do so.  (Id.)

      11.     Policies utilized by the Post are distributed by the Post's HR department.  (See, e.g., Lipp. at 215, 304.)

      12.     Employees are, and have been at all relevant times, trained to direct any complaints to the Post's HR department, a supervisor, an attorney for the Post, or to an

---

[3] True and correct copies of relevant excerpts of the deposition transcript of Amy Scialdone, dated June 28, 2012, designated "Scial. at [page]," are attached to the Lerner Declaration as Exhibit 2.

anonymous telephone hotline. (Scial. at 60, 64-66; Jehn at 54, 57.)[4]  The Post's policies do not provide for employees to submit complaints to News Corp. (Id.)

13. The Post shares a benefit plan with NAI but not with News Corp. (Lipp. at 388-91.)

C. **News Corp. and the Post Have Separate Operations**

14. There are no employees shared between the Post and News Corp. (Scial. Aff. at ¶ 13.)

15. The financial and day-to-day operations of the Post and News Corp. are, and have been at all relevant times, separate and distinct. (Lipp. at 379.)

16. The Post maintains and has maintained at all relevant times, its own separate financial books and records, including profit and loss statements. (Racano Aff. at ¶ 5.)[5]

17. The Post has its own CFO, Michael Racano, who is a Post employee, and Finance Department, which is comprised entirely of Post employees. (Racano Aff at ¶ 1,5.)

18. News Corp. and the Post have separate bank accounts. (Lipp. at 382.)

19. No members of the Post's finance department are or have been News Corp. employees. (Id. at ¶ 5.)

20. Each of News Corp. and the Post is, and has been at all relevant times, responsible for its own day-to-day expenses; for instance, although both use the same travel agency, each pays that agency separately for its employees' travel, and such expenses are independently approved by the company of the traveling employee. (Lipp. at 376-77.)

---

[4] True and correct copies of relevant excerpts of the deposition transcript of Jennifer Jehn, dated June 26, 2012 and February 14, 2013, designated "Jehn at [page]," are attached to the Lerner Declaration as Exhibit 4.
[5] The affidavit of Michael Racano, dated May 8, 2013, submitted in support of Defendant News Corp.'s motion for summary judgment, is herein designated "Racano Aff."

4

21.     The two companies "each had their own offices at 1211 Avenue of the Americas during Ms. Guzman's employment": News Corp. occupies offices on the 4th, 7th and 8th floors of the building located at 1211 Avenue of Americas (the "1211 Building"), while the Post's editorial offices are on the 9th and 10th floors of the 1211 Building, and its HR and finance departments occupied the 15th floor for parts of the relevant time period.  (Id. at 48-51, 57.)

22.     Access between the different offices of News Corp. and the Post is possible only by using a company-specific employee identification card.  (Id. at 81.)

23.     The 1211 Building itself is owned by a third-party (id. at 106), is occupied by many companies unrelated to either News Corp. or the Post (id. at 80), and the Post is charged rent for the floors it occupies.  (Racano Aff. at ¶ 8.)

24.     News Corp. employees are not, and have not been at any relevant time, involved in the process of printing or distributing the Post's daily newspaper.  (Id. at ¶¶ 3-4.)

25.     The Post also has its own marketing department responsible for advertising and marketing the *New York Post* newspaper.  (Id. at ¶ 4.)

26.     News Corp. and the Post, now and at all relevant times, "maintain[] separate and distinct computer databases, [and] computer servers" and "[e]ach company has separate IT departments."  (Lipp. at 111-12.)  Further, both companies have distinct e-mail address domain names.  (Id. at 108.)

27.     Both companies maintain separate security departments which do not provide services to the other.  (Id. at 107.)

D.      **News Corp. and the Post Do Not Have Common Management**

28.     None of the Post's senior management is or ever has been an employee of News Corp.

29. Paul Carlucci, the Publisher of the Post during the relevant time period, was its most senior executive responsible for its day-to-day operations (id. at 149-51); he has never been an employee of News Corp. (See Carl. at 360.)[6]

30. Col Allan is the highest ranking editor at the Post (Lipp. at 151) and has never been an employee of News Corp. (Allan at 9.)[7]

31. Jesse Angelo, the Post's Executive Editor during the relevant time period, is not and has never been employed by News Corp. (See Angelo at 15 [Day 2].)[8]

32. Neither the Post's current head of HR, Amy Scialdone, nor its previous head, Jennifer Jehn, has ever been employed by News Corp. (See Scial. at 8, 11-18; Jehn at 14-15, 36-45.)

33. The Post's Executive Committee is comprised of the Post's department heads (Lipp. at 198-99), including during the relevant time period, Carlucci, Allan, Jehn, Racano, and Scialdone, none of whom are employed by News Corp. (Scial. Aff. at ¶ 12.)

34. Les Goodstein, who was hired by NAI in January 2006, attended the Executive Committee meetings as head of the Community Newspaper Group ("CNG"), a separate company owned by NAI (Good. at 23-24, 80),[9] given the opportunities to increase CNG's and the Post's revenue by cross-selling advertising between these newspapers. (Lipp. at 184-85.)

