# **EXHIBIT 12**

# EMPLOYMENT AGREEMENT

**EMPLOYMENT AGREEMENT** dated as of July 11, 2003 (the "Agreement") between NYP Holdings, Inc., a Delaware corporation with offices located at 1211 Avenue of the Americas, New York, New York 10036 (the "Company" or "We"), and Sandra Guzmán, residing at 420 W. 24 St. - Apt 6F, New York, New York 10011 ("You" or "Your").

**WHEREAS**, the Company currently publishes *The New York Post* newspaper (the "Post"); and

**WHEREAS**, the Company desires to engage you to perform services as an Associate Editor of the Post for the Company or, at the direction of the Company, any present or future corporate parent, subsidiary or affiliate of the Company that owns or controls the Post; and

**WHEREAS**, you desire to perform such services, on the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the promises herein and other good and valuable consideration, the parties agree as follows:

**A.    Employment; Duties; Term**

1.    <u>Employment</u>. You will be employed as an Associate Editor of the Post (or such other position as may be mutually agreeable to by the parties). You shall report primarily to the Post's Editor-In-Chief, currently Col Allan, and its Managing Editors, currently Colin Myler and Joe Robinowitz, and their designees.

2.    <u>Term</u>. The Company hereby employs you, and you accept such employment for a two (2) year term, beginning on July 7, 2003, and ending on the close of business on July 6, 2005 (the "*Term*"). Following the completion of the Term, this Agreement will automatically expire and, in the absence of a new written employment contract signed by both you and the General Manager of the Company, any continued employment with the Company will be on terms determined by the Company and it will be at will, of no fixed term and may be terminated at any time by either you or the Company with or without notice, for any or no reason. Notwithstanding anything herein to the contrary, the Term shall terminate upon (i) your death or disability pursuant to <u>Section H, Sub-Section 1</u>, or (ii) the termination of your employment pursuant to <u>Section H, Sub-Section 2</u>.

3.    <u>Duties</u>. As Associate Editor, you shall perform all duties consistent with your position and such other duties as may be assigned to you from time to time in the Editor-In-Chief's and Managing Editors' respective discretion. Such duties shall include, among others, that you will serve as a member of the Post's Editorial Executive Management Team, you will attend daily news conferences and contribute to the ideas and discussion process concerning the news of the day. You are expected to give expert advice on issues and trends in the New York Latino community so that the paper may better communicate with this substantial section of the market. Further, you will be required to investigate and plan, in conjunction with other Post senior editors and executives, a regular section specifically aimed at this community. You will also be required to edit and commission freelance writers for this section as well as write and prepare some articles yourself. You will also be engaged in discussion and planning of how we may better market the New York Post to the Latino community.

Throughout your employment, you shall devote you full working time, attention, knowledge and skills in furtherance of the business of the Company and will faithfully, diligently, and to the best of your ability perform your duties. During your employment, you shall not engage, and shall not solicit any employees of the Company or its affiliates to engage, in any other commercial activities that may in any way interfere with the performance of your duties or responsibilities to the Company. You shall at all times be subject to, observe and carry out such rules, regulations, policies, directions and restrictions as the Company may from time to time establish, including without limitation The News Corporation Limited Standards of Business Conduct and the Company's Electronic Communications Policy, as well as those imposed by law.

### B. Remuneration and Benefits

1. **Base Salary.** The Company shall pay you a salary at the rate of $110,000 in the first year of the Term in equal installments, less applicable benefit deductions and withholdings required by law in accordance with the Company's regular payroll practice. We will evaluate your salary prior to the start of the second year of the term and make an upward adjustments, if any, in our discretion, that we may deem appropriate.

2. **Expenses.** The Company will reimburse you for all reasonable and necessary expenses you may incur in carrying out your duties under this Agreement, in accordance with the Company's then prevailing expense authorization and reimbursement procedures. You shall present such documentation and itemized accounts of such expenses from time to time in such form as may be required by the Company.

3. **Vacation.** During the Term, you shall be eligible to take up two (2) weeks of paid vacation time per year, to be taken at such times as are mutually agreeable to the Company and you.

