UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
SANDRA GUZMAN, :
:
:
                              Plaintiff, :      Civ. No.: 09 CV 9323 (LGS)
:
              vs. :
:
NEWS CORPORATION, NYP HOLDINGS, :
INC., d/b/a THE NEW YORK POST, :
and COL ALLAN, in his official and :
individual capacities, :
:
                           Defendants. :
-------------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT NEWS CORPORATION'S MOTION FOR SUMMARY JUDGMENT


KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Mark W. Lerner (mlerner@kasowitz.com)
Blythe E. Lovinger (blovinger@kasowitz.com)
Garrett D. Kennedy (gkennedy@kasowitz.com)
1633 Broadway
New York, New York 10019
Tel.:   (212) 506-1700

Attorneys for Defendant
News Corporation

## Table of Contents

Table of Authorities ................................................................................................................. ii

ARGUMENT .............................................................................................................................. 1

I.  Plaintiffs Have Failed to Present Evidence that News Corp. and the Post are a Single Employer ................................................................................................................. 3

    A.  News Corp. and the Post's Labor Relations are Not Integrated ..................................... 3

    B.  News Corp. and the Post Do Not Have Interrelated Operations ..................................... 5

    C.  The Companies Do Not Have Common Management ...................................... 6

    D.  Common Ownership and Financial Control ................................................................ 7

II. News Corp. Made No Decisions Relating To Guzman ........................................................... 8

III. News Corp. and NAI are Not "Indistinguishable" ................................................................... 9

CONCLUSION ......................................................................................................................... 11

## Table of Authorities

**Page(s)**

**CASES**

Balut v. Loral Elec. Sys.,
    988 F. Supp. 339 (S.D.N.Y. 1997), aff'd, 166 F.3d 1199 (2d Cir. 1998) ............................. 3, 7

Da Silva v. Kinsho Int'l Corp.,
    210 F. Supp. 2d 241 (S.D.N.Y.), aff'd, 229 F.3d 358 (2d Cir. 2000) ............................... 1, 8, 9

Darden v. DaimlerChrysler N.A. Holding Corp.,
    191 F. Supp. 2d 382 (S.D.N.Y. 2002) ............................................................................... 9

Eisenberg v. Advance Relocation & Storage, Inc.,
    237 F.3d 111 (2d Cir. 2000) ............................................................................................ 10

Frank v. U.S. W., Inc.,
    3 F.3d 1357 (10th Cir. 1993) ............................................................................................. 7

Graves v. Deutsche Bank Securities,
    2011 WL 1044357 (S.D.N.Y. Mar. 4, 2011) ....................................................................... 1

Hayes v. N.Y.C. Dept. of Corrections,
    84 F.3d 614 (2d Cir. 1996) ................................................................................................ 8

Herman v. Blockbuster Ent. Grp.,
    18 F. Supp. 2d 304 (S.D.N.Y. 1998), aff'd, 182 F.3d 899 (2d Cir. 1999) ........................ 5, 7

Kellett v. Glaxo Ent., Inc.,
    1994 WL 669975 (S.D.N.Y. Nov. 30, 1994) ................................................................. 4, 9

Murray v. Miner,
    74 F.3d 402 (2d Cir. 1996) .......................................................................................... 1, 6, 9

Ramos v. Baldor Specialty Foods, Inc.,
    687 F.3d 554 (2d Cir. 2012) ........................................................................................... 8, 9

Velez v. Novartis Pharma. Corp.,
    244 F.R.D. 243 (S.D.N.Y. 2007) .................................................................................... 6, 7

Williams v. Interpublic Severance Pay Plan,
    2007 WL 2298386 (N.D. Ill. Aug. 7, 2007) .................................................................... 10

Defendant News Corporation ("News Corp.") respectfully submits this reply memorandum of law in further support of its motion for summary judgment (the "Motion").[1]

## ARGUMENT

Guzman asks the Court to find News Corp. and defendant NYP Holdings, Inc. (the "Post") to be a "single employer" and to hold News Corp. liable for the acts of its indirect subsidiary.[2] Yet a court may do so "***only under extraordinary circumstances***," Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996) (emphasis added), because "a parent company should not lightly be held responsible for the acts of its subsidiaries absent proof that the parent was involved in the particular circumstances giving rise to the litigation." Da Silva v. Kinsho Int'l Corp., 210 F. Supp. 2d 241, 244 (S.D.N.Y.), aff'd, 229 F.3d 358 (2d Cir. 2000).

