UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
:
SANDRA GUZMAN,                                                 :
:
:
                    Plaintiff,                                 :
:
         vs.                                                   :   Civ. No.: 09 CV 9323 (LGS)
:
NEWS CORPORATION, NYP HOLDINGS,                                :
INC., d/b/a THE NEW YORK POST,                                 :
and COL ALLAN, in his official and                             :
individual capacities,                                         :
:
                    Defendants.                                :
---------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS NYP HOLDINGS, INC. AND COL ALLAN'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**


                              KASOWITZ, BENSON, TORRES
                              & FRIEDMAN LLP
                              Marc E. Kasowitz (mkasowitz@kasowitz.com)
                              Mark W. Lerner (mlerner@kasowitz.com)
                              Blythe E. Lovinger (blovinger@kasowitz.com)
                              Garrett D. Kennedy (gkennedy@kasowitz.com)
                              1633 Broadway
                              New York, New York 10019
                              Tel.:   (212) 506-1700

                              Attorneys for Defendants NYP Holdings, Inc.,
                              d/b/a the New York Post, and Col Allan

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................... 1

I.   GUZMAN'S EMPLOYMENT WAS NOT TERMINATED
     BASED ON HER RACE, COLOR, OR NATIONAL ORIGIN ........................................... 1

     A.   Guzman Has Not Established a *Prima Facie* Claim
          of Discriminatory Termination ................................................................................. 1

          1.   Stray Remarks Do Not Evidence Discriminatory Termination ............................... 2

          2.   Conklin's Retention Does Not Support an Inference of Discrimination .................. 3

     B.   Guzman's Opposition Does Not Raise an Issue of Fact
          as to the Non-Discriminatory Reason for Guzman's Employment Termination ............ 4

II.  GUZMAN WAS NOT TERMINATED
     BASED ON RETALIATION ............................................................................................... 5

III. THERE IS NO EVIDENCE OF A HOSTILE WORK ENVIRONMENT .......................... 7

IV.  GUZMAN DID NOT AVAIL HERSELF OF COMPLAINT
     PROCEDURES AND HER EMPLOYER CANNOT THEREFORE BE LIABLE ............. 9

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Adams v. Ellis,
   2012 WL 693568 (S.D.N.Y. Mar. 2, 2012) ...............................................................................6

Beckman v. U.S. Postal Serv.,
   79 F. Supp. 2d 394 (S.D.N.Y. 2000)..........................................................................................2

Calhoun v. Mastec, Inc.,
   2006 WL 2806452 (W.D.N.Y. Sept. 28, 2006) .........................................................................7

Campbell v. Cellco Partnership,
   2012 WL 400959 (S.D.N.Y. Feb. 7, 2012).................................................................................8

D'Amico v. City of N.Y.,
   132 F.3d 145 (2d Cir. 1998).....................................................................................................6, 7

Davis-Bell v. Columbia Univ.,
   851 F. Supp. 2d 650 (S.D.N.Y. 2012)........................................................................................8

Gallo v. Prudential Residential Srvs., Ltd. P'ship,
   22 F.3d 1219 (2d Cir. 1994).......................................................................................................5

Grant v. Bethlehem Steel Corp.,
   622 F.2d 43 (2d Cir. 1980).........................................................................................................6

Henry-Offor v. City Univ. of N.Y.,
   2012 WL 2317540 (S.D.N.Y. June 15, 2012) ...........................................................................7

Houston v. Manheim-New York,
   2010 WL 6121688 (S.D.N.Y. July 7, 2010) .............................................................................6

Howe v. Town of Hempstead,
   2006 WL 3095819 (E.D.N.Y. Oct. 30, 2006)............................................................................2

Hyek v. Field Support Srvs., Inc.,
   702 F. Supp. 2d 84 (E.D.N.Y. 2010),
   aff'd, 461 Fed. Appx. 59 (2d Cir. 2012) ....................................................................................4

Kearney v. ABN AMRO, Inc.,
   738 F. Supp. 2d 419 (S.D.N.Y. 2010)........................................................................................3

Lambert v. N.Y.S. Office of Mental Health,
　2000 WL 574193 (E.D.N.Y. Apr. 24, 2000),
　aff'd, 22 Fed. Appx. 71 (2d Cir. 2001) ...................................................................4

