# Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
SANDRA GUZMAN,

                              Plaintiff,          No. 09 CV 9323 (LGS)

      v.

NEWS CORPORATION, NYP HOLDINGS,
INC., d/b/a THE NEW YORK POST,
and COL ALLAN, in his official and individual
capacities,

                              Defendants.
------------------------------------------------------------- X

## PLAINTIFFS' RULE 56.1 COUNTERSTATEMENT

Pursuant to Local Civil Rule 56.1(b) and in response to Defendants' Rule 56.1 Statement annexed to the Motion for Summary Judgment by Defendants NYP Holdings, Inc., d/b/a the New York Post (the "Post") and Col Allan ("Defendant Allan") (together, "Defendants"), Plaintiff Sandra Guzman, by and through undersigned counsel, Thompson Wigdor LLP, respectfully submits the following statement of material facts in dispute, which demonstrates that there are genuine issues of material facts to be tried:

**I.    Guzman's Employment and Subsequent Termination**

       1.      Plaintiff began her employment with the Post in July 2003 as an Associate Editor, when she was hired to "plan . . . a regular [newspaper] section aimed at [the Latino] community." (Lern. Dec., Exh. 1.)[1]

**Response**

Admit[2] that Plaintiff began her employment with the Post in July 2003 as an Associate Editor pursuant to an employment contract. Dispute that the sole reason for Plaintiff's hire was

---

[1] Submitted herewith in support of the motion is the declaration of Mark W. Lerner, dated May 10, 2013 ("Lern. Dec."), to which exhibits referenced herein, unless otherwise specified, are attached.

44.     The Stimulus Cartoon makes reference to a famous chimpanzee attack which had occurred earlier that week in Connecticut. (Lern. Dec., Exh. 14.)

**Response**

Disputed. The Cartoon makes reference to President Barack Obama, and the President is depicted as a chimpanzee being shot by two police officers. (Pear. Dec., Ex. 29). The day prior to the publication of the Cartoon, President Barack Obama signed the Stimulus Bill into law. The Cartoon makes specific reference to this, as one of the police officers remarks: "They'll have to find someone else to write the next Stimulus Bill." (Id.). A picture of President Obama signing the stimulus bill was published on a page of the Past adjacent to the Cartoon.

45.     Guzman first saw the cartoon in the *New York Post* newspaper following its publication. (AC ¶ 87.)

**Response**

Admit.

46.     Allan, the Post's Australian Editor-in-Chief who selected the cartoon for publication, believed the chimpanzee symbolized the Congressional authors of the stimulus bill, as the cartoon made explicit reference to the *writers* of the bill. (Allan at 44, 350-51.)

**Response**

Dispute. See response to paragraph 44.

47.     On the day that the cartoon was published, Guzman spoke to Jennifer Jehn, the head of the Post's human resources about the cartoon, and complained that she believed the cartoon to be racist. (Jehn at 191-99.) This was the first and only complaint that she made to the Post's human resources department, and she never made any complaint to counsel for the Post, as required by the Post's anti-harassment policy. (Guz. at 166-67).

Response
---

Dispute. Defendants mischaracterize the extent of Ms. Guzman's complaints to Ms. Jehn, as they were not limited to the Cartoon. In fact, Ms. Guzman expressly testified that she complained to Ms. Jehn about "several sexist and racially discriminatory incidents." (Pear. Dec., Ex. 1, Guz.. at 151:1-5). At that time, "[Ms. Guzman] reported to Ms. Jehn many examples and incidents of harassment and discrimination that [she] had witnessed and which were reported to [her] by other Company employees. Among the examples of harassment and discrimination that [she] related to Ms. Jehn were: Mr. Goodstein's regular sexual harassment of [her] and other female employees, Defendant Allan's sexual harassment and racially demeaning conduct (including in executive committee meetings, in which he sometimes showed up drunk, discussed the strippers at a strip club called "Scores," and made various racist and sexist remarks, including a joke at Pucci Meyer's expense that "You can't teach an old bitch new tricks"), David Boyle calling his female subordinates his "harem," supervisors sleeping with interns while promising them jobs (and one male employee telling a young intern, "I will give you a permanent job if you give me a blow job"), and other highly disturbing and discriminatory conduct. [Ms. Guzman] also told Ms. Jehn that [she] generally found the work environment at the Company to be offensive, sexist, racist and homophobic. Ms. Jehn asked what [she] would recommend that the Company do about the situation. [Ms. Guzman] recommended that at the very least the Company should conduct sensitivity and diversity training for the entire staff, including management, to make it clear that it is not only unacceptable but illegal to behave the way many executives, managers and employees were behaving." (Guzman Aff. at ¶ 10).

Moreover, prior to her complaints to Ms. Jehn, Ms. Guzman complained several times. Specifically, Ms. Guzman told Rick Ramirez (an attorney) and Mitsy Wilson, members of a

News Corp. diversity committee on which she sat, that Defendant Allan engaged in racist conduct and sexist conduct (including showing her a picture of a naked man on his phone), "created a sense in the newsroom that gave men the freedom to treat women as sex objects," and that she "had personally experienced discrimination and sexism in the workplace." (Pear. Dec., Ex. 1, Guz. at 153-154; 157). Ms. Guzman also complained about Allan showing her a nude photograph to Paul Armstrong, a member of management. (Id. at 145-46). Ms. Guzman told Mr. Armstrong that this behavior was "inappropriate," "offensive," "demeaning" and "humiliating." (Id. at 148:18-25). Ms. Guzman also reported the "discrimination and sexism" she suffered to Lisa Barnett, who is "part of the management team" and DeDe Brown, a member of the Executive Team. (Id. at 161:2-12). Moreover, Ms. Guzman complained to Mr. Armstrong, Ms. Barnett and Ms. Brown about Mr. Goodstein's "lascivious and disgusting behavior." (Id. at 184:10-185:5). Ms. Guzman complained to Mr. Armstrong about this behavior "[m]any, many times. Dozens of times." (Id. at 186:22-187:8).

48. Guzman did not complain to Jehn about any conduct by Michael Riedel or Anne Aquilina, and did complain about Les Goodstein saying "Cha Cha" at this time. (Guz. at 151-53).

**Response**

Plaintiff refers to her response to paragraph 47, and further states that she testified that she believes she did raise the Mr. Riedel behavior with Ms. Jehn. (Pear. Dec., Ex. 1,Guz. at 223).

49. It is undisputed that Guzman complained about not other incidents contributing to her purported hostile work environment than (i) the McGreevey photograph and Steve Dunleavy story told by Allan, and (ii) Goodstein complimenting her. (Id. at 184, 188.)

22

about that. He had other things to think about that day," and she could not recall him walking away. (Logan at 62, 152.)

**Response**

Admit, but note that Defendants' characterization is completely consistent with Ms. Guzman's allegations.

Dated: May 24, 2013
       New York, New York

                              Respectfully submitted,

                              THOMPSON WIGDOR LLP

                              By: _____
                                  Douglas H. Wigdor
                                  Lawrence M. Pearson

                              85 Fifth Avenue
                              New York, NY 10003
                              Telephone: (212) 257-6800
                              Facsimile: (212) 257-6845
                              dwigdor@thompsonwigdor.com
                              lpearson@thompsonwigdor.com

                              *Counsel for Plaintiffs*