**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

SANDRA GUZMAN,                                        :
                                                      :
                          Plaintiff,          :          No. 09 Civ. 9323 (LGS)
                                                      :
           v.                                  :
                                                      :
NYP HOLDINGS INC., d/b/a                              :
THE NEW YORK POST,                                    :
and COL ALLAN, in his official and                    :
individual capacities,                                :
                                                      :
                       Defendants.        :

-----------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO THE POST'S PUBLISHED CONTENT

**THOMPSON WIGDOR LLP**

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845

*Counsel for Plaintiff Sandra Guzman*

Plaintiff Sandra Guzman ("Plaintiff" or "Ms. Guzman"), by and through her undersigned counsel, hereby submits this opposition to Defendants NYP Holdings, Inc., d/b/a The New York Post (the "Post" or the "Company") and Col Allan's (together, "Defendants") motion *in limine* to exclude evidence relating to the Post's published content.

Throughout this case, Defendants have repeatedly attempted to immunize themselves from liability for their discriminatory and retaliatory treatment of Ms. Guzman by invoking the protections of the First Amendment.  Each time, these efforts were rejected.  See Guzman v. News Corp., 877 F. Supp. 2d 74, 77 (S.D.N.Y. 2012); Dkt. No. 34 (declining Defendants' motion to dismiss made on First Amendment grounds); Guzman v. News Corp., 09 CIV. 09323 LGS, 2013 WL 5807058, at *15 (S.D.N.Y. Oct. 28, 2013).  Nevertheless, Defendants insist on re-litigating this issue again through this motion *in limine* without any colorable basis to do so. See NIC Holding Corp. v. Lukoil Pan Americas, 05-CV-093772(MEA), 2009 WL 996408 (S.D.N.Y. Apr. 14, 2009); U.S. Underwriters Ins. Co. v. Falcon Constr. Corp., No. 02-C-4182, 2006 WL 3146422 at *2-3 (S.D.N.Y. Oct.30, 2006) (denying motion *in limine* where party's argument was "an improper attempt to relitigate an issue that [the court] previously decided in her opinion denying [defendant's] prior motion for summary judgment").

As is typical of their strategy when advancing their oft-rejected First Amendment arguments, Defendants have failed to mention that Ms. Guzman brings claims under 42 U.S.C. § 1981.  See Defs. Mem. at 3.  However, Section 1981, a far broader racial discrimination statute than Title VII, protects "all persons" from racial discrimination in the formation of contracts, employees and otherwise.  42 U.S.C. § 1981(a).  Section 1981 does not require that the discrimination Ms. Guzman suffered be related to an employment practice.  Thus, because the cartoon and other editorial content  appearing in the Post were directed at the public at large, a

1

class that includes Ms. Guzman, there is no bar against relying on such material in the context of any of Plaintiff's claims under Section 1981.

## I.     The Cartoon and Other Editorial Content Is Admissible

Federal Rule of Evidence 403 only permits the exclusion of otherwise relevant evidence if the probative value of such evidence is "**substantially outweighed** by a danger of one or more of the following: **unfair** prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." (emphasis added). Defendants' motion fails to set forth any reasonable basis to believe that the evidence at issue runs afoul of Rule 403. Although the evidence addressed herein certainly "tends to establish liability [and] is [thus] prejudicial to the interests of the defendant," it does not have "an undue tendency to suggest decision on an improper basis." Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997). Thus, it is **because** the Cartoon vividly demonstrates Mr. Allan's animus and the Post's attitudes toward its African-American employees, and due to its centrality to Ms. Guzman's and others' complaints and testimony regarding related events, it is admissible under well-established law.

It is undisputed that a plaintiff can prove discriminatory intent through the use of discriminatory comments towards others in the plaintiff's protected class. See, e.g., Lewis v. Depository Trust & Clearing Corp., 04 CIV. 4569 (GEL), 2006 WL 2482699, at *7 (S.D.N.Y. Aug. 29, 2006) ("Circumstances contributing to an inference of discriminatory intent may include . . . 'invidious comments' about members of the protected class to which plaintiff belongs") (citing Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)). Indeed, where evidence of discrimination exists, an employer's professed views and attitudes may be used to demonstrate animus. See Tomassi v. Insignia Financial Group. Inc., 478 F.3d 111 (2d

Cir. 2007) (discriminatory remarks relevant to determining whether "decision-maker was motivated by assumptions or attitudes relating to the protected class"). Moreover, the admissibility of such evidence is not constrained by the First Amendment. See, e.g., Dawson v. Delaware, 503 U.S. 159, 165 (1992) ("the Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations . . . simply because those beliefs and associations are protected by the First Amendment"). In fact, otherwise protected First Amendment speech is admissible for purposes of proving motive or intent in the employment discrimination context. See, e.g., Saxe v. State College Area Sch. Dist., 240 F.3d 200, 208 (3d Cir. 2001) (Alito, J.) (holding that there is "no constitutional problem with using an employer's offensive speech as evidence of motive or intent in a case involving an allegedly discriminatory employment action").[1] As a discriminatory commentary utilizing the well-known racist trope of portraying African-Americans as chimpanzees, the Cartoon is admissible evidence of race-based animus. Indeed, the Post's management, including Mr. Allan himself and Joe Robinowtiz, approved of the publication of such content at all relevant times.

