# EXHIBIT 1

1
2            UNITED STATES DISTRICT COURT
3            SOUTHERN DISTRICT OF NEW YORK
4     --------------------------------X
      SANDRA GUZMAN,
5
                        Plaintiff,
6                        NO. 09 CIV. 9323 (BSJ)(RLE)
             VS.
7
      NEWS CORPORATION, NYP
8     HOLDINGS, INC., d/b/a THE
      NEW YORK POST, and COL ALLAN,
9     in his official and individual
      Capacities,
10
                        Defendants.
11    --------------------------------X
12                   **REVISED**
13            VIDEOTAPED DEPOSITION
14                     OF
15            SANDRA GUZMAN
16          New York, New York
17         Thursday, October 13, 2011
18
19
20    Reported by:
      AYLETTE GONZALEZ, CLR
21    JOB NO. 42950
22
23
24
25

Page 198

SANDRA GUZMAN-10/13/11
1
2    time.
3        If Ms. Guzman needs water, wants
4    to take a break, there was no question
5    pending.  You were talking to your
6    colleagues.
7        MR. LERNER:  If the issue,
8    Mr. Thompson, is not did you interrupt
9    the flow of the deposition.  The
10   question is did you have an improper
11   communication with Ms. Guzman about
12   the subject matter of her testimony
13   during the testimony and the record is
14   clear that you did.
15       MR. THOMPSON:  It is not clear.
16   BY MR. LERNER:
17       Q.  The clarification that you just
18   made, Ms. Guzman, when you came back on the
19   record and said you wanted to make a
20   clarification, was that something that you
21   discussed during the break with Counsel?
22       MR. THOMPSON:  Objection.  Don't
23   disclose what you talked to Counsel
24   about during the break.
25       Q.  Was your clarification a matter of

Page 199

SANDRA GUZMAN-10/13/11
1
2    your discussion with Counsel?
3        A.  I've been instructed by my attorney
4    not to answer your question.
5        Q.  Ms. Guzman, could you look at
6    paragraph 41 of your Amended Complaint,
7    please.
8        A.  This is the Amended Complaint?
9        MR. THOMPSON:  Yes.
10       A.  What page?
11       Q.  Page 10.
12       A.  Yes.
13       Q.  Paragraph 41, you stated,
14   "Mr. Goodstein also routinely stared at the
15   breasts and butt of other female employees in
16   Ms. Guzman's presence and often licked his
17   lips while doing so."
18       Do you see that?
19       A.  I do, yes.
20       Q.  Nowhere in your Complaint do you
21   state that Mr. Goodstein looked at your body
22   in a lascivious way, correct?
23       A.  He would repeatedly look at me and
24   tell me that I look sexy and beautiful.
25       Q.  No, but --

Page 200

SANDRA GUZMAN-10/13/11
1
2        A.  In paragraph 40.
3        Q.  You're not reading from your
4    Complaint though, correct?
5        A.  I'm telling you that that's what he
6    did and to be able to say --
7        Q.  That's not what your complaint
8    says --
9        MR. THOMPSON:  Objection.
10       Q.  -- right?
11       A.  Okay.
12       Q.  Your Complaint says that, "Les
13   Goodstein, senior vice-president, repeatedly
14   told Ms. Guzman that she looked sexy and
15   beautiful."
16       You did not state, in your
17   Complaint that he looked at you and told you
18   that you looked sexy and beautiful, right?
19       A.  He looked at me and told me that I
20   looked sexy and beautiful.
21       Q.  To be clear, you're not reading
22   from the Complaint now, right?
23       A.  I'm just telling you if we're
24   looking at the Complaint in paragraph 40, it's
25   very clear that he looked at me and he said --

Page 201

SANDRA GUZMAN-10/13/11
1
2    looking at me, he said I looked sexy and
3    beautiful.
4        Q.  Well, you came into the deposition
5    room a moment ago with a clarification where
6    you added something and what you added was
7    that he would often stare at my breasts and
8    body parts and comment on how sexy I looked.
9        A.  Right.
10       Q.  Staring at your breasts and body
11   parts is not an allegation you made in your
12   Complaint, right?
13       A.  When he looked at me and said I was
14   sexy and beautiful, he was staring at my body
15   parts.
16       Q.  But you didn't say in your
17   Complaint that he stared at you right?
18       A.  I didn't specifically state it.
19       Q.  And when you were working with
20   Mr. Goodstein on Tempo, Joe Robinowitz was
21   your supervisor; is that accurate?
22       A.  I believe so.
23       Q.  What was Mr. Goodstein's role on
24   Tempo when you were working together?
25       A.  He was supervising the sales