35. Goodstein's contract for employment is with NAI and not News Corp. (Lern. Dec., Exh. 15.)

36. NAI is a separate company from News Corp. (Id. at 18.)

---

[6] True and correct copies of relevant excerpts of the deposition transcript of Paul Carlucci, dated June 22, 2012, designated "Carl. at [page]," are attached to the Lerner Declaration as Exhibit 5.
[7] True and correct copies of relevant excerpts of the deposition transcript of defendant Col Allan, dated February 14, 2012 and February 21, 2013, designated "Allan at [page]," are attached to the Lerner Declaration as Exhibit 6.
[8] True and correct copies of relevant excerpts of the deposition transcript of Jesse Angelo, dated April 25, 2012, designated "Angelo at [page]," are attached to the Lerner Declaration as Exhibit 7.
[9] True and correct copies of relevant excerpts of the deposition transcript of Les Goodstein, dated June 15, 2012, designated "Scial. at [page]," are attached to the Lerner Declaration as Exhibit 8.

37. Goodstein began working for NAI in January 2006 (Good. at 23-24),[10] for which he operates a local community newspapers that are circulated primarily in the outer boroughs. (Id. at 80.)

38. Goodstein attended the Post Executive Committee meetings due to opportunities to increase revenue for the Post by the cross-selling of advertising between the community newspapers and the Post. (Lipp. at 184-85.)

39. The Post has a Management Council that no News Corp. employees sit on. (See Carl. at 320-23.)

40. News Corp.'s Board is comprised of sixteen individuals, only two of whom, K. Rupert Murdoch and David Devoe, also sit on the Post's Board of Directors. (Compare Lern. Dec., Exh. 9, at No. 19, with Lern. Dec., Exh. 10, at No. 19.)

41. Neither of K. Rupert Murdoch or David Devoe is employed by the Post. (Scial. Aff. at ¶ 14.)

E.   **Guzman was a Post Employee, and Not a News Corp. Employee**

42. Guzman was hired by the Post in July 2003 pursuant to a two-year employment agreement with the Post; this agreement expired in 2005 and no subsequent agreement was signed. (Guz. at 346; Lern. Dec., Exh. 12.)[11]

43. The decision to hire Guzman was made by the Post's then-Publisher, Lachlan Murdoch. (Allan at 83-84.)

44. Guzman's salary was paid by the Post, and not News Corp. (Guz. at 348; Lern. Dec., Exh. 13.)

---

[10] True and correct copies of referenced excerpts of the deposition of Les Goodstein, dated June 15, 2012 ("Good. at [page]"), are attached to the Lerner Dec. as Exhibit 12.
[11] True and correct copies of relevant excerpts of the deposition transcript of plaintiff Sandra Guzman, dated October 13, 2011 and February 13, 2012, designated "Guz. at [page]," Lerner Declaration as Exhibit 11.

45.     Guzman performed services for the Post and not for News Corp.: her primary job responsibility was to edit *Tempo* for publication in the *New York Post* newspaper, and she did not have any job responsibilities for News Corp.  (See Lern. Dec., Exh. 12.)

46.     Guzman reported to and was supervised by Post editors Chris Shaw or Joseph Robinowitz (Robin. at 53-55),[12] and at no time was she supervised by a News Corp. employee. (Scial. Aff. at ¶ 15.)

47.     Guzman's desk and/or office were at all times located within the Post's offices. (Guz. at 250-53.)

48.     On September 29, 2009, Guzman's employment with the Post was terminated based on decisions made by the Post's publisher and the editor-in-chief.  (Allan at 139, 398-99; Jehn at 235-36.)

---

[12] True and correct copies of relevant excerpts of the deposition transcript of Joseph Robinowitz, dated June 14, 2012, designated "Robin. at [page]," are attached to the Lerner Declaration as Exhibit 14.

49.     Neither the Cool Change Committee nor any Hispanic Council, which Guzman has described as "News Corp." committees, has authority over the Post's employment policies, its hiring, firing or disciplining of employees, the setting of employee salaries, or the Post's HR or labor relations. (Scial. Aff. at ¶ 16.) To the extent that Guzman had any role in these committees, such was voluntary and ancillary to her duties as a Post employee. (Id.)

Dated: May 10, 2013
       New York, New York

                              Respectfully submitted,

                              KASOWITZ, BENSON, TORRES
                                & FRIEDMAN LLP

                              By: /s/ Mark W. Lerner
                                   Marc E. Kasowitz (mkasowitz@kasowitz.com)
                                   Mark W. Lerner (mlerner@kasowitz.com)
                                   Blythe E. Lovinger (blovinger@kasowitz.com)
                                   Garrett D. Kennedy (gkennedy@kasowitz.com)

                              1633 Broadway
                              New York, New York 10019
                              Tel.: (212) 506-1700
                              Fax: (212) 506-1800

                              Attorneys for Defendant
                              News Corporation