4. **Employee Benefits.** During the Term, you shall be eligible to participate in the Company's employee benefits plans, including health and retirement, as they are in existence on the date of this Agreement, or as they may be amended or added hereafter, to the same extent as other editors of the Company at a similar level of the Company. Your eligibility to participate in such plans shall be governed by the rules applicable to comparable editors. You understand and agree that the Company may, in its sole discretion, change or modify the employee benefit plans and programs that it offers from time to time.

### C. Guzmán Covenants

You represent and warrant that you are not bound by any agreement or other existing or previous business relationship that conflicts with, or may prevent the performance by you of your obligations and duties under this Agreement.

### D. Employment Relationship

1. You acknowledge that the relationship between you and the Company is exclusively that of employer and employee and that the Company's obligations to you are exclusively contractual in nature. The Company shall be the sole owner of all the fruits and proceeds of your services hereunder, including, but not limited to, all ideas, concepts, formats,

2

NYP0000507

suggestions, developments, arrangements, designs, packages, programs, promotions and other intellectual properties which you may create in connection with and during your term of your employment hereunder, free and clear of any claims by you (or anyone claiming under you) of any kind or character whatsoever (other than your right to compensation hereunder). You shall, at the request of the Company, execute such assignments, certificates or other instruments as the Company may from time to time deem necessary or desirable to evidence, establish, maintain, perfect, protect, enforce or defend its right, title and interest in or to any such properties.

2. The Company shall have the right to use your name, biography and likeness in connection with its business, including in advertising its products and services, and may grant this right to others, but not for use as a direct endorsement.

3. For the purposes of this Section D, the term "Company" includes NYP Holdings, Inc. and any of its corporate parents and affiliated businesses. The covenants set forth in this Section D shall survive the termination of this Agreement.

E. **Confidential Information**

1. Confidentiality. You acknowledge that during the term of your employment, you will be entrusted with, have access to and become familiar with various trade secrets and other confidential information of the Company and its affiliates, which have been established and maintained at great effort and expense, have been kept and protected as confidential, and are of great value to the Company and its affiliates and provide them with a significant competitive advantage. You agree that you will hold all of such confidential information in strictest confidence, and use it solely for the purpose of performing your duties for the Company and for no other purpose. Without limiting the generality of the foregoing, Confidential Information may include technical data, software, customer information, business plans, market data, demographic information, community contacts, confidential sources, trade secrets or the like, whether or not any such document or information is marked "confidential." All such Confidential Information which you may now possess, may obtain during or after the Term, or may create prior to the end of the period you are employed by the Company under this Agreement or otherwise, shall not be published, disclosed, or made accessible by you to any other person, firm, or corporation either during or after the termination of your employment for any reason or used by you, except during your employment and for the benefit of the Company, with the sole exception that you may disclose such Confidential information if required to do so by a valid, binding and non-appealable court order, but only then if you have first (i) provided the Company with prior notification immediately upon your receipt of same, and (ii) you do not disclose any of the requested Confidential Information until the Company has sought an appropriate protective order or other remedy, or has waived its right to do so in writing. For purposes of this Agreement, the phrase "Confidential Information" shall not include information that (i) is generally known by the Company's principal competitors, (ii) that is generally available to the public, or (iii) later becomes available to the public due to no act or fault, direct or indirect, of your own.

2. Return of Confidential Information. Upon the termination of your employment with the Company for any reason, or at any prior time upon the Company's written request, you shall deliver immediately to the Company all documents and materials of any kind or nature, and all copies thereof (without retaining any such copies) in your possession, custody or control that contain, reveal or incorporate any Confidential Information, whether such documents and

NYP0000508

materials existed at the date hereof or thereafter were prepared by or on behalf of you based upon, derived from or utilizing Confidential Information. Notwithstanding the return of Confidential Information as provided herein, and notwithstanding the termination of your employment and/or the termination of this Agreement for any reason, the non-disclosure, non-use and secrecy obligations set forth in this Section E shall continue, and remain in full force and effect and be binding upon you.