Guzman has failed to adduce competent evidence which even suggests that News Corp. was involved in any of the adverse actions of which she complains (which relate to her employment with the Post), let alone such "extraordinary circumstances" that could support a finding that News Corp. and the Post operate as a single, integrated enterprise. To the contrary, the evidence demonstrates that News Corp. and the Post are and always have been operated as separate and distinct enterprises that have (i) completely separate labor relations; (ii) distinct operation control; (iii) separate management; and (iv) separate control over their respective finances.

Needless to say, the slight, sporadic involvement of News Corp. in the business affairs of the Post – involvement that courts routinely pronounce to be normal, customary and expected of

---

[1] As a threshold matter, the Pearson Declaration and the Rule 56.1 Counterstatement of Material Facts ("CSMF") should be rejected because they were not filed, as required by the Court's order, on May 24, 2013, but in the early hours of May 25, 2013. See Graves v. Deutsche Bank Securities, 2011 WL 1044357 (S.D.N.Y. Mar. 4, 2011). Submitted herewith is the declaration of Mark W. Lerner, dated May 31, 2013 ("Rep. Dec."). References to the Lerner Declaration, dated May 10, 2013, in support of the Motion, are referred to as "Lern. Dec."; the Pearson Declaration, dated May 24, 2013, in support of Plaintiff's Memorandum of Law in opposition to the Motion ("Pl. Brf.") is cited as "Pear. Dec." All references to deposition transcripts shall cited as defined in the Motion.
[2] The same analysis applies to "joint employers." (See Def. Brf. at 10 n.13.)

a parent corporation – and the fact that there are a few common facilities used by the two entities (e.g., a cafeteria in the building that everyone can use) plainly is insufficient for any reasonable fact finder to conclude they constitute a single employer.

Guzman attempts to obscure the record by repeatedly referencing the "Chairman of News Corp.," ***completely omitting from her brief*** that the same individual also is Chairman of the Board ***of the Post***. Of course, she completely ignores the maxim that board members can and often do wear "two hats" and offers no evidence that he made any decisions at the Post while wearing his News Corp. "hat." She uses the same ploy in referencing two other executives, Lachlan Murdoch and Paul Carlucci.

Attempting to further manufacture a fictional relationship, Guzman summarily argues that News Corp. and an indirect subsidiary, News America Inc. ("NAI"), are "indistinguishable." She does so in an effort to connect NAI employees to the Post, and then back to News Corp. Bewildering as her argument is, she provides no basis why this Court should find that NAI and News Corp. are not separate business entities – she just asks this Court to presume this to be true. From that faulty premise, she then refers to NAI employees (such as its Deputy General Counsel, Jordan Lippner, and Les Goodstein), as "News Corp." employees; refers to benefit and pension plans purchased ***by NAI*** and ***titled as NAI plans*** (see Rep. Dec., Exh. 1) as if purchased by News Corp. (Pl. Brf. at 5 ("News Corp. provided the healthcare and benefit plants for Post employees.")); and refers to a company purchased ***by NAI***, the Community Newspaper Group ("CNG"), as owned by "News Corp." (See § VI, infra.) These conclusory arguments properly should be rejected.

Guzman's strategy is clear: muddy the record with inconsequential, irrelevant and unsupported assertions and fabrications in an effort to create the false appearance of material factual disputes. But no such facts exist and, as such, summary judgment should be granted.