Lanzo v. City of N.Y.,
　2000 WL 804628 (E.D.N.Y. May 18, 2000) ...........................................................3

Little v. NBC, Inc.,
　210 F. Supp. 2d 330 (S.D.N.Y. 2002)......................................................................7

Lugo v. City of New York,
　2012 WL 3202969 (E.D.N.Y. Aug. 3, 2012)...........................................................3

Lyle v. Warner Bros. Tel. Prod'ns.,
　34 Cal. 4th 264 (2006) .............................................................................................9

Manessis v. N.Y.C. Dep't of Transp.,
　2003 WL 289969 (S.D.N.Y. Feb. 10, 2003)............................................................3

Norton v. Sam's Club,
　145 F.3d 114 (2d Cir. 1998)....................................................................................4

Ozenne v. Univ. of Conn. Health Care,
　292 F.Supp.2d 425 (D. Conn. 2003).......................................................................9

Parcinski v. Outlet Co.,
　673 F.2d 34 (2d Cir. 1982)......................................................................................5

Peterson v. Washington Cty. Dep't of Pub. Works,
　2002 WL 32344505 (N.D.N.Y. Dec. 19, 2002).......................................................9

Petrisch v. HSBC Bank USA, Inc.,
　2013 WL 1316712 (E.D.N.Y. Mar. 28, 2013).....................................................8, 10

Pucino v. Verizon Wireless Comms., Inc.,
　618 F.3d 112 (2d Cir. 2010)....................................................................................8

Ramos v. Marriott Int'l, Inc.,
　134 F. Supp. 2d 328 (S.D.N.Y. 2001)..................................................................7, 8

Rinsler v. Sony Pictures Ent., Inc.,
　2003 WL 22015434 (S.D.N.Y. Aug. 25, 2003).......................................................2

Sundaram v. Brookhaven Nat. Labs.,
　424 F. Supp. 2d 545 (E.D.N.Y. 2006) ....................................................................7

Taylor v. Polygram Records,
　1999 WL 124456 (S.D.N.Y. Mar. 8, 1999).............................................................5

Thomas v. N.Y.C. Health & Hospitals Corp.,
    2004 WL 1962074 (S.D.N.Y. Sept. 2, 2004) ............................................................................ 7

Torres v. Pisano,
    116 F.3d 625 (2d Cir. 1997) ................................................................................................... 8

United Mag. Co. v. Murdoch Mags. Distrib., Inc.,
    393 F. Supp. 2d 199 (S.D.N.Y. 2005),
    aff'd, 279 F. Appx. 14 (2d Cir. 2008) ............................................................................... 8, 10

Whidbee v. Garzarelli Food Specialities, Inc.,
    223 F.3d 62 (2d Cir. 2000) ................................................................................................. 5, 9

Zakrewska v. The New School,
    14 N.Y.3d 469 (2010) ........................................................................................................... 10

**OTHER AUTHORITIES**

FED. R. CIV. P. 26 .............................................................................................................................. 3

FED. R. CIV. P. 56 .............................................................................................................................. 1

Defendants NYP Holdings, Inc., d/b/a the New York Post (the "Post") and Col Allan submit this memorandum in further support of their motion for summary judgment ("Motion").[1]

## PRELIMINARY STATEMENT

Guzman's opposition to the Motion is riddled with assertions that are either contradicted by or unsupported by the evidence – such as her assertion that "the patently racist term 'n****r' was frequently used at the Post" (no evidence of this) and that "Allan rubbed his erect penis against employee Nicole Faux" (which has been disproven). And even where she does not rely on inadmissible hearsay and rumor, her allegations based on percipient experience (which are few) are impermissibly vague and conclusory, as Guzman could not recall, or refused to testify about, specific instances of purported misconduct. When the Court considers the few claims based on admissible evidence – only a handful over the four-year statutory period – as is required by Rule 56, FED. R. CIV. P., it is clear that her claims are gossamer, trivial and inactionable. Likewise, she cannot refute the business decision leading to her termination, which the record proves was a well-grounded decision to eliminate an unprofitable and shrinking section with a bleak outlook.