As is well-established at this point, Ms. Guzman has never sought to impute liability simply **for the act of publishing** a cartoon (the "Cartoon") depicting the first African-American president as a dead chimpanzee. Rather, as this Court correctly observed in its Order and Opinion denying Defendants' motion for summary judgment, Ms. Guzman complained that "**the**

---

[1] Courts have regularly held that the imperatives of the antidiscrimination laws often outweigh competing First Amendment interests. See, e.g., Roberts v. United States Jaycees, 468 U.S. 609, 623 (1984) ("we are persuaded that Minnesota's compelling interest in eradicating discrimination against its female citizens justifies the impact that application of the [Minnesota Human Rights Act] . . . may have on the male members" First Amendment rights).; R. A. V. v. St. Paul, 505 U.S. 377 (1992) ("Thus, for example, sexually derogatory 'fighting words,' among other words, may produce a violation of Title VII's general prohibition against sexual discrimination in employment practices."); Doe v. City of New York, 583 F. Supp. 2d 444, 448 (S.D.N.Y. 2008) ("Any restraints on speech stemming from these anti-discrimination provisions are merely incidental to the statutes' objective of remedying racial discrimination . . . where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy."); Jenson v. Eveleth Taconite Co., 824 F. Supp. 847, 884 (D. Minn. 1993) ("Title VII may legitimately proscribe conduct, including undirected expressions of gender intolerance, which create an offensive working environment. That expression is 'swept up' in this proscription does not violate First Amendment principles.").

**Cartoon exemplified the Post's treatment and attitude toward African–Americans generally and at the Post**." <u>Guzman</u>, 2013 WL 5807058 at *15.  The Cartoon, therefore, is undeniably relevant to demonstrating Defendants' state of mind and, specifically, their discriminatory animus towards people of color.  In fact, Judge Ellis observed during discovery that the motivations behind the published content of the Post are relevant to whether decision-makers in this case harbored discriminatory animus, including Col Allan.  <u>See</u> <u>Guzman</u>, 877 F. Supp. 2d at 77 (S.D.N.Y. 2012) (holding that no First Amendment "editorial privilege" prohibited Plaintiff from inquiring into the decision-making process underlying the Post's editorial content and noting that "Defendants' formulation unnecessarily narrows the inquiry in the employment discrimination context.  **Title VII and Section 1981 are not concerned simply with judgments, but also with motivations**.") (emphasis added).  Indeed, contrary to Defendants' misrepresentations, **even at the pleading stage**, Ms. Guzman maintained that the relevance of the Cartoon was that it "clearly demonstrates Defendants' racist animus towards people of color and the racially hostile work environment that exists at the Post."  Amended Complaint ¶ 78.  Accordingly, all of the Post's probative editorial content on animus and motivations at the Post, including the Cartoon, is admissible to demonstrate Defendants' state of mind, especially materials Mr. Allan approved.

Moreover, the Cartoon is highly relevant to Ms. Guzman's hostile work environment claims.  Indeed, as this Court noted, Ms. Guzman's "**hostile work environment claim also encompasses the way that the Post dealt with the publication of the Cartoon and the issues that arose after the Cartoon was published, including the increased racial tensions in the office**."  <u>Guzman</u>, 2013 WL 5807058 at *15.  Additionally, the content of the Cartoon is essential to understanding many, if not all, of the facts of consequence in this case, and the jury

4

must have the context to appreciate the events that spurred Ms. Guzman's protected complaints. Without viewing the Cartoon, the jury would have no way to assess or appreciate the many reactions to the Cartoon (which, as mentioned, this Court has found are directly relevant) described by various witnesses and documents, leaving such evidence utterly incomprehensible.[2] As such, because the Cartoon is an indispensable document and other racially and sexually offensive content is essential to demonstrating animus, Defendants' motion *in limine* to exclude the Post's editorial content must fail.

---

[2] Even Defendants concede that reactions to the content published by the newspaper would be relevant and admissible. Defs. Mem. at 5. However, Defendants set forth the absurd position that Ms. Guzman can testify vaguely about "published newspaper content which she considered offensive" without allowing the jury to actually see the Cartoon itself. Id. The risk of jury confusion on this issue would increase exponentially by having witnesses testify about the events surrounding Ms. Guzman's complaints while omitting perhaps the most important and central event and document, whereas introduction of this material poses no risk of confusion.

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that this Court deny Defendants'

motion *in limine* to exclude evidence relating to the Post's published content.

Dated: November 27, 2013
      New York, New York

Respectfully submitted,

**THOMPSON WIGDOR LLP**

By: _____
      Douglas H. Wigdor
      Lawrence M. Pearson
      Michael J. Willemin
      Christopher R. Lepore

85 Fifth Avenue, 5th Floor
New York, New York 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6829
dwigdor@thompsonwigdor.com
lpearson@thompsonwigdor.com
mwillemin@thompsonwigdor.com
clepore@thompsonwigodor.com

*Counsel for Plaintiff Sandra Guzman*

6