Page 202

SANDRA GUZMAN-10/13/11

1
2  portion of the section.
3      Q.  Did he supervise editorial?
4      A.  No.
5      Q.  You were responsible for editorial?
6      A.  Yes.
7      Q.  And your supervisor from editorial
8  standpoint was always Joe Robinowitz at that
9  time, right?
10      A.  What year was that?
11      Q.  In '06, '07.
12      A.  I believe it was Joe Robinowitz.
13      Q.  Were you ever looking to leave The
14  New York Post while you were an employee
15  there?
16      A.  I may have.
17      Q.  Well, I'm not asking you to guess.
18  I'm asking you what your -- what the facts
19  are.  Did you ever look for a job to leave The
20  New York Post while you were employed there?
21      A.  I don't remember that, that I
22  actively looked for a job.
23      Q.  And when you went to the dinner
24  that honored Les Goodstein, you were -- was he
25  still working on Tempo at the time?

Page 203

SANDRA GUZMAN-10/13/11

1
2      A.  I don't remember.
3      Q.  Were you required to go to that
4  dinner?
5      A.  Yeah, I was.  It was a News Corp.
6  event.  And they gave away tickets as it was a
7  Hispanic event and the editor of Hispanic
8  section, one of the many sections that I
9  edited, they asked me to go.
10      Q.  An editor of what?
11      A.  One of the Hispanic sections.  It
12  was a Hispanic organization that was having a
13  celebration.
14      Q.  So, it wasn't a News Corp. event,
15  right?
16      A.  He gave money as I understand it as
17  a representative of News Corp. corporation,
18  not as New York Post.
19      Q.  The National Hispanic Federation is
20  not a News Corp. organization, is it?
21      A.  It's not.  It's a Hispanic
22  organization that News Corp. gave money to
23  through Les Goodstein.
24      Q.  Do you recall that event being in
25  May of 2009?

Page 204

SANDRA GUZMAN-10/13/11

1
2      A.  Maybe, I'm not really sure.
3      Q.  Guzman Exhibit 14 is NYP '792.
4      (Defendant's Guzman Exhibit 14,
5  document bearing Bates numbers NYP
6  '792, marked for identification, as of
7  this date.)
8      Q.  Ms. Guzman, I'm going to tell you
9  that this is a document from your calendar
10  which you don't have to accept.  That's just
11  my representation.
12      But does this refresh your
13  recollection as to when that event was?
14      A.  Yes.
15      Q.  So, was it May of 2009?
16      A.  Yes.
17      Q.  And was Les Goodstein finished
18  working on Tempo by May of 2009?
19      A.  I believe so.
20      Q.  Could you have elected not to
21  attend that event?
22      A.  Yes.
23      Q.  Were you -- when you went, were you
24  proud that Les Goodstein, a News Corp.
25  affiliated person, was being honored by the

Page 205

SANDRA GUZMAN-10/13/11

1
2  National Hispanic Federation?
3      A.  Proud?
4      Q.  Yes.
5      A.  I don't know if I would say proud.
6      Q.  How did you feel about it?
7      A.  I was happy that a great Hispanic
8  organization that helps the impoverished and
9  the needy was receiving monies to do their
10  work.
11      Q.  How did you feel about Les
12  Goodstein being honored that night?
13      A.  Kind of surprised.
14      Q.  But did you think that he didn't
15  warrant being honored by the Hispanic
16  Federation?
17      A.  No, if I --
18      Q.  If you'd known he was responsible
19  for saving Tempo from closure in 2006, would
20  that have changed your mind?
21      MR. THOMPSON:  Objection.
22      A.  This man sexually harassed me every
23  opportunity he got and he did it on repeated
24  occasions and helping save Tempo didn't give
25  him the right to do that to me.