**F.    Non-Competition; Non-Solicitation**

1.    Non-Competition. In view of the unique and valuable services it is expected you will render to the Company, your knowledge of the customers, trade secrets, proprietary and other Confidential Information relating to the business of the Company and its customers and suppliers, and in consideration of the compensation to be received hereunder, you agree that you will not, during the period that you are employed by the Company, perform services for any newspaper or magazine in the United States or Canada without obtaining the Company's prior written consent, not to be unreasonably withheld, except that Company may, under any circumstances, withhold its consent in its sole discretion with respect to newspapers and magazines which circulate in the New York metropolitan area which includes the five boroughs of New York, the counties of Nassau, Suffolk, Westchester and Rockland in the State of New York; Fairfield County in the State of Connecticut; and the counties in the State of New Jersey.

2.    Non-Solicitation. During your employment and for one year after the termination of that employment, for any reason, you will not, directly or indirectly, either personally or on behalf of any other entity (whether as a director, stockholder, owner, partner, consultant, principal, employee, agent or otherwise) (i) solicit, induce, entice, hire, employ or attempt to employ any individual employed by the Company as of the termination of your employment or during the prior year; or (ii) take any action which is intended or would reasonably be expected to, adversely affect the Company, its business, reputation or its relationship with its actual or prospective clients, suppliers, investors or sources of capital.

3.    Survival.    The provisions of this Section F shall survive the termination of your employment and the termination of this Agreement for any reason and shall continue and remain in full force and effect and be binding upon you.

**G.    Enforcement; Jurisdiction:**

1. The services to be furnished by you hereunder and the rights and privileges granted to the Company by you are of a special, unique, unusual, extraordinary, and intellectual character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in any action, and a breach by you of any of the provisions contained in Sections E or F will cause the Company irreparable injury and damage. You further acknowledge that any such breach would impair the Company's good will that it has developed at great time, cost and expense with its customers, vendors and employees. You therefore consent to enforcement of each of the provisions of Sections E and F of this Agreement by means of a temporary injunction or other appropriate equitable relief in any court of competent jurisdiction, which shall be in addition to any other remedies the Company may have under this Agreement or otherwise.

2. In the event a court grants injunctive or other equitable or monetary relief in favor of the Company, you agree to be liable for all reasonable costs and expenses incurred by the

NYP0000509

Company in connection therewith, including the Company's reasonable attorneys' fees. You further agree that in the event of a breach of any of the provisions of Section E or F, in addition to and not in limitation of the foregoing rights and remedies of the Company, the Company will have the right to all actual, consequential and punitive damages available at law, in equity or otherwise.

3. You hereby submit to the jurisdiction of the state and federal courts located in the State of New York and in the counties of New York, for the purpose of enforcement of this Agreement. You voluntarily and knowingly waive and agree not to assert, as a defense in any such action or proceeding, that you are not subject to jurisdiction thereto or that venue is improper for lack of residence, inconvenient forum or otherwise, and you agree that service of any summons, complaint or other process relating thereto may be effected in the same manner as a notice under this Agreement.

**H.  Termination of Employment.**

1. Death and Disability. This Agreement, and all obligations of the Company hereunder, shall terminate immediately upon your death. In the event that your are, due to any physical or mental injury, illness, defect or other incapacitating condition, unable to perform your duties and responsibilities for either (i) 85 consecutive days or (ii) an aggregate of 90 days in any consecutive 12-month period (a "Disability"), the Company may, in its discretion, terminate this Agreement at any time thereafter by giving you notice thereof, and upon the giving of such notice, the Company shall have no further obligation or liability to you. In the event that this Agreement is terminated due to your death or "Disability," we shall pay you or your designee all compensation, benefits, and reimbursements that may have accrued and been earned through the date of such termination.

2. Termination With or Without Cause. Any other provision hereof to the contrary notwithstanding, the Company may terminate this Agreement (i) at any time without notice or liability (other than for salary accrued through the date of such termination), if your employment is terminated by the Company for "Cause," as defined below, or (ii) at any time, upon one week notice to you, for any reason other than "Cause," death or "Disability", in which case only, the Company shall pay to you as a severance payment, and in lieu of any other damages or remedy to which you would otherwise be entitled, an amount equal to four (4) months pay of your then base salary, less applicable benefit deductions and withholdings required by law, and four months of paid group health benefits (provided you had elected to receive such benefits while employed). You acknowledge and agree that if your employment is terminated for a reason other than "Cause," death or "Disability", you will have no right to any damages other than the aforementioned four (4) months pay group health benefits, and you expressly waive any additionally rights you may have. For purposes of this Agreement, "Cause" shall mean, in *addition* to any meanings that term may have at common law: (i) you are convicted of, or plead guilty or *nolo contendere* to, a felony or misdemeanor; (ii) you engage in conduct that constitutes willful neglect or willful misconduct in carrying out your duties under this Agreement; (iii) you breach any representation, warranty, covenant or term of this Agreement and such breach remains uncured following ten (10) days written notice given by the Company to you; and/or (iv) you engage in conduct which impacts negatively on the Company's reputation.