**I.    Plaintiffs Have Failed to Present Evidence that News
       Corp. and the Post are a Single Employer**

   A. News Corp. and the Post's Labor Relations are Not Integrated

Guzman vaguely claims News Corp. "shaped the Post's human resources department," but does not dispute with any competent evidence that the Post and its HR department are independent of, and not overlapping with, that of News Corp., and (i) have authority over its hiring, firing, salary, and disciplinary decisions; (ii) handle all applications for employment (including Lachlan Murdoch, *as publisher of the Post*, hiring Guzman and Col Allan and that the Chairman of the Board *of the Post* appointed the Post's Publishers); (iii) have developed and implemented their own performance evaluation system; (iv) set employee salaries;[3] (v) have developed numerous policies applicable to Post employees;[4] and (vi) distribute all of its policies. (Plaintiffs' Rule 56.1 Counterstatement of Material Facts ["CSMF"], ¶¶ 3-8, 11.) Despite being employed by the Post for *six years* (and years of discovery), Guzman cannot identify *a single employee* in the human resources department of an entity other than the Post.

Guzman claims two of the Post's many policies (see CSMF, ¶ 8) show integrated labor relations. These are its "Standards of Business Conduct" ("Standards") and "Electronic Communications Policy," each prepared by News Corp., and each of which was adopted and implemented by the Post. (Id., ¶ 9.) A subsidiary adopting policies from a parent does not create

---

[3] Guzman asserts that because certain pay authorization forms have a line to be signed by the Publisher, and that Lachlan Murdoch served as both Publisher of the Post and COO of News Corp., News Corp. controls Post salaries. (CSMF at ¶ 7.) As noted above, News Corp. does no such thing. (Scial. Aff., ¶ 7.) In any event, *both* pay authorization forms cited by Guzman are unsigned by the Publisher. (Pear. Dec., Exh. 3, at NYP-206, -210.)
[4] As noted in § VI, infra, Guzman's conclusory reference in the CSMF to Lippner as a "News Corp. attorney" is without basis in fact and deliberately misleading. (CSMF, ¶ 8.)

3

a "single employer," Balut v. Loral Elec. Sys., 988 F. Supp. 339, 347 (S.D.N.Y. 1997), aff'd, 166 F.3d 1199 (2d Cir. 1998) (a subsidiary's use of "[a] parent's broad general policy statements regarding employment . . . are not enough"), especially where, as here, such do not mandate specific discipline for breaches (they state only that discipline "may" result). (Pear. Dec., Exh. 7 at NYP-186; Exh. 9.) Guzman claims that these general "enforcement provisions" demonstrate News Corp. "enforced" policies against Post employees (CSMF, ¶¶ 9-10), but she offers no instance where such occurred, and all evidence is to the contrary. (See Scial. at 188-89 [Lern. Dec., Exh. 2];Lipp. at 230, 238, 359 [Lern. Dec., Exh. 1]; Scial. Aff., ¶ 10.)

Guzman's other assertions fail to show integrated labor relations. She claims Alertline, an anonymous complaint service subscribed to by News Corp. for employee and general public use, shows integrated labor relations. (Pl. Brf. at 4, 14.) It does not: complaints to Alertline, which is "managed by a third party" and not News Corp., are provided to and "investigate[d]" by the "people" of the company about which a complaint is made. (Lipp. at 260 [Pear. Dec., Exh. 4].) She claims the "Fox Credit Union" offers "special interest rates" to Post employees, but presents no evidence of the operation of this service, and News Corp. is not the same entity as Fox and/or the Fox Credit Union. (Pl. Brf. at 14.) She posits without evidence that "News Corp. provided the healthcare and benefit plans for Post employees" (id. at 5), but evidence indisputably shows that *NAI* – not News Corp. – purchased plans that the Post (and News Corp.) *may, if it chooses*, participate in, with the Post choosing the plans and rates it wishes to provide to employees. (Lipp. at 388-91 [Lern. Dec., Exh. 1]; Rep. Dec., Exh. 1.) A parent (NAI) offering "a common package of benefits" to a subsidiary does not run afoul of the "single employer" doctrine.[5] Kellett v. Glaxo Ent., Inc., 1994 WL 669975, at *5 (S.D.N.Y. Nov. 30, 1994).