**I.   GUZMAN'S EMPLOYMENT WAS NOT TERMINATED BASED ON HER RACE, COLOR, OR NATIONAL ORIGIN**

   **A.   Guzman Has Not Established a *Prima Facie* Claim of Discriminatory Termination**

It remains undisputed that when Guzman was let go in September 2009, her *Tempo* section had diminished to but a few pages per month, the October issue had sold ***no advertising***

---

[1] As a threshold matter, the Pearson Declaration and the Rule 56.1 Counterstatement of Material Facts ("CSMF") should be rejected because they were not filed, as required by the Court's order, on May 24, 2013, but in the early hours of May 25, 2013. See Graves v. Deutsche Bank Securities, 2011 WL 1044357 (S.D.N.Y. Mar. 4, 2011). Plaintiffs' Memorandum of Law in opposition to the Motion is referred to herein as "Pl. Brf." Submitted herewith is the declaration of Mark W. Lerner, dated May 31, 2013 ("Rep. Dec."). References to the Lerner Declaration, dated May 10, 2013, in support of the Motion are referred to as "Lern. Dec."; the Pearson Declaration, dated May 24, 2013, in support of Plaintiff's Memorandum of Law in opposition to the Motion ("Pl. Brf.") is cited as "Pear. Dec."

and was not going to be published at all and *Tempo* was now thousands of dollars per issue. (CSMF, ¶¶ 26, 30-34). This business decision is well-documented in, *inter alia*, Executive Committee minutes, profit and loss statements, and the disappearing pages of *Tempo* itself. (Motion, Facts, § A.) Against this backdrop, Guzman must adduce evidence sufficient to create an issue of fact that this business decision was not the real reason, and that her termination was based on unlawful discriminatory and/or retaliatory reasons. She has not done this, nor can she, and her claims should be dismissed.

1. Stray Remarks Do Not Evidence Discriminatory Termination

It is well-settled law that purportedly derogatory remarks with no connection, or "nexus," to any employment decision cannot create an inference of discrimination. (Motion, § II.A.)[2] Guzman overstates that "[a]ll that is necessary" to create such an inference is a decision-maker's derogatory comment (Pl. Brf. at 16); however, factors considered include when it was made, its contents, and, most importantly, "*the remarks' context, such as whether they had any relation to the relevant employment decision*." Howe v. Town of Hempstead, 2006 WL 3095819, *7 (E.D.N.Y. Oct. 30, 2006). Guzman relies on three alleged comments by Allan in 2004 and 2005, and one in February 2009, *all unrelated to her or any employment decision*; and a 2007 comment by Les Goodstein, who worked for another company, by Guzman's own admission did not supervise her, and was not a decision-maker in her discharge or the closing of *Tempo*. These do not create a question of fact.[3] The Stimulus Cartoon may not be considered at all, but, to the extent it is, it too is at best a "stray remark." Not only is it First Amendment-protected editorial

---

[2] Guzman improperly asks the Court to rely on purportedly sex-based comments to support her termination claim. (See Pl. Brf. at 16 [citing "sexist" comments in support of termination].) This impermissibly raises a new sex-based termination claim for the first time in opposition to summary judgment as she has never claimed sex-based termination (see ECF No.36); this is "inappropriate," and may not be considered. Beckman v. U.S. Postal Serv., 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) (citation omitted). Any "sexist" conduct is irrelevant to her termination.

[3] Guzman broadly claims that there is no "bright line" regarding temporal proximity (Pl. Brf. at 17) but cites an inapposite case based on retaliation. Case law limits temporal proximity to three months. See, e.g., Rinsler v. Sony Pictures Ent., Inc., 2003 WL 22015434 (S.D.N.Y. Aug. 25, 2003).

2

content, but its meaning is ambiguous, its publication does not mean it reflected Allan's views, and it was published *seven months* before Guzman's termination.[4]  (See Motion, 15 n.17.)[5]

### 2.  Conklin's Retention Does Not Support an Inference of Discrimination

Guzman's comparison of her situation to the Post's retention of Margi Conklin, who became Deputy Editor of the Sunday Post after *Page Six, The Magazine,* went from a weekly to a quarterly, fails because she cannot show, as she must, that she and Conklin were "similarly situated in all material facts," Lugo v. City of New York, 2012 WL 3202969, at *4-5 (E.D.N.Y. Aug. 3, 2012), including reporting to the same supervisor, working in the same department, and having the same "job descriptions and responsibilities."  Lanzo v. City of N.Y., 2000 WL 804628, at *7 (E.D.N.Y. May 18, 2000); Manessis v. N.Y.C. Dep't of Transp., 2003 WL 289969, at *10 (S.D.N.Y. Feb. 10, 2003).[6]