CONTAINS CONFIDENTIAL PORTIONS

1                           Guzman

2     UNITED STATES DISTRICT COURT

      SOUTHERN DISTRICT OF NEW YORK

3     ------------------------------x

      SANDRA GUZMAN,

4

                      Plaintiff,

5

          vs.            90 Civ. 9323(BSJ)(RLE)

6

      NEWS CORPORATION, NYP

7     HOLDINGS, INC., d/b/a

      THE NEW YORK POST, and

8     COL ALLAN, in his official

      and individual capacities,

9

                      Defendants.

10    ------------------------------x

11

12                  SANDRA GUZMAN

13              New York, New York

14           Monday, February 13, 2012

15       CONTAINS CONFIDENTIAL PORTIONS

16

17

18

19

20

21

22

23

24    Reported by:  Steven Neil Cohen, RPR

25    Job No. 46187

CONTAINS CONFIDENTIAL PORTIONS

Page 420

```
              Guzman
 1
 2         MR. THOMPSON:  Objection.
 3         THE WITNESS:  Can I answer?
 4         Sol and I started a -- as part of
 5   my attempt to make money Sol and I
 6   started a media consulting partnership.
 7         She was my business partner.
 8   BY MR. LERNER:
 9      Q.   And you described yourself here
10   as, among other things, sexy and beautiful?
11      A.   Yes.
12      Q.   Correct.  You also describe
13   yourself as bitchy?
14      A.   Yes.
15      Q.   You describe yourself as strong
16   and funny?
17      A.   Yes.
18      Q.   Do you still agree that all these
19   adjectives to describe you are accurate?
20      A.   They are different parts of me.
21      Q.   They all are parts of you?
22      A.   At times.
23      Q.   So sexy is part of you?
24      A.   Sure.
25      Q.   And beautiful is part of you?
```

Page 421

```
              Guzman
 1
 2      A.   Yes.
 3      Q.   As is -- are are bitchy and strong?
 4      A.   Yes.
 5      Q.   Ms. Guzman, when you started
 6   working at The Post in 2003 Michael Riedel
 7   was already working at The Post, right?
 8      A.   I believe so.
 9      Q.   He was already The Post's Broadway
10   columnist and critic, right?
11      A.   I believe so, yes.
12      Q.   And by 2008 you and he had both
13   been working at the paper together for about
14   five years, right?
15      A.   Yes.
16      Q.   Had you gotten to know him during
17   that time period?
18      A.   Know him?
19      Q.   Yes.
20      A.   What do you mean know him?
21      Q.   Were you friendly with him in the
22   office the way two people that might work in
23   an office together would be friendly?
24      A.   Yes.
25      Q.   Did you talk to him from time to
```

Page 422

```
              Guzman
 1
 2   time about matters of mutual interest?
 3      A.   Yes.
 4      Q.   Did you consider him a friend in
 5   the office?
 6      A.   A co-worker.
 7      Q.   Did you consider him a friend?
 8      A.   A co-worker.
 9      Q.   But a friendly co-worker?
10      A.   Yes.
11      Q.   Did you ever have any dispute or
12   problem with him until the material that you
13   have pled in this lawsuit?
14      A.   Did I have any dispute with him?
15      Q.   Yes.
16      A.   No.
17      Q.   Did he ever -- until the matter
18   that concerned West Side Story came up did
19   he ever do anything to you that you regarded
20   as offensive?
21      A.   Besides every time he saw me
22   singing West Side Story with a Spanish
23   accent.
24      Q.   You need to listen to the
25   question.
```

Page 423

```
              Guzman
 1
 2         The question was, until the matter
 3   that concerned West Side Story came up did
 4   he ever do anything to you that you regarded
 5   as offensive?
 6         MR. THOMPSON:  She was just
 7   clarifying your question.
 8         THE WITNESS:  I was.  I was
 9   clarifying the West Side incident.
10   BY MR. LERNER:
11      Q.   Apart from the West Side Story
12   incident was there anything that Mr. Riedel
13   ever did that you considered offensive?
14      A.   No.
15      Q.   You sent him an e-mail which was
16   marked in the last deposition Guzman 15 in
17   which you called -- you asked him for some
18   information about who is casting West Side
19   Story, right?
20      A.   Yes.
21      Q.   You called him M in the e-mail,
22   right?
23      A.   Yes.
24      Q.   And you signed it S, right?
25      A.   Yes.
```