NYP0000510

I. **Miscellaneous**

1. <u>Entire Agreement; Amendment</u>. This Agreement embodies the entire agreement of the parties with respect to its subject matter, and its merges with the supersedes any and all prior discussions, agreements, commitments or understandings of any kind or nature relating thereto, whether oral or written, between you and the Company. Neither party shall be bound by any term or condition other than as is expressly set forth herein. This Agreement may not be modified or amended except by a written agreement signed by or on behalf of you and the General Manager of the Company.

2. <u>Assignment</u>. This Agreement is not assignable by you, and any purported assignment by you of your rights or obligations under this Agreement shall be null and void. This Agreement may be assigned by the Company at any time, upon delivery of written notice to you, to any successor to the business of the Company, or to any parent company, subsidiary or affiliate of the Company, provided that no such assignment shall affect your compensation and benefits.

3. <u>Waiver</u>. No waiver of any breach or default hereunder shall be considered valid unless in writing, signed by the party giving such waiver, and no such waiver shall be deemed a waiver of any subsequent breach or default. The failure of any party to insist upon strict adherence to any term of this Agreement on any occasion shall not operate or be construed as a waiver of the right to insist upon strict adherence to that term or any other term of this Agreement on that or any other occasion.

4. <u>Headings</u>. The headings in this Agreement are for reference purposes only and shall not in any way be used to affect the meaning or interpretation of this Agreement.

5. <u>Notices</u>. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been given on the date of delivery, or, if sent by federal express or other overnight courier or by certified mail, return receipt requested, to the party to whom it is to be given at the address of such party set forth in the preamble to this Agreement (or to such other address as the party shall have furnished in writing in accordance with the provisions of this <u>Sub-Section 5</u>), on the date of mailing. Notice to your estate shall be sufficient if addressed to you as provided in this <u>Sub-Section 5</u>. Any notice changing a party's address shall be deemed given at the time of receipt thereof.

7. <u>Governing Law</u>. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York applicable to agreements made within the State of New York, without regard to its conflicts of law principles. In the event of a dispute or controversy between you and the Company, you voluntarily and knowingly waive any right you may have to a trial by jury for any dispute or controversy arising under this Agreement or related to your employment and you expressly consent to trial by judge sitting without a jury.

8. <u>Severability</u>. If any term, provision, covenant or restriction contained in this Agreement, or any part thereof, is held by a court of competent jurisdiction or any foreign, federal, state, county or local government or any other governmental regulatory or administrative agency or authority or arbitration panel to be invalid, void, unenforceable or against public policy for any reason, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect. If any provision of <u>Sections E or F</u> shall be held by a court of competent jurisdiction to be void or unenforceable because it

NYP0000511

is over broad in scope, geographic area and/or duration, you and the Company agree that such court shall have the authority under this Agreement to reduce the scope, geographic area and/or duration so that such provision may then be enforced and such provision shall be enforced as modified.

9. <u>Effective Date</u>: This Agreement will not become legally binding and effective until it has been signed by both you and an the Company's General Manager.

10. <u>No Presumptions</u>. Each party acknowledges that such party has participated, with, at its option, the advice of counsel, in the preparation of this Agreement. The language of all provisions of this Agreement shall in all cases be construed as a whole, extending to it its fair meaning, and not strictly for or against either of the parties. The parties agree that they have jointly prepared and approved the language of the provisions of this Agreement and that should any dispute arise concerning the interpretation of any provision hereof, neither party shall be deemed the drafter nor shall any such language be presumptively construed in favor of or against either party.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

SANDRA GUZMÁN

_[signature]_

NYP HOLDINGS, INC.

By: _[signature]_

Name: Geoffrey P Booth

Title: VP - General Manager

NYP0000512