---

[5] Guzman also newly asserts that two "News Corp." employees on the Hispanic Council "recruited employees to the Post." (Affidavit of Sandra Guzman, dated May 23, 2013 ["Guz. Aff."], ¶ 20.) First, Guzman testified at least one

4

B.  News Corp. and the Post Do Not Have Interrelated Operations

Guzman admits, by failing to dispute with competent evidence, that the Post controls its day-to-day operations, has its own bank account, maintains its financial books, records, and profit and loss statements, is responsible for its day-to-day expenses, is charged rent for the office space it occupies, prints and distributes its product, has its own marketing department,[6] has its own CFO who is a Post employee, has its own Finance Department comprised of Post employees, has its own computer system and databases, and has its own security department, all without the involvement or control of News Corp.  (CSMF, ¶¶ 15-21, 23-27.)  Stated otherwise, Guzman admits that the Post and News Corp. do not have interrelated operations.

Guzman principally *argues* that the Post and News Corp. share space on the 8th floor of the building at 1211 6th Avenue ("1211 Building").  But the evidence is to the contrary:  News Corp. has offices on the 8th floor; the Post does not.  Guzman relies on the testimony of Allan but, *like Guzman herself*, Allan testified that the Post's Features and Op-Ed departments are on the 9th floor, with no offices on the 8th floor.[7]  Guzman, Austin Fenner, Ikimulisa Livingston and all other deponents testified only to the Post having offices on the 9th and 10th floors.  (See, e.g., Pear. Dec., Exh. 19 at ¶¶ 4-5, Rep. Dec., Exh. 2; Lipp. at 48-50 [Lern. Dec., Exh. 1].)

Guzman likewise claims Rupert Murdoch, News Corp.'s Chairman – who also is the Chairman *of the Post* – is involved "regularly" with business and editorial decisions, but presents no evidence of this, and it is in any event irrelevant since he is entitled to wear "two hats."  (See § III, infra.)  The "evidence" she cites does not support this.  With respect to business decisions,

---

of these individuals was not a News Corp. employee. (Guz. at 349 [Lern. Dec., Exh. 11].) Second, this is hearsay – she has no personal knowledge of this.  Third, the Hispanic Council has no authority over the Post's HR (Scial. Aff., ¶ 16), and recruiting would not create a single-employer relationship. See, e.g., Herman, 18 F.Supp.2d at 309 (no single employer where, inter alia, employees were transferred from parent to subsidiary).

[6] Guzman attempts to refute this (CSMF, ¶ 25) with the conclusory assertion that Goodstein is a "News Corp.," and not an *NAI*, employee, which, as described below, see § VI, infra, is patently false.

[7] Allan once misspoke, saying Post Features and Op-Ed were on the 8th Floor.  He immediately corrected himself (Allan at 10-11 [Pear. Dec., Exh. 1]) (testimony Guzman speciously omits, citing "Allan at 10, 12", Pl. Brf. at 3).

she cites testimony about his involvement *with another company (the Daily)* (Compare Angelo at 50 [Pear. Dec., Exh. 5] [stating he discussed a business decision about "The Daily and/or The New York Post"], with id. at 54-55 [Rep. Dec., Exh. 3] [recalling only discussing a decision regarding The Daily].)  Thus, her claim of "day-to-day" involvement in editorial decisions is based on his once apologizing for the Stimulus Cartoon (Allan at 26, 500 [Pear. Dec., Exh. 1]); the statement that he is involved in determining political candidates for the Post to endorse (Pl. Brf. at 17); and the Post's Publisher seeing him in the Post's newsroom approximately 12 times over *his 13-year career*. (See Angelo at 29 [Lern. Dec., Exh. 7], id. at 37 [Pear. Dec., Exh. 5].)  Suffice it to say, this "evidence" is not sufficiently "extraordinary" to support a determination that News Corp. and the Post are a single employer.  Murray, 74 F.3d at 404.