Here, the evidence shows that while Guzman produced a tiny section with only one dedicated employee (herself), Conklin ran a business that had 37 employees and produced a glossy magazine every week. (Lern. Dec., Exh. 27.)  Conklin was reassigned "because she was *on contract* and the position [she was placed in] was *open* and *equivalent*." (Scial. at 282 [Rep. Dec., Exh. 1]).  Conklin's contract was for a fixed term, and *guaranteed* her placement if *Page Six* was closed before a certain date; Guzman had no contract. (Lern. Dec., Exh. 27; Guz. at 586 [Pear. Dec., Exh. 1].)  The two women also had different supervisors and the changes came seven months apart. (Robin. at 39 [Rep. Dec., Exh. 2].)  They were not "similarly situated."

---

[4] Guzman states that the Post's "published content was at all relevant times approved by . . . Mr. Robinowitz." (Pl. Brf. at 17.)  She cites nothing for this broad supposition, and there is no evidence of this.
[5] Guzman asserts that Magistrate Judge Ellis previously ruled that "Allan's motivation in publishing the cartoon [is] relevant." (Pl. Br. 17 n.16.)  This overstates Judge Ellis' ruling, which permitted Guzman to engage in broad discovery under Fed. R. Civ. P. 26 on the premise that "[i]f Guzman were to show that Allan showed racial motivation with regard to "editorial" decisions *it could potentially lead to admissible evidence* on the issue of discrimination in the firing process." (ECF No. 96, at 5-6 [emphasis added].)  He refrained from stating that the Post's editorial content could evidence discrimination.
[6] Guzman asserts that determining whether individuals are similarly situated is inherently an issue of fact. (Pl. Brf. at 16.)  Numerous cases cited herein demonstrate this issue is routinely decided by courts.

Kearney v. ABN AMRO, Inc., 738 F. Supp. 2d 419 (S.D.N.Y. 2010) (employees with different job responsibilities not similarly situated); Lambert v. N.Y.S. Office of Mental Health, 2000 WL 574193, at *11 (E.D.N.Y. Apr. 24, 2000), aff'd, 22 Fed. Appx. 71 (2d Cir. 2001) ("similarly situated" employees must report to same supervisor).

      **B.    Guzman's Opposition Does Not Raise an Issue of Fact as to the Non-Discriminatory Reason for Guzman's Employment Termination**

While Guzman claims closing *Tempo* was ill-advised as its losses were "modest" (Pl. Brf. at 12.),[7] "[i]t is not a court's role to second-guess an employer's [business] decisions, even if foolish, so long as they are non-discriminatory." Hyek v. Field Support Srvs., Inc., 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010), aff'd, 461 Fed. Appx. 59 (2d Cir. 2012). See also Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998) (Title VII "does not make employers liable for doing stupid or wicked things"). Of course, evidence shows a strong economic reason: *Tempo* was losing money, its revenue had reached historic lows (Rac. Aff., ¶¶ 10, 13, 16), its advertising sales were nearly nil, and its page length was down to 2-3 pages (CSMF, ¶¶ 26, 31, 34). By the time of its closing, Guzman was *Tempo's* only employee and there were no more costs to be cut.

That the Executive Committee may have considered running *Tempo* occasionally in the future does not create an issue of fact, since is undisputed that when it recommended reducing *Tempo's* frequency, it anticipated that "[t]his will result in a position elimination," i.e. Guzman's *Tempo* editor position. (Rac. Aff., Exh. 2 at NYP-4620.)[8] And **there is no dispute** that

---

[7] Guzman cites to a P&L for the proposition that *Tempo* made $345,213 in profits for FY 2008. (Pl. Brf. at 11-12.) This P&L omits expenses such as editorial wages and freelance costs, among others, and thus over-inflates its profitability. (Id.) Of course, FY 2008 ended in June 2008, more than a year prior to *Tempo's* closing.
[8] Other matters raised are of no legal import. She cites an e-mail from Allan to Robinowitz in January 2009 to claim that the Post was not planning to close *Tempo*, but this e-mail highlights the need to control *Tempo's* expenses. (Lern. Dec., Exh. 8.) She claims that the Post is losing money, and absurdly argues that it is therefore not credible that it would close *Tempo* for financial reasons, but she cites only a hearsay blog to show the Post's "losses" (Pear. Dec. Exh. 25), and, if the Post were losing money, this would be all the more reason to close an unprofitable section. Guzman claims *Tempo* increased Hispanic readership by 70% under her purview, but this is unsupported: while it