      C.  <u>The Companies Do Not Have Common Management</u>

While the existence of common management is a less important factor, <u>Velez v. Novartis Pharma. Corp.</u>, 244 F.R.D. 243, 253-54 (S.D.N.Y. 2007), there is no evidence that any member of Post senior management *during the statutory time period* is or ever has been an employee of News Corp., including Paul Carlucci, Publisher from 2005 through the end of Guzman's employment; Col Allan, Editor-in-Chief; Jesse Angelo, then-Executive Editor; Jennifer Jehn and Amy Scialdone, the SVP and VP of HR; and Michael Racano, CFO.  (CSMF, ¶¶ 17, 28-32.)  There also is no dispute that this senior management constitutes the Post's Executive Committee (id., ¶ 33), along with one other member, Les Goodstein (id. at ¶ 34), *who is an employee of NAI and not News Corp*., and who runs a group of small newspapers called the Community Newspaper Group ("CNG"), *owned by owned by NAI* **(not News Corp.)**, which tries to cross-sell advertising space with the Post.  (Lipp. at 166 [Rep. Dec., Exh. 4].)[8]  There likewise is no

---

[8] Guzman asserts that the Executive Committee "routinely" discussed and debated her employment.  (Pl. Brf. at 14.) She cites minutes from this meeting in 2008 and 2009; in neither is she mentioned.  (Pear. Dec., Exh. 16.)

6

dispute that no News Corp. employee sits on the Post's Management Council (CSMF, ¶ 39), nor is it disputed that the Post and News Corp. have separate Boards of Directors. (Id. at ¶ 40.)

Guzman attempts to show integration because News Corp. and the Post boards have the same Chairman, and because the one-time Publisher of the Post, Lachlan Murdoch, was also a News Corp. officer. This is of no moment. It is commonplace for officers and directors to have multiple roles in a parent/subsidiary relationship. Herman v. Blockbuster Ent. Grp., 18 F. Supp. 2d 304, 312 (S.D.N.Y. 1998), aff'd, 182 F.3d 899 (2d Cir. 1999); Velez, 244 F.R.D. at 253-54. Thus, that Rupert Murdoch selected the Post's two publishers in the last decade and has been involved in a limited number of high level editorial and political decisions (see § II, infra), does not create a "single employer" relationship, any more than Lachlan Murdoch's having been Post Publisher as well as Deputy COO of News Corp. See Herman, 18 F. Supp. 2d at 312 (CEO and CFO of parent served same roles with subsidiary); Frank v. U.S. W., Inc., 3 F.3d 1357, 1364 (10th Cir. 1993) (manager employed by parent who managed the marketing operations of three subsidiaries insufficient). Moreover, there is no dispute that Lachlan Murdoch was acting in his capacity as Publisher in hiring Guzman and Col Allan.

Lastly, that Carlucci, the Post's Publisher, reported to the COO of News Corp. does not evidence interrelated operations. (Carl. at 28-29 [Pear. Dec., Exh. 2].) An executive of a subsidiary reporting to an executive of a parent company is "no more than what a parent typically requires of a subsidiary." Balut, 988 F. Supp. at 342, n.6. Strangely, she also claims Carlucci "filled a role overseeing all advertising for all News Corp. media and publishing holdings" (Pl. Brf. at 15, 17), but cites nothing to support this proposition, which is false.

### D. Common Ownership and Financial Control

Guzman asserts that the common ownership factor "is uncontested." (Pl. Brf. at 17.) The Post is a wholly-owned subsidiary of News Corp., ***three levels down the corporate chain***. It is

7

undisputed, however, that the Post maintains its own financial control including bank accounts, expenses, and profit and loss statements. (Def. Brf., § II.B).