4

Guzman's non-*Tempo* work could be performed by the Post's Special Sections Editor Carole Sovocool, who made 40% less than Guzman, while Sovocool continued to manage her existing workload (as the assumed workload amounted to only 10% of Sovocool's time). (See CSMF, ¶ 38; Sovo. Aff, ¶ 5.)[9] Guzman's claim she should have been retained to do that work is absurd.[10]

Finally, while Guzman challenges the decision not to offer her an alternative position, (Pl. Brf. at 18), it is ***undisputed*** that there was no such job, only a $55,000 lower-paying position Allan determined not to offer her (Allan at 398-99 [Lern. Dec., Exh. 12]), and the case law supports his decision. See Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982) (employer not obligated to reassign employee to lower-paying job, as he would be met with "serious morale problems"). Nor does Guzman show that she was even qualified for the other position.[11]

## II.   GUZMAN WAS NOT TERMINATED BASED ON RETALIATION

Guzman proffers no evidence giving rise to an inference of retaliation (Motion, § III) or impugning Defendants' legitimate reason for her termination (§II.B, supra). Nothing suggests that Allan harbored animus against her for her complaint to Jehn, so she distracts with reference to one unrelated comment by Allan,[12] made to an unknown person in an unknown context,

---

increased overall from *2001* to 2009 (Pear. Dec. Exh. 5), Guzman was employed from *2003 to 2009*, during which time Hispanic readership decreased (id., Exh. 4 at NYP-4212), ***a fact she admits***. (Guz. at 504-08 [Lern. Dec., Exh. 15].)

[9] Guzman claims she was "already producing the Black History Month special section and two other special sections" when Robinowitz spoke to her about additional special sections from Sovocool. (Guz. Aff. at ¶ 5.) Her counsel cites this for the proposition that these three sections were not transferred from Sovocool. (CSMF, ¶ 17.) This is deceptive: while Guzman was editing those sections when she spoke to Robinowitz, this is because they had been transferred to her from Sovocool earlier in 2007. (See Sovo. Aff. at ¶ 4; Guz. at 358-61 [Rep. Dec., Exh. 3].)

[10] Guzman's belief that she outperformed Sovocool on these sections is legally irrelevant. See Taylor v. Polygram Records, 1999 WL 124456 (S.D.N.Y. Mar. 8, 1999) (An employee's disagreement "with an employer's evaluation . . . does not prove pretext."). That Guzman edited the sections proficiently is not in dispute; however, the Post was very happy with Sovocool's performance on these sections based on evaluations, which rated her as "Exceeds Standards," and Sovocool's salary was significantly lower. (Sovo. Aff. at ¶8.)

[11] Guzman cites Gallo v. Prudential Residential Srvs., Ltd. P'ship, 22 F.3d 1219, 1227 (2d Cir. 1994), to suggest that the Post's not offering Guzman an open positions shows pretext. This case is inapposite as the employer had an ***explicit policy requiring it to do so***, and there was evidence of similar duties.

[12] Guzman refers to two purported comment by Robinowitz, who was not a decision-maker in her termination. She claims Robinowitz stated that protestors of the cartoon were "dumb." (Pl. Brf. at 9.) "[A] district court deciding a summary judgment motion must be provided with admissible evidence demonstrating the truth of the non-movant's

unconnected to Guzman, overheard by another, seven months before her termination.[13]  So thin is her evidence that Guzman stoops to claiming that she had a conversation with an employee (Greg Birnbaum) unconnected to any decisions who "told her" that he believed the decision was retaliatory.  (Guz. Aff., ¶ 17.)  She neither deposed him nor offers his affidavit.[14]

Additionally, Guzman offers no rebuttal evidence to refute Defendants' legitimate explanations of the other purported retaliatory conduct (56.1 Opp. at ¶¶ 53-56), which are therefore deemed admitted.  Houston v. Manheim-New York, 2010 WL 6121688 (S.D.N.Y. July 7, 2010) (deeming admitted 56.1 statements undisputed with evidence).  She relies on conclusory testimony to support her claim of increased expense scrutiny (Guz. at 340), but she "must offer some hard evidence" for her claim to survive.  See D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).  She puts forward no evidence to refute the legitimate reasons for her 2009 APA score – namely, a disciplinary warning received prior to her complaining about the Cartoon – or to rebut the denial of her request to attend and cover the Sotomayor investiture events on Post time.  (CSMF, ¶¶ 54-56.)[15]  Of course, evidence reflects that Allan had similarly refused her permission to cover another D.C. political event in January 2009, ***prior to her complaint***.  (See Rep. Dec., Exh. 4.)