## II. News Corp. Made No Decisions Relating To Guzman

News Corp. may not be liable "***absent proof that [it] was involved in the particular circumstances giving rise to the litigation***." Da Silva, 210 F. Supp. 2d at 244 (emphasis added). Guzman has provided no such proof. It undisputed that Guzman was supervised by Post employees. (CSMF, ¶ 46.) Her new claim that she was "supervised" by Goodstein (id.) ***directly contradicts her prior sworn testimony*** and must be rejected.[9] (Guz. at 201-02 [Pear. Dec., Exh. 17]; id. at 408-09 [Rep. Dec., Exh. 5] ["He was not my supervisor . . . ."].)  See Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 556 n.2 (2d Cir. 2012). Likewise, she was always stationed in the Post's offices[10] (CSMF, ¶ 47) and always edited *Tempo*, a section of the Post's newspaper, and certain additional sections beginning in 2007. (id. at 360-61 [Rep. Dec., Exh. 5].) While some of these sections were subsequently repurposed to run in CNG newspapers – ***owned by NAI*** (Lipp. at 166 [Rep. Dec., Exh. 4]) – she did not prepare original content for these sections. (Guz. at 258-61 [Rep. Dec., Exh. 5]; Robin. at 44-45 [Rep. Dec., Exh. 7].)[11]

---

[9] Guzman also claims, "Goodstein exercised day-to-day control over Ms. Guzman in managing the content and production of [*Tempo*]," (Pl. Brf. at 7, 8), but the cited testimony states that Goodstein assisted with sales**, *did not*** oversee editorial, and ***did not*** supervise Guzman. (Guz. at 201-02 [Pear. Dec., Exh. 17].)

[10] Guzman states that she "shared office space and facilities with News Corp. employees" (Pl. Brf. at 8), but cites to her 2010 affidavit (Pear. Dec., Exh. 19), which states that she worked in the Post's offices on the 9th and 10th floors.

[11] Guzman's affidavit states that she was "asked to create and edit various special sections" for CNG and "hand off [her] work product to News Corp. . . ." (Guz. Aff. ¶ 19.) More than three into this litigation, this is a newly minted "fact" that contradicts prior testimony and may not be considered. See Hayes v. N.Y.C. Dept. of Corrections, 84 F.3d 614, 619 (2d Cir. 1996) (a party may not "create an issue of fact by submitting an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony.") (citations omitted). Guzman previously testified that she did not prepare unique sections for CNG, but that she would send ***to CNG*** – not News Corp. – sections which she had prepared for the Post, which CNG would "disassemble" and might run "an article or put in three articles that I edited" (Guz. at 258-61 [Rep. Dec., Exh. 5]). This is corroborated by other testimony. (Robin. at 44-45 [Rep. Dec., Exh. 7].) Moreover, it does not support that the Post and News Corp. are single employers, as "[a] plaintiff . . . may not rely on the totality of relationships between the various subsidiaries of a common parent" to link a subsidiary and parent. Kellett, 1994 WL 669975, at *5 (citing Frank, 3 F.3d at 1362).

With respect to the two committees Guzman served on, her affidavit is, at best, ambiguous, and her use of "News Corp." as an adjective is self-serving.  For instance, she now claims Rick Ramirez is a "News Corp." employee, but previously testified he was an employee of 20th Century Fox – which is not News Corp. – and that he "wasn't working for News Corp." (Guz. at 349 [Lern. Dec., Exh. 11].)  Thus, this "new" contradictory testimony must be rejected. See Ramos, 687 F.3d at 556 n.2.  Regardless, the fact that Guzman sporadically served on two inter-company "News Corp." committees is not proof that its and the Post's labor relations are so inextricably intertwined such that they could be found to be a single employer.

Finally, it is undisputed that Guzman's employment with the Post was terminated based on decisions made exclusively by Allan and Carlucci.  (CSMF, ¶48.)  Guzman points to no competent evidence that any News Corp. employee was involved.  In short, News Corp. "***was not involved in the particular circumstances giving rise to the litigation***" and "should not lightly be held responsible for the acts of its subsidiary[y] . . . ." Da Silva, 210 F. Supp. 2d at 244. See Murray, 74 F.3d at 405.