---

assertions."  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000).  There is no admissible evidence of this statement, as Guzman did not hear it and testified as much.  (Guz. at 330-31.)

[13] Guzman relies on Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2d Cir. 1980) to claim that the seven-month gap between complaint and termination supports a causal connection.  This misstates Grant.  As explained in Adams v. Ellis, 2012 WL 693568, at *16 n.6 (S.D.N.Y. Mar. 2, 2012), Grant was highly fact-specific, but permitted a plaintiff to rely on evidence of retaliation against other employees where they experienced immediate retaliation, but the plaintiff did not until eight months later, which was the first opportunity to do so.  There is no such evidence here.  It is well established that the outward bound for a causal connection is three months.  (Motion, at 18, n.20.)

[14] Guzman claims that Gregg Birnbaum told her believed that she was terminated because she complained about the Stimulus Cartoon; Birnbaum's alleged remark is inadmissible hearsay.  (Guz. Aff. at ¶17.)  Birnbaum did not provide Guzman with any basis for his belief, and there is no evidence he had personal knowledge of the decision to terminate Guzman or close *Tempo*.  (Guz. at 605-06 [Pear. Dec., Exh. 1].)

[15] Guzman claims that her January 2009 disciplinary warning was unjustified.  (Pl. Brf. at 11 n.12.)  Her explanation misconstrues this warning, which she received because she "had a stylist, who is contracted to provide professional services on behalf of the Post, assist [her] for ***[her] personal benefit***," a violation of Post policy.  (Lern. Dec., Exh. 17 [emphasis added].)  Guzman admits to knowing this stylist "was going to approach designers on [her] behalf."  (Guz. at 536, 543 [Lern. Dec., Exh. 15].)  These events are explained more fully in the Motion, at 7 n.9.

### III. THERE IS NO EVIDENCE OF A HOSTILE WORK ENVIRONMENT

Guzman's hostile work environment claim based on race, color or national origin is so weak that she resorts to falsely claiming that the "term 'n****r' was frequently used at the Post." (Pl. Br. at 7.) ***Nothing*** supports this inflammatory accusation; rather, the record shows once, in 2001 (two years before Guzman's hire), an employee against whom Guzman makes no claims used this term at a bar, and that he was immediately reprimanded. (Allan at 253; Angelo at 360-61 [Day 1] [Pear. Dec., Exhs. 15, 18].) There is no evidence Guzman even knew of this remark during her employment, precluding consideration.[16] Three claimed Hispanic-related statements Guzman attributes to Allan (Pl. Brf. at 7) all occurred at the latest in March 2005, before the longest limitations period in this case, and it is undisputed that he made no such subsequent comments (and thus cannot be saved by any continuing violation theory). (CSMF, ¶121.) Anderson v. Davis Polk (untimely comments not part of continuing violation where all timely acts were by others). Nor would a sex-based remark save them. See Little v. NBC, Inc., 210 F. Supp. 2d 330, 336 (S.D.N.Y. 2002) (continuing violation requires same type of conduct).

Guzman admits that Riedel sang *West Side Story* songs to her only "several" times. (Pl. Brf. at 7.) The undisputed evidence of frequency is "three occasions." (Ried. Aff. at ¶ 10.) Her claim of "far more" (Guz. Aff. at ¶ 13) fails because she cannot "rely on mere conclusory allegations," but must present "hard evidence" for her claims to survive. D'Amico, 132 F.3d at 149. "General allegations of constant abuse" must be "confirmed by her coworkers" or other evidence. See Ramos v. Marriott Int'l, Inc., 134 F. Supp. 2d 328, 349 (S.D.N.Y. 2001)

---

[16] See, e.g., Henry-Offor v. City Univ. of N.Y., 2012 WL 2317540 (S.D.N.Y. 2012) ("[A]n act of which the plaintiff was entirely unaware logically cannot have contributed to the plaintiff's experience of a hostile environment"); Sundaram v. Brookhaven Nat. Labs., 424 F. Supp. 2d 545, 581 n.22 (E.D.N.Y. 2006) (conduct learned in discovery "do[es] not constitute harassment leading to a hostile work environment"); Calhoun v. Mastec, Inc., 2006 WL 2806452 (W.D.N.Y. Sept. 28, 2006) (dismissing claim where plaintiff unaware of conduct until discovery); Thomas v. N.Y.C. Health & Hospitals Corp., 2004 WL 1962074 (S.D.N.Y. Sept. 2, 2004) (same).