**III.     News Corp. and NAI are Not "Indistinguishable"**

Guzman's opposition relies on the false and unsupported premise that NAI and News Corp. are "indistinguishable."  (Pl. Brf. at 5.)  The argument is without factual or legal foundation, and she offers nothing to support her conclusory argument that News Corp. and NAI are one and the same.  Indeed, she took no discovery of NAI, and offers no relevant evidence which would (or could) show that NAI and News Corp.'s operations are commingled to such a large degree that one necessarily would conclude them to be a single employer. See Darden v. DaimlerChrysler N.A. Holding Corp., 191 F. Supp. 2d 382, 395 (S.D.N.Y. 2002) ("[A]s a matter of policy, courts presume the separateness of legally distinct corporate entities.").

9

That Jordan Lippner, an attorney employed by NAI (Lipp. at 18 [Lern. Dec., Exh. 1]), at times has acted as legal counsel to News Corp. and the Post, and that he reports to an attorney for News Corp., is of no moment.  She also argues that Goodstein's title and business card make NAI and News Corp. "indistinguishable."  To reach this conclusion, she ignores that Goodstein – who is unquestionably an NAI employee as evidenced by his ***employment contract*** (Lern. Dec., Exh. 15) ***and his W-2s*** (Rep. Dec., Exh. 6) – manages the CNG newspapers, which are owned by NAI.  (Lipp. at 166][Rep. Dec., Exh. 4].)  However, glaringly omitted from her "analysis" is evidence that Goodstein ever once provided services to News Corp.[12]  Finally, she asserts that Lippner and Goodstein have "News Corp. e-mail addresses" because they end in "newscorp.com," but, as Lippner explained, this is an e-mail address for NAI employees as well as News Corp.[13]  (Lipp. at 107-13 [Lern. Dec., Exh. 1].) The remainder of her argument concerns Goodstein attending the Post's Executive Committee meetings and his role with *Tempo*, which is irrelevant to any interrelation of NAI and News Corp.

None of the foregoing, however, is of any relevance.  Even assuming NAI and News Corp. are "indistinguishable", such a determination (albeit incorrect) has no bearing on the issue presented in this case, i.e., ***whether News Corp. and the Post are a single employer***.

---

[12] Guzman claims that Goodstein's title and business card evidence that he was a News Corp. employee.  But title is not a factor considered by any court in determining whether an individual is employed by a company, Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 113-14 (2d Cir. 2000) (listing factors regarding determining "employer" not including "title")  (citations omitted), and the business card is hearsay, Williams v. Interpublic Severance Pay Plan, 2007 WL 2298386 (N.D. Ill. Aug. 7, 2007) (refusing to consider as hearsay an unauthenticated business card as evidence of plaintiff's title).  She likewise distorts deposition testimony to say that Goodstein "authorized" a press release identifying him as a News Corp. employee.  (Good. at 43-44 [Pear. Dec., Exh. 15] [stating, "Those are not my words"].)

[13] Guzman falsely claims that Carlucci served as Chairman and CEO of NAI.  (Pl. Brf. at 7.)  This is not true; he served as Chairman and CEO of News America Marketing, a fact that is irrelevant to any determination regarding NAI and News Corp.  (Pear. Dec., Exh. 3 at SG_6961).

**CONCLUSION**

Defendant News Corporation respectfully requests that this Court grant summary judgment dismissing with prejudice Guzman's Amended Complaint in its entirety.

Dated: May 31, 2013
       New York, New York

                                    Respectfully submitted,

                                    KASOWITZ, BENSON, TORRES
                                      & FRIEDMAN LLP

                                    By:  /s/ Mark W. Lerner
                                         Marc E. Kasowitz (mkasowitz@kasowitz.com)
                                         Mark W. Lerner (mlerner@kasowitz.com)
                                         Blythe E. Lovinger (blovinger@kasowitz.com)
                                         Garrett D. Kennedy (gkennedy@kasowitz.com)

                                    1633 Broadway
                                    New York, New York 10019
                                    Tel.: (212) 506-1700
                                    Fax: (212) 506-1800

                                    Attorneys for Defendant
                                    News Corporation