7

(discussing Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997)).[17]  In this regard, Guzman also claims Riedel greeted her in a "thick Spanish accent" but again submits no admissible evidence, as she cites not even one specific instance of conduct, nor the time frame or the frequency of occurrence.  See, e.g., Petrisch v. HSBC Bank USA, Inc., 2013 WL 1316712, at *10-11 (E.D.N.Y. Mar. 28, 2013) (*disregarding* allegations without a timeframe of occurrence).  Guzman may not ask the Court to "presume" such missing facts, as "without them," the record "would not establish the injury that they generally allege."  United Mag. Co. v. Murdoch Mags. Distrib., Inc., 393 F. Supp. 2d 199, 211 (S.D.N.Y. 2005), aff'd, 279 F. Appx. 14 (2d Cir. 2008).

Guzman's claim of sex-based harassment also revolves around a limited set of incidents, namely Goodstein twice complimenting her, and Allan joining a sex-themed conversation, offering an anecdote, and showing a news photograph of a naked man.  (Motion, § III.B.) These scant few inoffensive comments do not rise to the level of a hostile work environment under any applicable law:  they are spread out over the four-year statutory period, sparse, do not clearly invoke sex or gender, are not overtly sexual in nature, and can be no more than "petty slights."  See id.; Campbell v. Cellco Partnership, 2012 WL 400959, at *8 (S.D.N.Y. Feb. 7, 2012).

As with her claims against Riedel, Guzman summarily alleges Goodstein complimented her, with the exception of two specified instances, and Boyle used the word "harem," without a single specified instance, "every time" either spoke to her.  (Guz. at 396 [Pear. Dec., Exh. 1]; id. at 489 [Lern. Dec., Exh. 15].)  Assuming use of the word "harem" could even be "harassment," these are fatally vague (Motion, at 25 n.29, 30) and unaccompanied by corroborating evidence.  Ramos, 134 F. Supp. 2d at 349; Petrisch, 2013 WL 1316712, at *10-11 (lack of timeframe fatal).

---

[17] See also Pucino v. Verizon Wireless Comms., Inc., 618 F.3d 112, 119-20 (2d Cir. 2010) (crediting allegations of "constant abuse" where corroborated by others); Petrisch, 2013 WL 1316712, at *10 n.10 (allegation of repeated comments without further detail required corroborating evidence); Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 674 (S.D.N.Y. 2012) (noting that "general allegations of constant abuse" require "confirmatory" evidence).

Likewise, the Court cannot consider acts which are claimed without any record evidence that they even occurred,[18] such as Allan's alleged use of term "bitch" once in 2003 (Guz. at 240-41 [Pear. Dec., Exh. 1]); his purportedly "rubbed his penis" against a Post employee at a parties (Faux at 19-20, 34-38; Allan at 504 [Lern. Dec., Exhs. 12, 28]); another employee's mention of hiring more "testosterone" (Guz. Aff. ¶ 14.); and one employee propositioning another (Id., ¶ 10; Guz. at 238 [Pear. Dec., Exh. 1]).  Finally, Guzman's page of handwritten notes purportedly made at a Post editorial meeting are untimely as they were made in or about September 2005 (Guz. at 495-96 [Pear. Dec., Exh. 1]), they are hearsay,[19] and Guzman admitted all comments related to news stories discussed.  (id. at 495-98.)  See Lyle v. Warner Bros. Tel. Prod'ns., 34 Cal. 4th 264 (2006).  Guzman has never identified a single sex-based comment arising in these meetings.

## IV.    GUZMAN DID NOT AVAIL HERSELF OF COMPLAINT PROCEDURES AND HER EMPLOYER CANNOT THEREFORE BE LIABLE

Guzman fails to refute Defendants' Faragher-Ellerth defense because it remains undisputed that (i) the Post's anti-harassment policy requires that "employees . . . have an obligation to notify a manager in the Human Resources Department or an attorney in the Legal Department" (Lern. Dec., Exh. 26), which comports with testimony on this topic (see, e.g., Scial. at 64-66; Jehn at 54, 57 [Lern. Dec., Exhs. 9, 11]), (ii) she was aware of this requirement (CSMF, ¶ 58), and (iii) she never complained in accordance with this policy until after an unreasonable delay, in February 2009 (Guz. at 167 [Lern. Dec., Exh. 15]).  Defendants dispute that she ever engaged in a protected act, but accept as true for this motion.  The failure to comply with this

---

[18] See Whidbee, 223 F.3d at 71; Ozenne v. Univ. of Conn. Health Care, 292 F.Supp.2d 425, 434 (D. Conn. 2003) (dismissing claim where no evidence from third-party attesting to truth of matter asserted); Peterson v. Washington Cty. Dep't of Pub. Works, 2002 WL 32344505, at *4 n.6 (N.D.N.Y. Dec. 19, 2002) (requiring submission of admissible evidence of conduct) (citations omitted).

[19] Guzman's assertion that this was a "contemporaneous" writing is belied by the document's plain reference to "daily" commentary.

policy precludes liability for all but Allan's alleged 2007 barroom conduct, based on his supervisory status. (Motion, § V.)[20] Guzman's other purported complaints to non-qualifying individuals does not comport with policy.[21]

Finally, Guzman notes that the Faragher-Ellerth defense does not apply to her NYCHRL claims. However, she still must show that the Post "should have known" about the purported conduct, and there is no evidence to support such a finding. Zakrewska v. The New School, 14 N.Y.3d 469, 479 (2010). Guzman cites to no case holding that complaining to non-supervisors or employees of a different company is sufficient to put the Post on notice, because there is none. This is all the more so where, as here, she did not ask these individuals to take any action on her behalf, or anticipate that they would take action. (Guz. at 145-46, 155, 159-61 [Pear. Dec., Exh. 1].) In addition, the record supports that all complained-of allegations (save Riedel) occurred years prior thereto, and there is *no* evidence of any discriminatory conduct occurring after this complaint, i.e. that the Post could have remedied.

## CONCLUSION

Based on the foregoing, Defendants NYP Holdings, Inc., d/b/a the New York Post, and Col All respectfully request that the Court grant summary judgment dismissing with prejudice Plaintiff's Amended Complaint in its entirety.

---

[20] Guzman claims that she complained to Jehn regarding Riedel's singing. (Pl. Brf. at 27 n.28.) She never did (CSMF, ¶ 28), but even accepting this, it would be the sole raced-based conduct complained of in compliance with the Post's procedures and assuredly insufficient to establish a hostile work environment. (Def. Brf., § IV.A.)

[21] Guzman claims *for the first time* in her opposition that she complained to Jehn about Boyle, following three years of discovery, a prior affidavit, and two deposition days. Such a new factual allegation is not properly considered when first raised in opposition to summary judgment (see Pl. Brf., § V). See, e.g., Petrisch, 2013 WL 1316712, at *8-9 (disregarding factual allegations first raised in opposition to summary judgment). Further, given that Guzman does not allege the timeframe of a single of Boyle's purported comments, she cannot show that she complained in a reasonably timely manner (Pl. Brf., § V), and liability should be precluded, as Guzman may not ask the Court "presume" facts. See also United Mag., 393 F. Supp. 2d at 211(citation omitted).

Dated: May 31, 2013
      New York, New York

                        Respectfully submitted,

                        KASOWITZ, BENSON, TORRES
                         & FRIEDMAN LLP

                        By:  /s/ Mark W. Lerner
                             Marc E. Kasowitz (mkasowitz@kasowitz.com)
                             Mark W. Lerner (mlerner@kasowitz.com)
                             Blythe E. Lovinger (blovinger@kasowitz.com)
                             Garrett D. Kennedy (gkennedy@kasowitz.com)

                        1633 Broadway
                        New York, New York 10019
                        Tel.: (212) 506-1700
                        Fax: (212) 506-1800

                        Attorneys for Defendants
                        NYP Holdings, Inc., d/b/a the New York Post
                        and Col Allan